IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **DENISE COLEY, ET AL.**, | : | Case No. 3:09 CV 0008 |
| Plaintiffs, | : | |
| v. | : | |
| **LUCAS COUNTY, OHIO, ET AL.**, | : | **MEMORANDUM DECISION AND ORDER** |
| Defendants. | : | |

The matter before this Court is Plaintiffs' Motion to Lift Stay and for Telephone Pre-trial. Defendants filed a Joint Brief in Opposition to Motion to Lift Stay and Plaintiffs filed a Reply Brief (Docket Nos. 45, 46 & 47). For the reasons that follow, the Magistrate grants the Motion to Lift Stay and for a Telephone Pretrial.

### I. THE PARTIES.

Carlton Lenard Benton died on June 1, 2004 (Docket No. 45, p. 1 of 3).

Plaintiffs, Denise M. Coley, DeCarlos Benton, Carla Benton and Maliki Larmond, are Carlton Benton's mother, father, sister and son, respectively (Docket No. 21, ¶s 1, 2, 3 & 4).

Defendants Gray and Schmeltz were employees of the Lucas County Sheriff's Office (LCSO), a branch of government responsible for law enforcement and maintaining full police

jurisdiction in the Lucas County, Ohio, at the time Carlton Benton died in the custody of LCSO (Docket No. 21, ¶s 5 and 6).

## II. FACTUAL BACKGROUND.

A summary of facts presumed correct by the United State Court of Appeals for the Sixth Circuit are found in *United States v. Gray*, 692 F.3d 514, 517-519 (6th Cir. 2012).

Benton, a pre-trial detainee in the custody of LCSO, was hospitalized as a result of an episode of seizures. When discharged from the hospital on May 30, 2004, LCSO officers returned Benton to the jail. Benton aggressively resisted these officers and after a struggle, the officers were able to put Benton in double handcuffs, leg shackles, and a belly chain. Defendant Gray and five other officers escorted Benton to the jail's Medical Unit. LCSO procedure dictated that when they reached Benton's cell in the Medical Unit, Benton was supposed to be placed on a bed and have his restraints removed. When the officers attempted to remove the restraints, Benton resisted and threatened to fight the officers once the restraints were removed. While Benton was still restrained, Defendant Gray moved to the head of the bed and placed Benton in a carotid restraint or a "sleeper hold[1]." Benton lost consciousness and Defendant Gray ordered the remaining officers to remove Benton's restraints.

Officer Mangold who is not a party to this litigation, heard Benton's choking sounds and told Defendant Gray to stop, but Defendant Gray did not let go. After the restraints were removed, Defendant Gray ordered the other officers to leave. The other officers noted that Benton was lying silent and motionless on the bed when they left. LCSO required that correctional officers seek

---

[1] A "sleeper hold" occurs when a person wraps his forearm around the victim's neck with the center of the victim's neck in the crook of the person's arm. When performed correctly, the hold should cause the victim to temporarily lose consciousness. *Gray*, 692 F. 3d at 516, fn. 1.

2

medical attention any time force is used or an inmate is injured; however, Defendant Gray did not inform any medical personnel about the events that occurred that day.  Defendant Gray admitted in a subsequent interview that he heard Benton's gurgling sounds and knew he should have told a nurse about the situation.  Approximately ten minutes later, a deputy, who was doing rounds, entered Benton's cell and discovered that Benton was neither conscious nor breathing.  Despite the best efforts of the deputies and the paramedics, Benton was declared brain dead and removed from life support on June 1, 2004.

All officers who escorted Benton to the Medical Unit were asked to write reports that would be given to the sheriff.[2]  From his training, Defendant Gray knew that the hold he used does not leave marks that would have been detected by the autopsy.  Defendant Gray wrote two such reports, neither of which mentioned the restraint hold nor Benton unconscious state as a result of the hold.  All of the reports about Benton were provided to the Lucas County Coroner on June 2, 2004 for use in conducting an autopsy[3].

Defendant Gray's statement to an Internal Affairs investigator failed to include a report of his having applied pressure to Benton's neck.  Based on the information available at the time, the coroner pronounced Benton's death a result of natural causes.  The coroner's verdict deprived the Lucas County Prosecutor of the opportunity to present a homicide case to the grand jury and the United States Justice Department of the ability to properly investigate federal charges until 2008.

---

[2] Pursuant to the LCSO's PHYSICAL FORCE POLICY, officers are required to write reports which thoroughly document the use of force against an inmate.  When an inmate dies, the coroner is typically provided with any incident reports regarding the death.

[3] The corrections administrator for LCSO recognized that, prior to releasing these documents, he had to check with the sheriff because he is in a fiduciary position and the coroner is an outside agency.

In 2008, an external investigation began when a LCSO correctional officer made a statement during a disciplinary hearing that prompted suspicions about the Benton incident, that "people could be killed and no one lose their job." The results of the investigation were turned over to the Lucas County Prosecutor who, out of concern for conflict of interest, submitted them to the United States Attorney's office.

Special Agent Brian Russ of the FBI was assigned to the case and began his investigation by using a grand jury subpoena to get access to the LCSO materials related to the case. Agent Russ interviewed Defendant Gray in July 2008 and Defendant Gray specifically denied using a sleeper hold on Benton and rendering him unconscious. Defendant Gray again denied these actions in an interview in October 2008. It was not until Agent Russ described his investigation and its results that Defendant Gray admitted both that he used the sleeper hold and that Benton became unconscious as a result. Agent Russ estimated that he interviewed more than 60 witnesses in this case. The coroner changed the verdict about Benton's death to homicide once she received information regarding the sleeper hold.

### III. PROCEDURAL BACKGROUND.

On December 9, 2008, Plaintiffs filed a complaint in the Lucas County Court of Common Pleas, alleging that, *inter alia,* Defendants Gray and Schmeltz violated Benton's civil rights. The case was removed to this United States District Court on January 5, 2009 (Docket No. 2). This Court accepted jurisdiction on January 16, 2009 (Docket No. 3). On April 14, 2009, indictments were filed charging, *inter alia*, Defendants Gray and Schmeltz. On March 10, 2010, the Magistrate Judge ordered a stay of the case pending resolution of the criminal matters of Defendants by way

of dismissal or plea.[4] The Magistrate Judge also ordered that in the event of an appeal, the stay could be revisited and the Court could determine if limited discovery could proceed during the pendency of the appeal (Docket No. 27).

The indictments charged Defendants Gray and Schmeltz as follows:

**DEFENDANT GRAY**

1. Two counts (1 and 2) of civil rights violations under 18 U.S.C. § 242,
2. Two counts (4 and 5) of falsifying and making false entries in a document in violation of 18 U.S.C. § 1519, and
3. One count (9) of making false statements to an FBI agent in violation of 18 U.S.C. § 1001.

**DEFENDANT SCHMELTZ**

1. One count (3) of assault under 18 U. S. C. § 242;
2. Two counts (6 and 7) of falsification of a document in violation of 18 U. S. C. § 1519; and
3. One count (11) of making a false statement in violation of 18 U. S. C. § 1001.

Defendant Gray was found guilty of Counts 2, 4, and 5 of the indictment and a sentence of 36 months was imposed on January 31, 2011. The United States Court of Appeals for the Sixth Circuit decided and filed a decision affirming Defendant Gray's conviction on August 31, 2012 (Case No. 3:09 CR 00182-DAK-1, Docket Nos. 2, 284, 314).

Defendant Schmeltz was found guilty on Count 6 of the indictment and sentenced to 12 months and one day on January 31, 2011. The United States Court of Appeals for the Sixth Circuit decided and filed an opinion affirming Defendant Schmeltz's conviction on December 20, 2011 (Case No. 3:09 CR 0182-DAK-2, Docket Nos. 21, 283, 310).

### IV. ANALYSIS.

---

[4] The parties reserved the right to revisit the stay with the Court if there was an appeal of the jury verdict in Defendant Gray's criminal proceedings (Docket No. 27).

Plaintiffs filed a Motion to Lift the Stay on September 10, 2012 for the reasons that (1) the appeals of Defendants Gray and Schmeltz have been resolved; (2) this case has been stayed for three years; and (3) the Coley family's resolve has been severely tested during the eight years since Benton's death.

All Defendants oppose the Motion for the reasons that Defendant Gray's appeal of his criminal conviction does not end with his appeal to the Sixth Circuit Court of Appeals. Defendant Gray is contemplating filing a petition for writ of certiorari in the United States Supreme Court. Under the UNITED STATES SUPREME COURT RULE 13(1), Defendant Gray's petition is timely if filed within 90 days after entry of judgment or by November 29, 2012. However, for good cause, a Justice may extend the time to file a petition for writ of certiorari for a period not exceeding 60 days. UNITED STATES SUPREME COURT RULE 13(5). Given that possibility, the extension of time could extend the time to file a petition for writ of certiorari until January 28, 2013. Defendants propose that the stay continues until the Supreme Court reviews and decides whether to grant or deny the petition for writ of certiorari.

Initially, there was a valid reason to adopt the parties' stipulation to stay the civil proceeding during the pendency of a parallel criminal proceeding. The stay was ordered so that neither Defendant Gray nor Defendant Schmeltz was forced to choose between preserving the privilege against self incrimination and/or losing a civil suit during the pendency of their criminal appeal. The Magistrate does not comment on the merit of Defendant Gray's petition for writ of certiorari but does acknowledge that the case is not final pending appeal to the Supreme Court of the United States. However, the resolution of issues in the parallel criminal case by the Sixth Circuit Court of Appeals weighs considerably in favor of lifting the stay. Some common factual questions have been

6

resolved based on the Court of Appeals' findings and the scope of discovery can now be narrowed, reducing the possibility of consuming considerable resources in this concurrent litigation. Special efforts can be made to accommodate the Fifth Amendment privilege against self incrimination and protect counsel against ineffective assistance claims under the Sixth Amendment. Upon proper application to the Court, any potential prejudicial statements can be avoided by a protective order that places restrictions and/or conditions upon access to certain criminal discovery.

CONCLUSION.

For these reasons, the Magistrate Judge grants the Motion to Lift Stay, reopens the case and orders that all counsel participate in a telephonic status conference which will be initiated by the Court on November 2, 2012 at 2:00 p.m.

**IT IS SO ORDERED**.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: October 26, 2012