**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Denise M. Coley, et. al.,                       :       Case No. 3:09 CV 8
　　　　Plaintiff,                              :
　　　　　　　　　　　　　　　　　　      :
v.                                               :       **MEMORANDUM OPINION**
　　　　　　　　　　　　　　　　　　      :       **AND ORDER**
Lucas County, Ohio, et al.,                      :
　　　　Defendants.                            :

### I. Introduction

This matter is before the Court on Defendant Captain Robert McBroom's Motion for

Judgment on the Pleadings, filed on June 18, 2013 (Docket No. 80). Plaintiffs filed their

Opposition in an Omnibus Brief on September 25, 2013 (Docket No. 101).  Defendant McBroom

filed a Reply on October 21, 2013 (Docket No. 104). For the reasons that follow, the Motion for

Judgment on the Pleadings is granted.

### II. Parties

Plaintiffs Denise Coley, DeCarlos Benton, Maliki Larmond, and Carla Benton

(collectively referred to as "Plaintiffs") are the biological relatives of decedent Carlton Lenard

Benton ("Benton"), who died while in custody in the Lucas County Jail, in Lucas County, Ohio.

Defendants include the Lucas County Sheriff's Office, Lucas County Sheriff James Telb

("Telb"), Lucas County Sheriff's Deputies John Gray ("Gray") and Jay Schmeltz ("Schmeltz")**,**

and Lucas County Sheriff's Captain Robert McBroom ("Defendant McBroom"). All Defendants

1

are current or former employees of Lucas County and are being sued as individuals as well as in their respective official capacities. Defendant McBroom's Motion for Judgment on the Pleadings is now before this Court.

### III. Factual Background

In February 2004, Benton was taken into custody by the Lucas County Sheriff's Office on suspicion of murder (Docket No. 21, p. 3 of 11). While in custody awaiting trial, Benton died (Docket No. 21, p. 3 of 11).

On April 14, 2009, a federal grand jury filed criminal charges against Gray, Schmeltz, Defendant McBroom, and Telb (Docket No. 21, Attachment 1). In the indictment, Gray was charged with assaulting and strangling Benton using a "sleeper hold," resulting in Benton's bodily injury and death, while acting under color of law (Docket No. 21, Attachment 1, p. 2 of 10). The indictment further charged Schmeltz with assault on Benton and failure to obtain necessary medical care (Docket No. 21, Attachment 1, p. 3 of 10). Thereafter, it was alleged that Gray, Schmeltz, Telb, and Defendant McBroom falsified records dealing with Benton's death and made false statements to members of the Federal Bureau of Investigation ("FBI") in an effort to impede, obstruct, and influence an investigation into the matter (Docket No. 21, Attachment 1, pp. 4-10 of 10). The indictment also charged Telb and Defendant McBroom with aiding and abetting the commission of a felony (Docket No. 21, Attachment 1, p. 7 of 10). Following a jury trial, Gray was found guilty of failing to obtain necessary medical care and treatment for Benton and falsifying various reports (Docket No. 70, ¶¶ 54-55). Schmeltz was found guilty of falsification of a document (Docket No. 70, ¶ 53).

2

## IV. Procedural Background

On April 29, 2013, Plaintiffs filed a Second Amended Complaint against the following Defendants: (1) the County of Lucas, Ohio; (2) the Lucas County Sheriff's Department; (3) Telb; (4) Gray; (5) Schmeltz; and (6) Defendant McBroom (Docket No. 70). Plaintiffs allege multiple causes of action, including: (1) wrongful death; (2) conspiracy to violate Benton's constitutional rights under 42 U.S.C. §§ 1983 and 1985 and Ohio state law; (3) negligence and recklessness; (4) assault and battery; (5) intentional infliction of emotional distress; (6) loss of consortium; (7) aiding and abetting; and (8) violations of the Racketeer and Corrupt Organizations Act ("RICO") (Docket No. 70). On June 18, 2013, Defendant McBroom filed a Motion for Judgment on the Pleadings, which is currently pending before this Court, seeking dismissal of all claims against him, which include conspiracy, aiding and abetting, and RICO violations (Docket No. 80). Plaintiffs filed an Opposition on September 25, 2013 (Docket No. 101). Defendant McBroom submitted a Reply on October 21, 2013 (Docket No. 104).

## V. Motion for Judgment on the Pleadings Standard

Under FED. R. CIV. P. 12(c), after the pleadings are closed, a party may move for judgment on the pleadings, so long as doing so does not delay trial. Motions for judgment on the pleadings are analyzed under the same standard as motions to dismiss pursuant to FED. R. CIV. P. 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). In ruling on a motion for judgment on the pleadings, a court "must construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine when the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). A court "need not accept

3

as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581-82 (6th Cir. 2007). While the complaint need not contain detailed factual allegations, a plaintiff bears the obligation of providing the grounds upon which he is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). This requires "more than labels and conclusions." *Id*. Furthermore, mere "formulaic recitation of the elements of a cause of action will not do." *Id.*

## VI. Discussion

In his Motion for Judgment on the Pleadings and its Supplement, Defendant McBroom argues: (1) he is entitled to immunity under R.C. § 2744; (2) Plaintiffs' conspiracy claims under both federal and state law are not pled with sufficient specificity to state a claim for relief, or, in the alternative, are barred by Ohio's intra-corporate conspiracy doctrine; (3) Ohio does not recognize a civil tort of aiding and abetting; and (4) Plaintiffs fail to state a claim under either the federal or state RICO statutes (Docket No. 80).[1] Upon review of the pleadings, this Court finds that while Defendant McBroom is not entitled to immunity under R.C. § 2744, his Motion for Judgment on the Pleadings should nevertheless be granted as to all claims.

### A.    Immunity under R.C. § 2744

Plaintiffs allege three state law claims against Defendant McBroom, including: (1) civil conspiracy; (2) aiding and abetting; and (3) RICO violations (Docket No. 70). For each claim, Defendant McBroom alleges immunity under R.C. § 2744 (Docket No. 95).

---

[1] It should be noted that while the remaining Defendants seek qualified immunity under 42 U.S.C. § 1983, Defendant McBroom does not and seeks immunity only under R.C. § 2744. However, Plaintiffs' only claim against Defendant McBroom under 42 U.S.C. § 1983 is without merit, therefore making Defendant McBroom's choice not to seek qualified immunity irrelevant. See Section VI(B)(1) for further analysis of the merits of the § 1983 claim.

4

In general, under R.C. § 2744, commonly known as the Political Subdivision Tort Liability Act, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. § 2744.02(A)(1). A political subdivision is defined as a "municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." R.C. § 2744.01(F). Federal courts in this district have held that both the sheriff and the sheriff's deputies are employees of a political subdivision, namely, the county. *Sanford v. County of Lucas, State of Ohio et al.*, 2009 U.S. Dist. LEXIS 20774, *24 (N.D. Ohio 2009) (internal citations omitted).

Defendant McBroom, like all employee Defendants in this matter, is being sued both in his official and individual capacities (Docket No. 70, ¶ 6). With regard to immunity under state law, the Sixth Circuit has recognized that

> Ohio's immunity statute draws no distinction between suits against an individual government employee in his official as opposed to his personal capacity. An action against an officer in his official capacity is simply another way of pleading an action against the governmental entity itself. If official-capacity claims are nothing more than claims against the county, then it would be appropriate to dismiss the official capacity claims against the employee defendants if such claims have been dismissed against the county.

*Chesher v. Neyer*, 477 F.3d 784, 797 (6th Cir. 2007) (*citing Norwell v. City of Cincinnati*, 133 Ohio App.3d 790 (Ohio Ct. App. 1990)). Therefore, in order to determine whether Defendant McBroom is immune in his official capacity, this Court must determine whether the governmental entities, namely Lucas County and the Lucas County Sheriff's Office, are immune from suit. *See Sanford*, 2009 U.S. Dist. LEXIS 20774 at *28 (*citing Chesher*, 477 F.3d at 797).

5

Under the Political Subdivision Tort Liability Act, the Court must use a three-tiered analysis for determining whether the Defendant governmental entities are immune from liability. *See Sanford*, 2009 U.S. Dist. LEXIS 20774 at *28. As stated above, the general rule is that political subdivisions engaged in governmental or proprietary functions are "not liable in damages in a civil action for injury, death, or loss to person or property." R.C. § 2744.02(A)(1). Once this immunity is established, the Court must determine whether any of the five *exceptions* to immunity, listed under R.C. § 2744.02(B), apply. These exceptions include: (1) injuries caused by the negligent operation of a motor vehicle; (2) injuries caused by the negligent performance of proprietary functions; (3) injuries caused by the failure to keep open roads, highways and streets open, in repair and free from nuisance; (4) injuries caused by negligence on the ground of a building used for governmental purposes; or (5) injuries for which liability is expressly imposed by the Ohio Revised Code. R.C. § 2744.02(B)(1)-(5). Finally, *even if* an exception applies, "immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in [R.C. § 2744.03] applies." *Sanford*, 2009 U.S. Dist. LEXIS 20774 at *29 (*citing Cater v. City of Cleveland*, 83 Ohio St. 3d 24, 28 (Ohio 1998)).

Here, it is clear that Defendant McBroom was engaged in a governmental function. *See State v. Cook*, 83 Ohio St.3d 404 (Ohio 1998) (police power is considered to be a government function). As such, he is entitled to a presumption of immunity. However, although Plaintiffs seek to remove such immunity, they fail to argue that any of the exceptions under R.C. § 2744.02(B) apply to Defendant McBroom (Docket No. 70). As a result, this Court grants Defendant McBroom's request for immunity with regard to the *official* capacity claims brought against him under Ohio law.

6

## 1.    Individual Capacity Immunity

Whether a defendant is liable as an individual turns on the availability of statutory immunity as defined in R.C. § 2744.03. *See Chesher*, 477 F.3d at 797. As noted above, a state employee is immune from liability for all acts done in connection with a governmental or proprietary function unless: (a) the acts or omissions were manifestly outside the scope of employment or official responsibilities; (b) the acts or omissions were made with malicious purpose, in bad faith, or in a wanton reckless manner; or (c) a section of the Ohio Revised Code imposes liability. R.C. § 2744.03(A)(6)(a)-(c). As Plaintiffs have already admitted that all Defendants, including Defendant McBroom, were acting within the scope of their employment at all times relevant to the Second Amended Complaint, only exception (b) is potentially relevant to the case at hand.

### a.    Malicious purpose, bad faith, or wanton reckless manner

For purposes of this section, "maliciousness" is defined as "indulging or exercising malice; harboring ill-will or enmity." *Pearl v. City of Wyoming*, 2013 Ohio App.LEXIS 2783, *4 (2013) (internal citations omitted). It can also be defined as "the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Id*. (internal citations omitted). "Bad faith" indicates "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id*. at *4-5. It also includes the "actual intent to mislead or deceive another." *Id*. "Wanton" is conduct that "manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding

7

circumstances and existing conditions, that his conduct will in all common probability result in injury." *Id*. at *5 (internal citations omitted). Finally, one acts in a "reckless" manner if he "does an act or intentionally fails to do an act which it is his duty to do." *Id*. This individual must know, or have reason to know, facts that would "lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." *Id*. at *5-6.

Here, construing the facts as set forth in the Second Amended Complaint as true, Plaintiffs claim that Defendant McBroom: (1) had full knowledge of the assault on Benton; and (2) intentionally and deliberately made false statements about his knowledge to federal officials for the sole purpose of impeding the investigation into Benton's death (Docket No. 70, ¶¶ 40-47). Such facts sufficiently allege that Defendant McBroom acted in bad faith. In other words, Defendant McBroom's alleged actions displayed an "actual intent to mislead or deceive another." *Pearl*, 2013 Ohio App.LEXIS at *5. Therefore, the Court declines to grant Defendant McBroom's request for immunity under R.C. § 2744.03 for claims filed against him in his individual capacity.

**B.     Conspiracy**

Plaintiffs set forth three claims of civil conspiracy against all Defendants, including Defendant McBroom, under 42 U.S.C. §§ 1983 and 1985 as well as under Ohio law (Docket No. 70).

### 1.     Federal Conspiracy under § 1983

By its terms, "§ 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th

Cir. 2000). Specifically, this section "provides a cause of action for deprivation of federal statutory or constitutional rights by persons acting under color of state law." *Slough v. Telb*, 644 F.Supp.2d 978, 987 (N.D. Ohio 2009) (*citing Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). "Where the defendants are state or local officers acting as police officers, they are presumed to be acting 'under color' of state law, even where their actions violate or are unauthorized by state law." *Slough*, 644 F.Supp.2d at 987 (*citing Monroe v. Pape*, 365 U.S. 167, 180 (1961)). Here, Plaintiffs allege that all Defendants, including Defendant McBroom, while acting under color of state law, deprived both Benton and his surviving family members of "rights guaranteed under the Constitution and laws of the United States and the State of Ohio, including equal protection and privileges and immunities of law" (Docket No. 70, ¶ 76).

Under federal law,

[a] civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (*quoting Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). A claim for conspiracy must be "pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Spadafore*, 330 F.3d at 854 (*quoting Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

Here, Plaintiffs allege that Defendant McBroom engaged in conspiratorial conduct which included the falsification of certain documents and the making of false statements to the FBI

9

(Docket No. 70, ¶ 76). According to Plaintiffs, these actions constituted a "knowing, willful and intentional conspiracy, either express or implied, to deprive [Benton] . . . his estate, and his family member Plaintiffs the rights guaranteed under the Constitution and laws of the United States and State of Ohio, including equal protection and privileges and immunities of law" (Docket No. 70, ¶ 76). These are mere legal conclusions. Plaintiffs offer no specific factual statements to support that a single plan existed or that Defendants, including Defendant McBroom, had a single plan when they allegedly falsified documents and made allegedly false statements. Without this particularity, Plaintiffs fail to satisfy the pleading requirements necessary for a federal conspiracy claim. Therefore, Defendant McBroom's Motion for Judgment on the pleadings with regard to the federal civil conspiracy claim under 42 U.S.C. § 1983 is granted and the claim is dismissed.

  **2.**  **Conspiracy to Deprive Constitutional Rights under 42 U.S.C. §§ 1985(2) and (3)**[2]

  Next, Plaintiffs allege that Defendant McBroom conspired with Telb, Gray, and Schmeltz to deprive Benton of his constitutional rights, in violation of 42 U.S.C. §§ 1985(2) and (3). Under 42 U.S.C. § 1985(2),

> If two or more persons . . . conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any state or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(2).

---

[2] Although Plaintiffs do not specifically state which section of 42 U.S.C. § 1985 applies to their case, a basic reading of the statute and the relevant facts suggest that the only applicable sections are §§ 1985(2) and (3). The discussion will proceed accordingly.

Under 42 U.S.C. § 1985(3),

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

To maintain a claim under either of these sections, a plaintiff must prove: (1) a conspiracy; (2) done for the purpose of depriving, directly or indirectly, a person or class of persons under the equal protection of the laws or of equal privileges and immunities of the laws; (3) an act in furtherance of that conspiracy; (4) whereby a person is either injured in his person or property, or deprived of any right or privilege of a United States citizen. *Moore v. City of Garfield Heights, et. al.*, 2012 U.S. Dist. LEXIS 164911, *23-24 (N.D. Ohio 2012). This conspiracy "must be motivated by racial or other class-based discriminatory animus." *Id*. at *24 (finding that, under both 42 U.S.C. §§ 1985(2) and (3), there must be allegations of racial or other class-based discriminatory animus). Claims brought under 42 U.S.C. §§ 1985(2) and (3) must be pled with specificity. *Id*.

Here, Plaintiffs' claims lack specificity. The Second Amended Complaint fails to state, with any particularity, the formulation or existence of a conspiracy designed to deprive Benton of his civil rights. Instead, the Second Amended Complaint simply concludes that Defendants'

behavior is conspiratorial in this regard, based upon the alleged falsification of documents and making of false statements to the FBI (Docket No. 70, ¶ 76). Furthermore, there is no allegation that the alleged conspiracy was motivated by racial or any other class-based discriminatory animus (Docket No. 70). There is no mention in the Second Amended Complaint that Benton was a member of a protected class or that Defendant McBroom discriminated against Benton based on such a membership (Docket No. 70). Therefore, Defendant McBroom's Motion for Judgment on the Pleadings with regard to Plaintiffs' claims under 42 U.S.C. §§ 1985(2) and (3) is granted and the claims are dismissed.

### 3.    State Civil Conspiracy

Plaintiffs also allege that all Defendants in this matter, including Defendant McBroom, are liable for state civil conspiracy (Docket No. 70, ¶¶ 97-98). Plaintiffs contend that Gray and Schmeltz committed an unlawful act when they proximately caused Benton's death (Docket No. 70, ¶ 98). Thereafter, Telb and Defendant McBroom became aware of the incident and together "the four Defendants then conspired to file false reports and make false statements to, among others, the FBI" (Docket No. 70, ¶ 98). In response to Plaintiffs' claims, Defendant McBroom alleges that, as members of the same entity, namely the Lucas County Sheriff's Office, it was legally impossible for Defendants to form a conspiracy (Docket No. 80, Attachment 1, pp. 11-13 of 30). The undersigned agrees with Defendant McBroom.

In Ohio, civil conspiracy is a tort defined as "a malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (Ohio 1998) (internal citations omitted). One cannot maintain a claim for civil conspiracy without the presence of an

12

underlying unlawful act. *Godsen v. Louis*, 116 Ohio App.3d 195, 219 (Ohio App. Ct. 1996). The "malicious combination [of two or more persons] to injure does not require a showing of an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act." *Id.*

As an initial matter, Defendant McBroom asks this Court to look only to the specific facts averred within the cause of action *itself*, not as incorporated by reference from the balance of the Second Amended Complaint (Docket No. 80, Attachment 1, pp. 14-16 of 30). Plaintiffs reject this idea, citing non-dispositive language from a 1992 Report and Recommendation in *Cheetwood v. Roberts*, 1992 U.S. Dist. LEXIS 22656 (N.D. Ohio 1992) in which the court determined that such an action is only appropriate "where the length and complexity of the complaint precludes a plaintiff from relying on incorporation by reference . . . ." 1992 U.S. Dist. LEXIS 22656 at *8. According to Plaintiffs, the Second Amended Complaint contains only one hundred paragraphs concerning three basic claims, effectively preventing it from being so lengthy or complex that they are precluded from effectively using incorporation by reference (Docket No. 101, p. 43 of 51).

On the other hand, Defendant McBroom relies on a much more recent case out of the Northern District of Ohio in which the court noted that it has "time and again counseled litigants that such incorporation by reference is insufficient. If specific facts support a particular cause of action, those facts must be stated within that cause of action." *Advanced Coatings*, 2012 U.S. Dist. LEXIS 104820 at *10.

Even giving Plaintiffs the benefit of the doubt and looking to the Second Amended Complaint as a whole, Plaintiffs still fail to plead with sufficient particularity the alleged facts to

support a claim of civil conspiracy under Ohio law. It is well settled that "conspiracy claims

must be pled with some degree of specificity, and vague or conclusory allegations that are

unsupported by material facts will not be sufficient to state a claim." *Advanced Coatings Int'l,*

*Inc. v. Fla. CirTech, Inc.*, 2012 U.S. Dist. LEXIS 104820, *9 (N.D. Ohio 2012) (*quoting Ghaster*

*v. City of Rocky River*, 2010 U.S. Dist. LEXIS 71020, *11 (N.D. Ohio 2010) (*quoting Avery v.*

*City of Rossford*, 145 Ohio App.3d 155, 165 (Ohio Ct. App. 2001)). The requirements governing

civil conspiracy pleadings are "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir.

2008). Plaintiffs pleaded facts with regard to a conspiracy claim can be summarized as follows:

> . . . Defendants Gray and Schmeltz committed an unlawful act when they proximately caused [Benton's] death. Defendants Telb and McBroom knew or became aware of Defendants Gray and Schmeltz's involvement in [Benton's] death. The four Defendants then conspired to file false reports and make false statements to, among others, the FBI. (Docket No. 70, ¶ 98).

> Defendants Telb and McBroom were made aware and had full knowledge of the assault on [Benton], which led to his death, but nonetheless intentionally and deliberately made false statements to federal officials about their knowledge of [Schmeltz's] assault and [Gray's] chokehold and the deliberate failure to provide medical attention to [Benton]. (Docket No. 70, ¶ 40).

> During that FBI investigation, each of Defendants Telb, McBroom, Gray and Schmeltz made intentional, deliberate false statements in the course of the FBI investigation with the deliberate purpose of impeding the investigation, and working, individually and together to ensure that there[sic] were unlawful and illegal acts would not be discovered or exposed. (Docket No. 70, ¶ 45).

> Defendant McBroom made false statements to the FBI that he had no knowledge that Defendant Gray used a chokehold on [Benton] prior to and then causing [Benton's] death when, in fact, Defendant McBroom had full knowledge that Defendant Gray had used such a chokehold. (Docket No. 70, ¶ 47).

These paragraphs contain mere legal conclusions, not material facts necessary to support a claim

of civil conspiracy. Plaintiffs fail to plead when, where, why, or how the conspiracy occurred or how the alleged conspiracy resulted in damages. Plaintiffs claim for civil conspiracy under Ohio law should fail on sufficiency of the pleadings grounds alone.

### 4. Intra-Corporate Conspiracy Doctrine

However, *even if* this Court had found Plaintiffs' claims to be pled with sufficiency, their claims for federal and state civil conspiracy are precluded by the Ohio intra-corporate conspiracy doctrine. Under this doctrine, "[a] corporation cannot conspire with its own agents or employees. Where all defendants, allegedly co-conspirators, are members of the same collective entity, there are not two separate people to form a conspiracy . . . ." *Valente v. Univ. of Dayton*, 689 F.Supp.2d 910, 929 (S.D. Ohio 2010) (internal citations omitted). An exception to this doctrine exists when "employees act outside the course of their employment." *Johnson v. Hills & Dale Gen. Hosp.*, 40 F.3d 837, 841 (6th Cir. 1994). This doctrine has been applied to police and sheriff's departments. *See Ruble v. Escola*, 898 F.Supp.2d 956, 986 (N.D. Ohio 2012) (since both defendants were members of the Perrysburg Police Department, the intra-corporate conspiracy doctrine negates a claim of civil conspiracy); *see also Elersic v. Lake County*, 2005 U.S. Dist. ELXIS 10890, *12-13 (N.D. Ohio 2005) (since the Lake County Sheriff's Office detectives were all agents of Lake County, the intra-corporate conspiracy doctrine applied).

According to Plaintiffs, Gray officially retired from the Lucas County Sheriff's Office in June 2004 (Docket No. 101, p. 42 of 51). Gray's retirement successfully made him a separate "person" for purposes of a civil conspiracy claim, as he was no longer part of the "same collective entity" as the remaining Defendants (Docket No. 101, p. 42 of 51). Plaintiffs cite no authority for their conclusion (Docket 70).

15

Even if Plaintiffs could rely on this theory, their own timeline of the alleged conspiracy shows that, at the time of the alleged conspiracy, all Defendants, including Gray, were employees of the Lucas County Sheriffs Office. Plaintiffs set forth the initial timeline as follows:

> [d]ocuments that were falsified include a Critical Incident Report, a Shift Commander's and Floor Supervisor's Report, and a Correction Officers Report. Defendant Gray falsified documents on or around May 30, 2004. Defendant Schmeltz falsified documents on May 30, 2004 and June 1, 2004. Defendants McBroom and Telb, by the end of June 2004, failed to undertake a sufficient adequate investigation of Mr. Benton's death. Morover, they failed to turn over to the Coroner full, complete and truthful information concerning the chokehold and assault of Mr. Benton.

(Docket No. 101, p. 44 of 51).

By Plaintiffs' own admission, Gray retired from the Lucas County Sheriffs Office on June 30, 2004, after these original actions by Defendants, including Defendant McBroom, took place (Docket No. 101, p. 41 of 51). It also stands to reason that if Defendants, including Defendant McBroom, were going to engage in a conspiracy about the circumstances of Benton's death, they would have done so immediately after the death.

Finally, Plaintiffs cannot rely on the one exception to the intra-corporate conspiracy doctrine, namely that Defendants were acting outside the scope of their employment by engaging in an alleged conspiracy. *See Johnson*, 40 F.3d at 841. By their own admission in the Second Amended Complaint, Plaintiffs acknowledge that all Defendants were "acting in the course and scope of their employment *at all pertinent times*" (Docket No. 70, ¶ 6) (emphasis added). Therefore, Defendant McBroom's Motion for Judgment on the Pleadings with regard to civil conspiracy under Ohio law is granted and the claim is dismissed.

**C.    Aiding and Abetting**

16

Plaintiffs allege that Defendant McBroom is liable for aiding and abetting Gray and

Schmeltz in the assault and subsequent death of Benton (Docket No. 70, ¶ 98). Defendant

McBroom argues that he cannot be held liable for aiding and abetting, as such a claim does not

exist under Ohio law (Docket No. 80, Attachment 1, pp. 16-17 of 30). Plaintiffs disagree,

countering that the Sixth Circuit's predictive holding in *Aetna Cas. & Sur. Co. v. Leahey Constr.*

*Co.*, 519 F.3d 519 (6th Cir. 2000), allows such a claim (Docket No. 101, pp. 45-47 of 51). After

further review of the current law in the State of Ohio, this Court agrees with Defendant

McBroom.

In order to determine whether Ohio recognizes a common law cause of action for aiding

and abetting, it is first necessary to set forth and review the somewhat conflicting opinions on the

subject. In *Aetna Casualty*, the plaintiff accused the defendants of improperly defrauding the

plaintiff into providing certain surety bonds for the defendant's construction projects. 219 F.3d at

524. Following a jury trial, the defendants were found liable for, *inter alia*, aiding and abetting

fraud. *Id*. The defendants requested judgment in their favor as a matter of law, or, in the

alternative, a new trial. *Id*. These motions were denied by the district court and the defendants

appealed. *Id*.

On appeal, the defendants questioned whether aiding and abetting, as defined under the

Second Restatement of Torts § 876(b) was a cognizable claim under Ohio Law. *Id*. at 533. The

Sixth Circuit answered that question as follows:

> As the Court of Appeals has observed, the state's highest court 'has never expressly
> approved Section 876 . . . .' Although that may be true, the Supreme Court of Ohio
> . . . has on at least one occasion applied Section 876(b). By applying Section 876(b)
> . . . the [Ohio Supreme Court] implicitly indicated that it considered civil aiding and
> abetting a viable cause of action. Accordingly, we conclude that the Supreme Court

of Ohio would recognize aiding and abetting liability if squarely faced with the issue.

*Aetna*, 219 F.3d at 533. Several years later, in 2006, the Sixth Circuit issued its opinion in

*Pavlovich v. Nat'l City Bank*, 435 F.3d 560 (6th Cir. 2006), and found that the plaintiff's claim

for civil aiding and abetting must fail because "Ohio law is unsettled whether this cause of action

exists . . . ." 435 F.3d at 570.

In 2007, in *Ohio Bureau of Workers' Compensation v. MDL Active Duration Fund,*

*LTD., et. al.*, 476 F.Supp.2d 809 (S.D. Ohio 2007), the District Court for the Southern District of

Ohio relied on the Sixth Circuit's holding in *Aetna Casualty*, stating "[i]n the absence of a

subsequent change in state law, this court is bound to follow the Sixth Circuit's opinion

regarding Ohio law in *Aetna Casualty*." 476 F.Supp.2d at 828. The Court declined to grant a

motion to dismiss on an aiding and abetting claim, citing the uncertainty of the law and "the fact

that it cannot be said conclusively that Ohio law does not recognize an aiding and abetting tort . .

. ." *Id*.

In April 2012, the district court for the Northern District of Ohio explained the impact of

*Pavlovich* on *Aetna Casualty*, stating

> the precedent squarely before this Court is that an aiding and abetting claim based
> on Ohio law 'must fail' because the law is unsettled. As this Court reads *Pavlovich*,
> which post-dates *Aetna*, the Sixth Circuit considered *Aetna*, and yet still dismissed
> the aiding and abetting claim. The Sixth Circuit recognized that, based on *post-Aetna*
> Ohio appellate court decisions, Ohio has not recognized a cause of action for aiding
> and abetting. Thus, the predictive holding of *Aetna* is no longer controlling precedent
> in light of intervening Ohio appellate decisions as interpreted by *Pavlovich*.

*William D. Mundinger Trust v. Zellers*, 2012 U.S. Dist. LEXIS 59736, **24 (N.D. Ohio 2012);

*see also Barney v. PNC Bank (In re Estate of Barney)*, 714 F.3d 920, 929 (6th Cir. 2013)

18

(finding that the district court did not err for dismissing the plaintiff's aiding and abetting tortious conduct claim "because it is highly doubtful that Ohio even recognizes such a tort"); *Advanced Coatings*, 2012 U.S. Dist LEXIS 104820 at *4-5 (N.D. Ohio 2012) (finding dismissal of a claim for aiding and abetting proper given the Sixth Circuit's decision in *Pavlovich*).[3]

Given the precedent established by the Sixth Circuit in *Pavlovich*, and its recent application in the Sixth Circuit and the Northern District of Ohio, this Court now finds that Plaintiffs' aiding and abetting claim against Defendant McBroom must fail. Without further direction from the Ohio Supreme Court, this Court cannot find civil aiding and abetting to be a viable claim under Ohio law. Therefore, Defendant McBroom's Motion for Judgment on the Pleadings with respect to the aiding and abetting claim is granted and the claim is dismissed.

## D.     RICO Claim

Plaintiffs finally allege that Defendant McBroom is liable for civil RICO (Docket No. 70, ¶ 99). According to Plaintiffs, all Defendants "associated for a common purpose of engaging in a course of conduct: to mislead and lie to federal authorities, to ensure that the FBI did not discovery[sic] Defendants Gray and Schmeltz's role in the death of Decedent (Docket No. 70, ¶ 99). This association then allegedly conspired to file fraudulent documents and make false statements concerning Benton's death, causing damages (Docket No. 70, ¶¶ 99-100). Defendant McBroom disagrees, arguing that: (1) his actions do not satisfy the predicate offense requirements under RICO; and (2) Plaintiffs, under RICO, cannot recover for personal injuries

---

[3] As recently as August 2012, the Ohio Supreme Court stated, in a response from a direct request from the Northern District of Ohio, that is "has never recognized a claim under 4 Restatement 2d of Torts, section 876 (1979)," and declined to do so on the facts of the case presented. *DeVries Dairy, LLC v. White Eagle Cooperative Association*, 132 Ohio St.3d 516 (Ohio 2012).

(Docket No. 80, pp. 17-23 of 30). For purposes of discussion, this Court notes that federal and state RICO claims are analyzed under the same standard and therefore will be discussed concurrently. *See Bird v. Delacruz*, 411 F.Supp.2d 891, 894-95 (S.D. Ohio 2005) (*citing Ohio v. Nasrallah*, 139 Ohio App.3d 722 (Ohio Ct. App. 2000)).

To establish a RICO violation under both Ohio and federal law, a plaintiff must prove four essential elements: (1) the existence of two or more predicate offenses, i.e., racketeering activities; (2) the existence of an enterprise; (3) a nexus between the racketeering activities and the enterprise; and (4) an injury to either business or property as a result of the first three elements. *City of Cleveland v. Woodhill Supply, Inc.*, 403 F.Supp.2d 631, 634 (N.D. Ohio 2005). Under federal statute, "racketeering activities" are defined, in part, as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance of a listed chemical, which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). The predicate offenses must occur within ten years of each other (18 U.S.C. § 1961(5)), and a plaintiff must show "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 409 (6th Cir. 2012 (*citing H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237-39 (1989)).

Defendant McBroom alleges that he was not indicted for any offense set forth in 18 U.S.C. § 1961(A)(1); rather, he was indicted for, but not convicted of, a violation of 18 U.S.C. § 1001, which prohibits the making of false statements to federal officials (Docket No. 80, Attachment 1, p. 20 of 30). Therefore, RICO does not apply (Docket No. 80, Attachment 1, p. 20

of 30). Defendant McBroom is correct: without proof of racketeering activity as defined by statute, Plaintiffs' RICO claim fails for want of the existence of two or more predicate activities.

Plaintiffs' claim also fails for lack of a redressable injury. Plaintiffs fail to plead with any particularity the specific injury resulting from Defendant McBroom's alleged RICO violation. Instead, Plaintiffs simply allege that "[d]efendants' actions proximately caused damages to Plaintiffs, giving rise to claims of civil RICO violations" (Docket No. 70, ¶ 99). Plaintiffs fail to mention specifically what those damages are within the RICO claim itself. Based on Plaintiffs' previous practice of incorporating by reference the balance of the information contained in the Second Amended Complaint, this Court presumes that Plaintiffs' alleged damages include "the deprivation of [Benton's] liberty without process of law and the deprivation of property interest to [Benton's] estate and other family members, including a property right in the claim against these Defendants which these Defendants conspired against" (Docket No. 70, ¶ 78).

As stated above, in a claim for civil RICO, a plaintiff is required to show an injury to either *business or property*. *Woodhill*, 403 F.Supp.2d at 634. Here, Plaintiffs first alleged injury, deprivation of Benton's liberty without process of law, clearly does not meet that definition. Therefore, it is only Plaintiffs' second alleged injury, deprivation of a property interest to Benton's estate and family members, including a property right in the claim now before this Court, that is potentially actionable for purposes of a RICO claim.

The Sixth Circuit recently reiterated its view that "personal injuries and any pecuniary losses proximately resulting from a personal injury caused by a RICO violation . . . are . . . not recoverable. These losses are not recoverable because of the origin of the underlying injury." *Jackson v. Sedgwick*, 2013 U.S. App. LEXIS 19495, *23-24 (6th Cir. 2013). The Sixth Circuit

21

noted that courts have remained faithful to a distinction between redressable and non-redressable injuries by "excluding damages arising directly out of a personal injury, even though personal injuries often lead to monetary damages that would be sufficient to establish standing if the plaintiff alleged a non-personal injury." *Id*. at *24.

At its core, this case is about a *personal* injury to Benton which resulted in his untimely death. Indeed, the Second Amended Complaint includes claims for wrongful death, deprivation of constitutional rights, negligence, assault and battery, intentional infliction of emotion distress, and loss of consortium (Docket No. 70). Plaintiffs' alleged "deprivation of property interest" to Benton's estate and family members, including a right in the present civil claim, is really just a pecuniary loss resulting from personal injury. It "directly arises" out of Benton's personal injury. This loss is simply not cognizable for purposes of a civil RICO claim. Therefore, Plaintiffs fail to meet all requirements for a civil RICO claim. As such, Defendant McBroom's Motion for Judgment on the Pleadings with regard to the civil RICO claim is granted and the claim is dismissed.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate grants Defendant McBroom's Motion for Judgment on the Pleadings in its entirety. While the Court finds Defendant McBroom unable to benefit from the shroud of immunity, it also finds that Plaintiffs' claims as stated against Defendant McBroom lack merit. Accordingly, Plaintiffs' claims against Defendant McBroom are dismissed. **SO ORDERED.**

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   January 17, 2014

22