# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **DENISE M. COLEY,** | : | |
| **ADMINISTRATOR OF THE ESTATE OF** | | |
| CARLTON L. BENTON, *et. al.*, | : | Case No. 3:09-CV-00008 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | | **AMENDED** |
| **LUCAS COUNTY, OHIO**, *et.al*, | : | **MEMORANDUM DECISION AND ORDER** |
| | : | |
| Defendants. | : | |

## I. INTRODUCTION.

In accordance with the provisions of 28 U. S. C. § 636(c) and FED. R. CIV. P. 73, the parties in this case have consented to have the undersigned Magistrate Judge conduct any and all proceedings in the case (Docket No. 13).  Pending is a Motion for Judgment on the Pleadings [and/or Motion to Dismiss] filed by Defendant John E. Gray (Gray) (Docket No. 92), a Memorandum in Support (Docket No. 93), Omnibus Brief in Opposition to Defendants' Motion for Judgment on the Pleadings filed by all Plaintiffs (Docket No. 101) and Defendant Gray's Reply Memorandum in Support of the Motion for Judgment on the Pleadings (Docket No. 108).  The Magistrate previously granted, in part, and denied, in part, Defendant Gray's Motion for Judgment on the Pleadings [and/or Motion to Dismiss].  The previously filed Memorandum Decision and Order is amended as to Defendant Gray's claim under 42 U. S. C. § 1985.

## II. THE PARTIES.

Plaintiff, Denise M. Coley (Coley), a resident of Toledo, Lucas County, Ohio, is the mother of the late Carlton Lenard Benton and the administrator of Mr. Benton's estate (Docket No. 70, ¶ 1)

Plaintiff DeCarlos Benton, a resident of Portsmouth, Virginia, is the decedent's father (Docket No. 70, ¶ 2).

Plaintiff Carla Benton, a resident of Toledo, Lucas County, Ohio, is the decedent's sister (Docket No. 70, ¶ 4 ).

Plaintiff Maliki Larmond, a resident of Camden, New Jersey, is the decedent's son (Docket No. 70, ¶ 3).

Defendant Lucas County, Ohio, has its county seat in Toledo, Ohio, and the Board of Commissioners, a three-member panel of elected officials, holds the administrative power for the county.

Defendant Lucas County Sheriff's Office is a branch of Lucas County, Ohio government responsible for law enforcement and maintaining full police jurisdiction in the municipalities, villages and townships within Lucas County, Ohio (Docket No. 70, ¶ 5; www.co.lucas.oh.us).

At all times relevant to these proceedings, Defendant James A. Telb, a resident of Maumee, Ohio, was the chief law enforcement officer in the Lucas County Sheriff's Department.  Defendants John E. Gray, Robert M. McBroom and Jay M. Schmeltz, residents of Lucas County, Ohio, were employees of the Lucas County Sheriff's Office (Docket No. 70, ¶ 6).

## III. FACTUAL BACKGROUND

The underlying issues arise from an incident at the Lucas County Jail on May 30, 2004:

Carlton Benton had been returned from the intensive care unit at St. Vincent Hospital to a second floor medical unit at the jail.  He struggled with authority upon being

2

removed from the hospital unit and again at the jail in the second floor medical unit. The jury obviously determined that Defendant Gray applied a "sleeper hold"[1] to Mr. Benton during the course of attempting to remove restraints. That attempt was by not only Defendant Gray, but several other sheriff's deputies. Mr. Benton was rendered unconscious and the jury found that Defendant Gray left the medical unit without informing anyone of that condition or of the fact that Defendant Gray had used a "sleeper hold" on Mr. Benton. Benton was subsequently found unconscious in the medical cell; although paramedics were able to restore his pulse, he never regained consciousness and died on June 2, 2004 at the hospital.

*United States v. Gray, et. al.*, 2011 WL 198006, *1 (N.D. Ohio,2011) (unreported).

## IV. PROCEDURAL BACKGROUND.

A brief summary of the procedural history is provided to explain the interrelationship between the criminal and civil cases.

### A.    THE CRIMINAL CASE.

On April 14, 2009, Defendant Gray was indicted in this Court as follows:

Counts 1 & 2    DEPRIVATION OF RIGHTS UNDER COLOR OF LAW.
Assaulting and strangling detainee resulting in bodily injury and death, thereby depriving the detainee of a right to be secured and protected by the Constitution and laws of the United States.

Counts 4 & 5    FALSIFICATION OF A DOCUMENT.
Knowingly falsifying and making false entries in a document with intent to impede, obstruct and influence the investigation and proper administration of this matter.

Count 9    FALSE STATEMENT.
Knowingly and willfully making materially false statements to a Federal Bureau of Investigation (FBI) agent (Case No. 3:09 CR 182, Docket No. 2).

On December 3, 2010, the jury found Defendant Gray guilty of Counts 2, 4 and 5. Defendant Gray was acquitted on Counts 1 and 9 (Case No. 3:09 CR 182, Docket No. 256). On January 31,

---

[1]

The terms "sleeper hold" and "choke hold" are used interchangeably throughout this decision.

2011, United States District Court Judge David A. Katz committed Defendant Gray to the Bureau of Prisons for a period of 36 months on Counts two, four and five, to run concurrently (Case No. 09 CR 00182, Docket No. 284).

The Sixth Circuit Court of Appeals affirmed the conviction and sentence as to Defendant John Gray on September 27, 2012 and the United States Supreme Court denied the petition for *writ of certiorari* on January 23, 2013 (Docket Nos. 314 & 317).

### B. THE CIVIL CASE.

Before the criminal case was filed, Plaintiffs filed a Complaint on December 9, 2008, in which they asserted claims pursuant to 42 U. S. C. § 1983 against Defendant Lucas County, Ohio (Docket No. 1). The case was removed to this district court and after the indictment was filed, Plaintiffs amended the Complaint, adding the Lucas County Sheriff's Office, James A. Telb, John E. Gray, Jay M. Schmeltz and Robert M. McBroom as parties and amending the causes of action (Docket Nos. 2 & 21).

On June 1, 2009, the Magistrate Judge ordered that all further proceedings in this civil case be stayed and reopened only for good cause (Docket No. 16). On October 7, 2009, the Magistrate Judge reopened the case and granted Plaintiffs leave to amend the complaint (Docket Nos. 17, 19 & 20). Plaintiffs filed their First Amended Complaint on December 4, 2009 (Docket No. 21) and on March 10, 2010, the Magistrate Judge ordered that the case be stayed again pending the jury verdict (Docket No. 27). The stay was continued pending resolution of Defendant Gray's direct appeal in the criminal case (Docket Nos. 43 & 44). The stay was lifted and the case reopened after the Sixth Circuit Court of Appeals affirmed the conviction and sentence (Docket Nos. 46 & 48).

During the pendency of the petition for *writ of certiorari*, Defendant Gray timely filed an

4

Answer to Plaintiffs' First Amended Complaint (Docket No. 56).  With leave of Court, Plaintiffs filed

a Second Amended Complaint against all Defendants on April 29, 2013 (Docket No. 70) and

Defendant Gray timely filed an Answer (Docket No. 76).  On August 16, 2013, Defendant Gray filed

a Motion for Judgment on the Pleadings [and/or Motion to Dismiss] (Docket No. 92).  Plaintiffs filed

an Omnibus Brief in Opposition to all Motions for Judgment on the Pleadings (Docket No. 101) and

Defendant Gray filed a Reply to the Response (Docket No. 108).

## V. PLAINTIFFS' CLAIMS

In the Second Amended Complaint, Plaintiffs assert the following claims against Defendant

Gray in his official and individual capacities:

(1)    Conspiracy under 42 U.S.C. § § 1983 and 1985
(2)    Excessive force under the Fourth, Eighth and Fourteenth Amendments[2].
(3)    Failure to provide adequate and necessary medical treatment for Mr. Benton.
(4)    Loss of consortium.
(5)    Civil Racketeering Influence and Corrupt Organizations act (RICO) under federal and
         state laws.
(6)    Aiding and abetting.
(7)    Assault and Battery.
(8)    Civil Conspiracy under Ohio law.
(9)    Intentional infliction of emotional distress.
(10)   Negligence/recklessness/bad faith.
(11)   Wrongful death.

## VI. DEFENDANT GRAY'S POSITION.

---

[2]

Although Plaintiffs assert the excessive force claim under the Fourth, Eighth and Fourteenth Amendments, the
Magistrate will address Plaintiffs' excessive force claim under the Fourteenth Amendment only.  The Due Process Clause
of the Fourteenth Amendment protects a pretrial detainee from the use of excessive force that amounts to punishment.
*Griffin v. Hardrick,* 604 F.3d 949, 953 (6th Cir. 2010) *cert. denied,* 131 S.Ct. 601 (2010).  Convicted prisoners are
protected from the use of excessive force by the Eighth Amendment. *Id.*  "Free citizen[s]" may bring such claims under
the Fourth Amendment.  *Leary v. Livingston County,* 528 F.3d 438, 443 (6th Cir. 2008) (*citing Graham v. Connor,* 109
S.Ct. 1865, 1870-1871 (1989)).

In addition to his Memorandum in Support, Defendant Gray joined in and incorporated by reference the Motion for Judgment on the Pleadings filed by Defendant McBroom[3] (Docket No. 80). In the Motion for Judgment on the Pleadings/and or to Dismiss, Defendant Gray asserts immunity from suit under doctrines of qualified immunity and immunity under OHIO REV. CODE § 2744.01 *et. seq.* Accordingly, he seeks dismissal of all claims against him pursuant to FED. R. CIV. P. 12(c) and/or FED. R. CIV. P. 12(b)(6).

Defendant Gray argues additionally that he is entitled to judgment as a matter of law for these reasons:

(1) Plaintiffs have failed to allege an exception to the immunity doctrine.

(2) Plaintiffs cannot demonstrate that his conduct shocked the conscience or that he acted maliciously and sadistically in employing a sleeper hold to restrain an actively resisting pre-trial detainee.

(3) Plaintiffs' claims for conspiracy are barred by the intracorporate conspiracy doctrine.

(4) Plaintiffs have not pled the claim of civil conspiracy with the requisite sufficiency.

(5) Ohio does not recognize a tort of aiding and abetting.

(6) Plaintiffs fail to allege a state or federal RICO claim.

(7) Plaintiffs' Section 1985 claim is barred by the intracorporate conspiracy doctrine and/or the failure to allege or identify any class-based animus.

(8) Plaintiffs fail to state a claim and/or plead the Section 1983 claims with the requisite specificity (Docket Nos. 80, 93).

## VII. LEGAL STANDARD OF REVIEW

FED.R.CIV.P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to

---

[3]

In ruling on a motion to dismiss or motion for judgment on the pleadings, the Court may only consider documents attached to, **incorporated by (reference),** or referred to in the pleadings. *Whittiker v. Deutsche Bank National Trust Company,* 605 F.Supp.2d 914, 924 (N.D.Ohio, 2009). Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to the claims, and therefore may be considered without converting a Rule 12(b)(6) motion to dismiss to a Rule 56 motion. *Id.* (citing *Weiner v. Klais and Company*, 108 F.3d 86, 89 (6th Cir.1997)). Because Plaintiffs did not oppose the incorporation of Defendant McBroom's pleading and the pleadings themselves provided arguments central to Defendant Schmeltz's defense, the Magistrate reviewed and considered such claims when considering the merits of the Motion for Judgment on the Pleadings and/or Motion to Dismiss.

delay trial—a party may move for judgment on the pleadings." *Cole v. EV Properties, L.P.,* 2013 WL 1633649, *1 (N.D. Ohio, 2013). The standard for evaluating a motion for judgment on the pleadings is the same as that applicable to a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Id.* (*citing Ziegler v. IBP Hog Market, Inc*., 249 F.3d 509, 511–512 (6th Cir.2001)). The Sixth Circuit stated the standard for reviewing such a motion to dismiss in *Association of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545 (6th Cir.2007) as follows:

> The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. *Id.* (*citing Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955 (2007))[4]. The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (*citing Bell,* 127 S.Ct. at 1964–65) (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted RULE 12(b)(6) standard of *Conley v. Gibson*, 78 S.Ct. 99, 101 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Id.* (*citing Twombly*, 127 S.Ct. at 1969).

If an allegation is capable of more than one inference, this Court must construe it in the plaintiff's favor. *Id.* (*citing Columbia Natural Resources, Incorporated. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995) (*citing Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir.1993)). This Court may not grant a Rule 12(b)(6) motion merely because it may not believe the plaintiff's factual allegations. *Id.*

---

[4]

In *Bell Atlantic Corporation v. Twombly*, the United States Supreme Court held that while a complaint attacked by a RULE 12(b)(6) motion to dismiss does not need detailed factual allegations, the plaintiff is obligated to provide more than labels, suspicions, conclusions or a list of elements of the cause of action. The plaintiff must provide factual allegations that give rise to relief above the speculative level so that even if recovery is remote, the well-pleaded complaint may proceed. *Id.* (*see* 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235–36 (3rd ed.2004)).

7

(*citing Columbia*, 58 F. 3d at 1109). Although this is a liberal standard of review, the plaintiff still must do more than merely assert bare legal conclusions. *Id*. Specifically, the complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (*citing Scheid v. Fanny Farmer Candy Shops, Incorporated*, 859 F.2d 434, 436 (6th Cir.1988) (quotations and emphasis omitted).

Typically dismissals on the basis of qualified immunity are made pursuant to summary judgment motions, not RULE 12(b)(6) sufficiency of pleadings motions. *Shoup v. Doyle*, 2013 WL 5366142 *4 (S.D. Ohio 2013) (*citing Grose v. Caruso*, 284 F. App'x 279, 283 (6th Cir. 2008) (citations omitted)). This Circuit, however, permits a reviewing court to dismiss under FED.R.CIV.P. 12(b)(6) based on qualified immunity. *Id.* (*citing Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) (*citing Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987)). The court may answer the question of whether a plaintiff has stated a viable claim by applying the familiar RULE 12(b) (6) standards of construing their complaint in a light favorable to them, assuming the truth of all facts therein, and drawing any reasonable inferences in her favor. *Id.* (*citing Handy-Clay v. City of Memphis, Tennessee*, 695 F. 3d 531, 538 (6th Cir. 2012)). In other words, there is no heightened standard for claims brought under Section 1983. *Id.* (*citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 113 S.Ct. 1160, 1162 (1993)). The literal notice pleading standards apply and plaintiff is only required to meet the "plausibility" standard on the notice pleading standard described by the Supreme Court in *Twombly* and *Iqbal*[5]. *Id*. The defendant, therefore, still has the burden of demonstrating that the plaintiff failed to allege facts that suggest he

---

[5]

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the United States Supreme Court applied *Twombly's* construction to *Iqbal* and explained that the complaint failed to challenge the constitutionality of the detainee's arrest; rather it propounded policy arguments. The complaint did not move from conceivable to plausible. *Id.* at 1951.

or she was deprived of a federally protected right, privilege or immunity by actions that the defendant took under color of state law.  *Id*.

## VIII. DISCUSSION.

Plaintiffs use 42 U. S. C. § 1983 as a mechanism to enforce individual rights secured by the Constitution and laws of the United States.  Plaintiffs argue that the claims of conspiracy, excessive force and failure to provide medical treatment, implicate federal constitutional rights violations.

Defendant Gray asserts that he is immune from suit under the doctrine of qualified immunity.

### A. CIVIL CONSPIRACY UNDER 42 U.S.C. § 1983.

Plaintiffs assert a claim that Defendant Gray deliberately falsified certain documents and made false statements to the FBI for the sole purpose of depriving them of the rights guaranteed under the Constitution and Laws of the United States.  Plaintiffs argue, specifically, that these conspiratorial activities evidenced deliberate indifference and invidiously discriminatory animus to the use of excessive force against Mr. Benton, to the deliberate and intentional failure or deliberate indifference to provide medical care to Mr. Benton and upon his death, to the property interests of Mr. Benton's estate and of his family member Plaintiffs (Docket No. 70, ¶¶ 76-78).

To sustain a Section 1983 claim, a plaintiff must establish that she or he was deprived of a right secured by the Constitution or laws of the United States, and that this deprivation was caused by a person acting under the color of state law.  *Sizemore v. Forsthoefel,* 2013 WL 2950673, *3 (N.D.Ohio, 2013) (*citing Parratt v. Taylor*, 101 S.Ct. 1908, 1912-13 (1981)).  Generally to be considered to have acted "under color of state law," the person must be a state or local government official or employee.  *Id.*  Where the defendants are state or local police officers acting as police officers, they are presumed to be acting "under color" of state law, even where their actions violate or are unauthorized by state law.  *Slough v. Telb,* 644 F.Supp.2d 978, 987 (N.D.Ohio 2009) (*citing*

9

*Monroe v. Pape*, 81 S.Ct. 473, 480 (1961) (*overruled on other grounds by, Monell v. Department of Soc. Services of City of New York*, 98 S.Ct. 2018 (1978)); *see also United States v. Classic*, 61 S.Ct. 1031, 1043 (1941) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law.")).

A civil conspiracy under Section 1983 is "an agreement between two or more persons to injure another by unlawful action." *Sizemore, supra,* 2013 WL 2950673, at *3 (*citing Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir.2007); *Hooks v. Hooks*, 771 F.2d 935 (6th Cir.1985)). The plaintiff must plead conspiracy claims with some degree of specificity; vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under Section 1983. *Id.* (*citing Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir.2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987)). A plaintiff must make sufficient factual allegations to link two alleged conspirators in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy. *Id.* (*citing Amadasu v. The Christ Hospital*, 514 F.3d 504, 507 (6th Cir. 2008); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir.1993)). Where all of the defendants are members of the same collective entity, there are no two separate people to form a conspiracy. *Amadasu, supra,* 514 F. 3d at 507 (*see Hull v. Cuyahoga Valley Joint Vocational School District Board of Education*, 926 F. 2d 505, 510 (6th Cir. 1991)).

The Magistrate finds that Plaintiffs' conspiracy claim does not contain the requisite degree of specificity needed to sustain a Section 1983 conspiracy claim. It appears that Plaintiffs are arguing that Defendants conspired to cover up the use of excessive force. These allegations of a conspiracy claim are stated solely as legal conclusions with no facts to suggest a "meeting of the minds" among all Defendants. Moreover, Defendants Gray, Schmeltz, McBroom and Telb were all employees of

the same entity; accordingly, there are not the requisite two persons with whom a conspiracy can be formed.

Defendant Gray is entitled to judgment as a matter of law on this claim for the reason that Plaintiffs have failed to state a claim of conspiracy.

**B.    EXCESSIVE FORCE.**

Plaintiffs assert that Defendant Gray violated Mr. Benton's Fourteenth Amendment rights by employing excessive force to restrain him while he was handcuffed, secured with a belly chain and in leg irons.  Defendant Gray asserts the defense of qualified immunity which protects him from suit.

The qualified immunity challenge imposes a burden on the plaintiff beyond simply stating a viable claim under Section 1983.  *Shoup v. Doyle*, *supra,* 2013 WL 5366142, at *5.  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* (*citing Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982)).  The qualified immunity test is often formulated as a two-part test, requiring a court to decide both "whether the facts that a plaintiff has alleged, *Id.* (*see* FED. R. CIV. P. 12(b)(6), (c)) or shown (*see* RULES 50, 56) make out a violation of a constitutional right," as well as "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct."  *Id.* (*citing Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (*citing Saucier v. Katz*, 121 S.Ct. 2151 (2001)).  Thus, even if the plaintiff states a viable Section 1983 claim, he or she must, in addition, demonstrate that the constitutional rights were "clearly established" at the time of the alleged violation to survive the defendants' qualified immunity challenge.  *Id.* (*see Jackson, supra,* 429 F.3d at 589 (*citing Mitchell v. Forsyth*, 105 S.Ct. 2806, 2815-16 (1985) and stating that "once the [defendants] raise qualified immunity, *Jackson* must plead the

11

violation of a clearly established constitutional right")).

## 1. DID A CONSTITUTIONAL VIOLATION OCCUR?

A pretrial detainee may assert an excessive-force claim against an official under the rubric of the Fourteenth Amendment's Due Process Clause. *Leary v. Livingston County,* 528 F.3d 438, 443 (6th Cir. 2008) (*citing Graham v. Connor*, 109 S.Ct. 1865, 1871 fn. 10 (1989); *see also United States v. Budd*, 496 F.3d 517, 530 (6th Cir.2007)).   The substantive due process component of the Fourteenth Amendment protects citizens against conduct by law enforcement officers that "shocks the conscience and excessive force that amount to punishment." *Reynolds v. Guerra*, 670 F. Supp. 2d 633, 640 (N.D.Ohio 2009).  All excessive force claimants "must show something more than *de minimis* force."  *Id*. (*citing Leary, supra*, 528 F. 3d at 443).

Pretrial detainees are entitled to the same constitutional rights as those enjoyed by convicted prisoners.  *Id.* (*citing Bell v. Wolfish*, 99 S.Ct. 1861, 1877 (1979)).  Although the Eighth Amendment does not protect pretrial detainees, "the Eighth Amendment rights of prisoners are analogized to those of detainees under the Fourteenth Amendment to avoid the anomaly of extending greater constitutional protection to a [convicted prisoner] than to one awaiting trial."  *Id.* at 639-40 (*citing Webb v. Bunch*, No. 93–5258, 1994 WL 36854, at *4, 1994 U.S.App. LEXIS 2331, at *11 (6th Cir.1994) (*citing Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir.1985)).  Drawing upon the Eighth Amendment, a relevant consideration for excessive force claims under the Fourteenth Amendment becomes whether the force "was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm."  *Id.* (*citing Webb*, 1994 WL 36854, at *4, 1994 U.S.App. LEXIS 2331, at *11; *Batey v. County of Allegan*, No. 00–450, 2002 U.S. Dist. LEXIS 4918, at *16 (W.D.Mich. 2002)).

In the instant case, Defendant Gray has failed to present relevant authority from this

12

jurisdiction regarding the constitutionality of choke holds.  Construing the allegations in the Second Amended Complaint in Plaintiffs' favor, Mr. Benton posed no threat to the safety of the officers because he was handcuffed to the medical bed and shackled with a belly chain and leg irons.  When the deputies attempted to remove his shackles, Mr. Benton resisted the removal of his restraints by squirming, struggling and flailing his legs (Docket No. 70, ¶¶ 25-27).  Plaintiffs have alleged sufficient facts that suggest Defendant Gray administered the choke hold and Mr. Benton became still, listless, motionless and limp forthwith.  Plaintiffs have adequately argued the occurrence of Defendant Gray's allegedly unreasonable acts of force that resulted in injury (Docket No. 70, ¶ 28).

### 2.  CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT OF WHICH A REASONABLE PERSON WOULD HAVE KNOWN?

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Clemente v. Vaslo,* 679 F.3d 482, 490 (6th Cir. 2012) (*citing Anderson v. Creighton*, 107 S.Ct. 3034, 3039 (1987)).  "It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Id.* (*citing Brosseau v. Haugen*, 125 S.Ct. 596, 598 (2004) (*quoting Saucier v. Katz*, 121 S. Ct. 2151, 2156 (2001)).  "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."  *Id.* (*citing Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2084 (2011) (*citing Saucier*, *supra,* 121 S.Ct. at 2156)).  Thus, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* (*citing Saucier*, 121 S.Ct. at 2156 (*citing Wilson v. Layne*, 119 S.Ct. 1692, 1699 (1999)).

13

The Magistrate acknowledges that maintenance of security and discipline may often require physical contact that could be considered excessive or an assault and battery.  Even if this were a novel situation for Defendant Gray, it is difficult to understand how a reasonable official could not have known that it would be constitutionally impermissible to hold a shackled pre-trial detainee in such a manner that he became unconscious.  Plaintiffs have alleged sufficient facts that suggest the contours of the force used was excessive.

Balancing the nature and quality of the intrusion on Mr. Benton's Fourth and Fourteenth Amendment interests in evaluating the merits of Defendant Gray's request for qualified immunity, Plaintiffs' allegations militate for a finding that it was objectively unreasonable for Defendant Gray to use force that crossed the threshold between reasonable and excessive.  The Magistrate finds that Defendant Gray is not entitled to the shield of qualified immunity because the facts as alleged make out a clearly established constitutional violation of which a reasonable officer would have been aware. **C.    FAILURE TO PROVIDE MEDICAL TREATMENT.**

Plaintiffs contend that Defendant Gray violated Mr. Benton's Fourteenth Amendment rights by exhibiting a deliberate indifference to his medical needs while he was detained pretrial in the Lucas County Jail[6].

To maintain a cause of action under Section 1983 for failure to provide medical treatment, a plaintiff must establish that the defendants were deliberately indifferent to basic medical needs. *Reynolds v. Guerra*, 670 F.Supp.2d 633, 642 (N.D.Ohio, 2009) (*citing Ewolski v. City of Brunswick*,

---

[6]

"Pretrial detainees have a right under the Fourteenth Amendment to adequate medical treatment, a right that is analogous to the right of prisoners under the Eighth Amendment."  *Spears v. Ruth,* 589 F.3d 249, 254 (6th Cir. 2009) (*citing Estate of Carter v. City of* Detroit, 408 F.3d 305, 311 (6th Cir.2005) (*citing Watkins v. City of Battle Creek*, 273 F.3d 682, 685–686 (6th Cir.2001)).

287 F.3d 492, 510 (6th Cir.2002); *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir.2001)). "Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [a plaintiff's] health and safety." *Id*. (*citing Ewolski*, 287 F. 3d at 510). A medical need is objectively serious if a lay person would recognize the seriousness of the need for medical care. *Id*. (*citing Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir.2005)).

A constitutional claim for denial of medical care has objective and subjective components. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 -896 (6th Cir. 2004) (*citing Farmer v. Brennan*, 114 S.Ct. 1970 (1994); *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001); *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir.2000)). The objective component requires the existence of a "sufficiently serious" medical need. *Id*. (*citing Farmer*, 114 S.Ct. at 1977; 1970); (*Estelle*, 97 S.Ct. at 291). "As the Supreme Court explained in *Farmer*, 'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.' " *Id*. (*citing Brown* 207 F.3d at 867) (*quoting Farmer*, 114 S.Ct. at 1977).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Id*. (*citing Brown*, 207 F.3d at 867) (*citing Farmer*, 114 S.Ct. at 1977). This subjective component "should be determined in light of the prison authorities' current attitudes and conduct." *Id*. (*citing Helling v. McKinney*, 113 S.Ct. 2475, 2482 (1993)). Deliberate indifference "entails something more than mere negligence," *Id*. at 896 (*citing Farmer*, 114 S.Ct. at 1977-78), but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. (*citing Farmer*, 114 S. Ct. at 1977-78). Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. (*citing Farmer*, 114 S.Ct. at 1977-1978; *see also LeMarbe v. Wisneski*, 266 F.3d 429, 435 (6th

15

Cir.2001)).  "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference."  *Id.* (*citing Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.1994)).

Plaintiffs have alleged facts that if true, state a claim for relief.  Mr. Benton was detained under conditions posing a substantial risk of serious harm.  It is beyond dispute that he had a right to medical treatment for a serious medical need.  Such constitutional right was clearly established at the time of the incident.  Failing to resuscitate or immediately call medical personnel in response to an unconscious, non-breathing prisoner clearly rises to the objective level of a constitutional violation.     As to the subjective component, when the facts are viewed in a light most favorable to Plaintiffs, Mr. Benton showed obvious signs of gurgling, gasping for air and debilitating immobility after Defendant Gray administered the choke hold.  Plaintiffs further allege that Defendant Gray  simply closed the cell and left without determining if Mr. Benton had a medical need.  Such allegations raise a question of fact as to whether Defendant Gray's conduct constitutes deliberate indifference to Mr. Benton's need for medical assistance.

The Magistrate finds that Defendant Gray is not entitled to qualified immunity because the facts as alleged make out a clearly established constitutional violation of which a reasonable officer would have been aware**.**

D.     CONSPIRACY UNDER 42 U. S. C. § 1985.

In the Second Amended Complaint, Plaintiffs alleged that Defendant Gray conspired with Defendants Schmeltz, McBroom and Telb to falsify documents and lie to the Federal Bureau of Investigation (FBI), in violation of 42 U. S. C. § 1985.

Defendant Gray incorporated the Motion for Judgment on the Pleadings, in which Defendant McBroom argues that subsections (1) and (2) of Section 1985 do not apply in this case and further

16

that Plaintiffs' Section 1985 claim fails for two reasons.  First, the intracorporate conspiracy doctrine precludes Plaintiffs' Section 1985 claim.  Second, Plaintiffs' Section 1985 claim fails to allege or identify any class based animus (Docket No. 80-1).

Plaintiffs did not identify the subsection of 42 U. S.C. § 1985 on which they relied; consequently, the Magistrate Judge assesses the applicability of all three subsections to Section 1985.

## 1. SECTION 1985(1).

The statute, 42 U. S. C . § 1985(1), states:

> If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties; ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U. S. C. § 1985(1)(Thomson Reuters 2013).

Plaintiffs have offered conclusory allegations that Defendants Gray, Schmeltz, McBroom and Telb acted in concert when they lied to a FBI agent for the purpose of depriving them of equal protection and/or obstructing the course of justice in this case.  Such claim, however, is barred by the " 'intracorporate conspiracy' doctrine," which provides that where "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Amadasu v. The Christ Hospital*, 514 F.3d 504, 507 (6th Cir.2008) (*See Hull v. Cuyahoga Valley Joint Vocational School District Board of Education*, 926 F.2d 505, 510 (6th Cir.1991).

At the time the alleged conspiracy was formed, Defendants Gray, Schmeltz, McBroom and Telb were employed by the same entity.  Because there are not two separate people to form the

17

conspiracy, Plaintiffs have failed to state a plausible claim under Section 1985(1).  Defendant Gray

is entitled to judgment as a matter of law.

2.    **SECTION 1985(2)**.

This section of 42 U.S.C. § 1985(2), states:

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the law.

42 U.S.C.. § 1985(2) (Thomson Reuters 2013).

There are three reasons that Plaintiffs have failed to state a sufficient claim under Section

1985(2).  First, Defendants Gray, Schmeltz, McBroom and Telb were all employed by the same

entity.  Because there are not two separate people to form the conspiracy, Plaintiffs have failed to

state a plausible claim under Section 1985(2).  Second, to prevail in a claim under the second clause

of Section 1985(2), a plaintiff must show "some racial, or perhaps otherwise class-based, invidiously

discriminatory animus behind the conspirators' action."  *Slough, supra*, 644 F. Supp. 2d at 966 (*citing*

*Kush v. Rutledge*, 103 S.Ct. 1483, 1487 (1983) (*quoting Griffin v. Breckenridge*, 91 S.Ct. 1790, 1798

(1971); *see also Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir.1996)).  Even accepting as true all the

facts pleaded in the Second Amended complaint, Plaintiffs have not alleged some racial or class

based animus.  Third, the purpose of this statute is to insulate witnesses, parties, grand jurors or petit

jurors from conspiracies to pressure or intimidate them in the performance of their duties.  Plaintiffs

18

have not alleged that any of the Defendants engaged in the type of force, intimidation or threat that is actionable under Section 1985(2).

The Motion for Judgment on the Pleadings is granted as to the claim made against Defendant Gray pursuant to 42 U. S. C. § 1985(2).

**3.     SECTION 1985(3).**

Section 1985(3) provides:

> If two or more persons in any State or Territory conspire  . . .  for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against one or more of the conspirators.

42 U.S.C. § 1985(3) (Thomson Reuters 2013).

Section 1985(3) is concerned only with conspiracies to deny equality of rights.  *Taylor v. Brighton Corporation*, 616 F. 2d 256, 266 (1980).  The gravamen of a claim under Section 1985(3) is denial of equal protection or equal privileges or immunities.  *Id.*  The class-based animus requirement is a means to confine Section 1985(3) to its intended purpose:  to provide a means of redressing deprivations of equality under the law.  *Id.*

There are two reasons that Plaintiffs have failed to state a sufficient claim under 42 U.S.C. § 185(3).  First, Plaintiffs fail to allege that there are two separate people to form a conspiracy. Second, Plaintiffs have failed to set forth essential elements pertaining to the factual allegations that the conspiracy was motivated by some class-based, invidiously discriminatory animus.

Plaintiffs' Second Amended Complaint does not contain allegations respecting all the material elements required to sustain a recovery under 42 U. S. C. § 1985(3).  Accordingly, the Motion for

19

Judgment on the Pleadings is granted as to the claim under Section 1985(3) against Defendant Gray.

**E.     RICO**.

Here, Plaintiffs allege that all Defendants formed an "association" for the common purpose of engaging in a course of conduct designed to mislead the FBI.  Plaintiffs further allege that the "association" conspired to file fraudulent documents and make false statements and conducted a series of criminal acts formed to conceal an underlying criminal act committed by Defendants Gray and Schmeltz.  Plaintiffs contend that this series of criminal acts constitute the predicate acts required for a RICO claim (Docket No. 67,¶ 99).

Defendant Gray points out that Plaintiffs have failed to allege a predicate offense thus barring their state and federal RICO claims.

**1.     THE LAW**.

Pursuant to 18 U.S.C. § 1962(c), "it shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . "  *Eva v. Midwest National Mortgage Bank, Incorporated*, 143 F.Supp.2d 862, 873 -874 (N.D.Ohio, 2001) (emphasis added). To state a civil RICO claim under 18 U.S.C. § 1962(c)[7], plaintiffs **must** plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Huff v. FirstEnergy Corporation*, 2013 WL 5234224, *11 (N.D.Ohio, 2013) (*citing Sedima. S.P.R.L.* v. *Imrex Company, Incorporated*, 105 S. Ct. 3275, 3285 (1985); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir.2006)).

---

[7]

Plaintiffs also bring a substantive RICO claim under Ohio law.  Ohio's statute "is patterned after the federal RICO Act[,]" and therefore, "analysis of the [Ohio statute] is analogous to that of the federal RICO statute."  *Huff, supra*, 2013 WL 5234224, at *16.

The RICO statute defines an "enterprise" to include any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.  18 U.S.C. § 1961(4) (Thomson Reuters 2013).  The enterprise must be separate from the "'person . . . participating in an enterprise's affairs,' and thus "a corporation cannot be named as the liable 'person' and simultaneously fulfill the 'enterprise' requirement as well." *Puckett v. Tennessee Eastman Company*, 889 F.2d 1481, 1489 (6th Cir.1989).  In order to establish the existence of an enterprise under Section 1962(c), a plaintiff is required to prove: (1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged.  *Ouwinga v. Benistar 419 Plan Services, Incorporated*, 694 F.3d 783, 793 (6th Cir. 2012) (*citing United States v. Chance*, 306 F.3d 356, 372 (6th Cir.2002) (*citing Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir.1993)).

Racketeering activity" is defined in 18 U.S.C. § 1961(1) as any one of the list of state and federal offenses that qualify as racketeering activity.  *Eva, supra*, 143 F.Supp.2d at 874.  To establish a "pattern of racketeering activity," a plaintiff must allege at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.  18 U.S.C. § 1961(5) (Thomson Reuters 2013).  Congress intended that to prove a pattern of racketeering activity, a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.  *H.J. Incorporated v. Northwestern Bell Telephone Company*, 109 S.Ct. 2893, 2901 (1989).  Thus, a single individual or corporation cannot be both the "enterprise" and the "person" under RICO.  *Id.* (*see Davis v.*

21

*Mutual Life Insurance Company of New York*, 6 F.3d 367, 377 (6th Cir.1993), *cert. denied*, 114 S.Ct. 1298 (1994)).

### 2.   THE APPLICABILITY OF RICO IN THIS CASE.

In stating the basis for their RICO claim, Plaintiffs have done nothing more than assert bare legal conclusions.  There are no direct or inferential allegations respecting all the material elements that are required to sustain a recovery under viable legal theories of state and federal law.  In fact, the Magistrate finds at least four reasons that Plaintiffs have failed to state a claim for which relief can be granted under the RICO statutes.  First, Plaintiffs reference but do not identify at least one predicate offense included within Section 1961 that was connected to the affairs and operations of the criminal enterprise.  Second, Plaintiffs fail to detail the alleged pattern of corrupt activity that consists of at least two acts of racketeering activity that occurred within ten years after the prior act of racketeering activity.  Third, Plaintiffs fail to satisfy the third element because they did not make allegations sufficient to show that the enterprise existed for a purpose separate and distinct from the pattern of racketeering.  Fourth, Plaintiffs fail to allege that the persons participating in the enterprise are distinct from all Defendants.

Having failed to appropriately plead a violation under federal or state RICO statutes, the Magistrate grants the Motion for Judgment on the Pleadings with respect to the federal and state RICO claims against Defendant Gray.

### F.   PLAINTIFFS STATE LAW CLAIMS.

This district court has supplemental and subject matter jurisdiction to address additional state law claims related to the federal claims.  Plaintiffs assert claims of aiding and abetting, assault and battery, civil conspiracy, intentional infliction of emotional distress, negligence, wrongful death and the derivative claim of loss of consortium against Defendant Gray.  Defendant Gray claims that he

is immune from liability.

1.    AIDING AND ABETTING.

Plaintiffs argue that Defendant Gray aided and abetted Defendant Schmeltz in the civil

conspiracy.  Defendant Gray claims that Plaintiffs fail to state a claim for which relief can be granted.

The Supreme Court of Ohio has never expressly adopted Section 876 of the RESTATEMENT

OF THE LAW 2D, TORTS (1979), which provides:

> "For harm resulting to a third person from the tortious conduct of another, one is
> subject to liability if he knows that the other's conduct constitutes a breach of duty and
> gives substantial assistance or encouragement to the other so to conduct himself" and
> few Ohio cases have applied it.

*Whelan v. Vanderwist of Cincinnati*, 2011 WL 6938600, *3 (2011) (*citing Chester Township*

*Board of Trustees v. Bank One,* N.A., 11th Dist. No.2007–Ohio–3365, at ¶ 65. (Citation omitted.).

Similarly, the Tenth and Second District Courts of Appeals have held that Ohio does not recognize

a claim for aiding and abetting common-law fraud.  *Id.* (*citing Federated Management Company v.*

*Coopers & Lybrand*, 137 Ohio App.3d 366, 381, 738 N.E.2d 842 (2000))."

Recently, the United States District Court for the Northern District of Ohio certified this

question of state law to the Supreme Court of Ohio:

> Under the applicable circumstances, does Ohio recognize a cause of action for tortious
> acts in concert under the RESTATEMENT (2D) OF TORTS, § 876?

On August 28, 2012, the Supreme Court of Ohio stated emphatically that the Court had never

recognized a claim under 4 RESTATEMENT 2D OF TORTS, SECTION 876 (1979) and the Court refused

to extend the doctrine under the circumstances of the case.  *DeVries Dairy, LLC v. White Eagle*

*Cooperative Association,* 132 Ohio St. 2d 516, 974 N.E. 2d 1194 (2012).

The Magistrate finds that the Ohio Supreme Court does not recognize Plaintiffs' civil aiding

and abetting claim as viable claims under Ohio law.  As a matter of law, such claims must be

dismissed.

### 2. ASSAULT AND BATTERY.

Plaintiffs allege that Defendant Gray assaulted Mr. Benton when he handcuffed him to the bed and strangled him.  Defendant Gray claims that he is entitled to immunity from state law claims for the reasons that his acts or omissions were within the scope of his duty and his acts were not with malicious purpose, in bad faith or in a wanton or reckless manner.

The law not only clothes an officer under duty to make an arrest with power to accomplish his purpose, but it also protects him while in the exercise of his authority.  *Skinner v. Brooks*, 74 Ohio App. 288, 291, 58 N. E. 3d 697, 698 (1944).  It is an officer's duty to overcome all resistance, and bring the party to be arrested under physical restraint, and the means he may use are coextensive with the duty, or, as sometimes expressed, commensurate with his purpose, but he must use no more force than is reasonably necessary for the purpose.  *Id.*  If an officer uses more force than is necessary to make an arrest and protect himself from injury, he is liable for assault and battery.  *Id.*  Law enforcement officers are privileged to commit assault and/or battery to affect an arrest unless they use excessive force.  *Burgess v. Fischer,* 890 F.Supp.2d 845, 859 (S.D.Ohio, 2012) (*citing Hale v. Vance*, 267 F. Supp. 2d 725, 736 (S.D.Ohio 2003)).

Therefore, to adequately plead a claim of battery under Ohio law, a plaintiff must allege an intentional harmful or offensive touching.  *Hayward v. Cleveland Clinic Foundation* 878 F.Supp.2d 860, 864 -865 (N.D.Ohio, 2012)(*citing Northern v. Medical Mutual of Ohio*, 2006 WL 562193, at ¶ 10 (2006)(*See also Anderson v. St. Francis–St. George Hospital*, 77 Ohio St.3d 82, 84, 671 N.E.2d 225 (1996) (battery requires a touching)).  Assault is the "willful threat to harm or touch another offensively" that reasonably places the other in fear of such contact. *Id.* (*citing Knox v. Hetrick*, 2009–Ohio–1359, at ¶ 49, 2009 WL 792357 (March 26, 2009) (internal citations and quotations

omitted).  The threat "must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching."  *Id.*

OHIO REVISED CODE Chapter 2744 creates a presumption that political subdivisions and their law enforcement officers are immune from liability from state tort claims.  *Ruble v. Escola,* 898 F.Supp.2d 956, 981-982 (N.D.Ohio, 2012) (*citing Cook v. Cincinnati*, 103 Ohio App.3d 80, 658 N.E.2d 814, 820 (1995)).  A sheriff's office is a political subdivision as defined by OHIO REV. CODE § 2744.01(F).  *Frazier v. Clinton County Sheriff's Office,* 2008 WL 4964322, *5 (2008) (*citing Jones v. Franklin County Sheriff's Dept.* (June 21, 1999), Butler App. No. CA99-01-004, at 7-8; *Barstow v. Waller,* Hocking App. No. 04CA5, 2004-Ohio-5746, ¶ 30).

The question of whether a governmental employee or political subdivision is entitled to statutory immunity is a question of law for a court's determination.  *Hunt v. City of Toledo Law Department*, 881 F.Supp.2d 854, 883 -884 (N.D.Ohio, 2012) (*citing Conley v. Shearer,* 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992)).  Even as to the employees of political subdivisions, immunity is the default condition and will attach to the conduct of such employees, unless one of the exceptions applies.  *Id.* (*citing Miller v. Leesburg*, 87 Ohio App.3d 171, 175, 621 N.E.2d 1337 (1993); *Walsh v. Erie County Dept. of Job and Family Services*, 240 F.Supp.2d 731, 763 (N.D.Ohio, 2003)).

OHIO REV. CODE § 2744.03(A)(6) extends the grant of immunity that Section 2744.01(A) affords political subdivisions to all employees of a political subdivision.  *Id.*  In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the REVISED CODE, the employee is immune from liability unless one of the following applies:

      (a)      The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

      (b)      The employee's acts or omissions were with malicious purpose, in bad faith, or in a

wanton or reckless manner;

(c)    Civil liability is expressly imposed upon the employee by a section of the Revised Code . . .

*Id.* at 883-884 (*citing* Ohio Rev. Code § 2744.03(A)(6); *Morrison v. Board of Trustees of Green Township*, 529 F.Supp.2d 807, 835 (S.D.Ohio, W.D.2007)).

"Malicious purpose" means indulging or exercising malice; harboring ill will or enmity. *Teramano v. Teramano*, 6 Ohio St. 2d 117, 118, 216 N. E. 2d 375, 377 (1966).

A lack of good faith is the equivalent of "bad faith," and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. *Roberts v. Personal Service Insurance Company,* 12 Ohio App.3d 92, 93, 467 N.E.2d 257, 258 (1983). It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. *Id.* It also embraces actual intent to deceived or mislead another. *Id*.

"Wanton misconduct" is the "failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Baker v. Union Township, Ohio,* 2013 WL 4502736, *14 (S.D.Ohio, 2013) (*citing Anderson v. Massillon*, 134 Ohio St.3d 380, 388, 983 N.E.2d 266 (2012)). "Reckless conduct" is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id*.

The Magistrate finds that Defendant Gray is not entitled to immunity under Ohio Revised Code § 2744 at this stage of the litigation on the assault and battery claim brought pursuant to Ohio law. Here, Plaintiffs pled that Defendant Gray's actions in securing Mr. Benton with handcuffs and subsequently administering the choke hold were sufficient to bring about significant offensive contact intended to inflict personal injury. Plaintiffs allege sufficient facts that if true, create a jury question

on whether the presumption of immunity has been rebutted. The trier of fact must resolve the issue of whether Defendant Gray's acts or omissions were with malicious purpose, in bad faith or in a wanton or reckless manner. Given that Plaintiffs have stated a legally cognizable claim, the Motion for Judgment on the Pleading is denied with respect to Plaintiffs' claims for assault and battery.

### 3. CIVIL CONSPIRACY.

Plaintiffs assert a claim that Defendant Gray deliberately falsified certain documents and made false statements to the FBI for the sole purpose of depriving them of the rights guaranteed under Ohio law. Plaintiffs argue, specifically, that these conspiratorial activities evidenced deliberate indifference and invidious discriminatory animus to the use of excessive force against Mr. Benton, to the deliberate and intentional failure or deliberate indifference to provide medical care to Mr. Benton and upon his death, to the property interests of Mr. Benton's estate and of the family member Plaintiffs (Docket No. 67, ¶¶ 76-78).

Defendant Gray argues that since all Defendants are members of the same collective entity, there are no two separate people to form a conspiracy.

Ohio defines civil conspiracy as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Federal Insurance Company v. Webne*, 513 F.Supp.2d 921, 926-927 (N.D.Ohio, 2007) (*citing Kenty v. Transamerica Premium Insurance Company*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995) (internal citation omitted)). To establish a claim of civil conspiracy, a plaintiff must allege:

    (1)     a malicious combination;
    (2)     of two or more persons;
    (3)     injury to person or property; and
    (4)     existence of an unlawful act independent from the actual conspiracy. *Id*.

Malice "is that state of mind under which a person does a wrongful act purposely, without a

reasonable or lawful excuse, to the injury of another." *Id.* (*citing Pickle v. Swinehart*, 170 Ohio St. 441, 443, 166 N.E.2d 227 (1960) (internal citation omitted)).

The "intra-corporate conspiracy doctrine" provides that where all of the alleged co-conspirators are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Ohio Vestibular & Balance Centers, Incorporated v. Wheeler,* 2013 WL 5552768, *7 (2013) (*citing Kerr v. Hurd*, 694 F.Supp.2d 817, 834 (S.D.Ohio 2010)).

In Ohio, a civil conspiracy claim cannot succeed without an underlying unlawful act. *Federal Insurance Company, supra*, 513 F. Supp. 2d at 927 (*citing Dickerson Internationale, Incorporated v. Klockner*, 139 Ohio App.3d 371, 380, 743 N.E.2d 984 (2000); *see also Williams v. Aetna Financial Company*, 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998)).

Here, all of the Defendants were employed by the same collective entity. As a matter of law, there are not two or more persons to form the plan to engage in an unlawful act. No action can lie for conspiracy against Defendant Gray.

Defendant Gray's Motion for Judgment on the Pleadings and/or Motion to Dismiss is granted as to Plaintiffs' state claim of conspiracy.

### 4.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Plaintiffs contend that Defendant Gray knew that his acts resulting in death would cause serious emotional distress to Mr. Benton's survivors. Consequently, he concealed his participation in Mr. Benton's death. Defendant Gray claims that he is also entitled to immunity from this state law claim for the reasons that his acts or omissions were within the scope of his duty and his acts were not with  malicious purpose, in bad faith or in a wanton or reckless manner.

Under Ohio law, the elements of a claim of intentional infliction of emotional distress are:

(1)    the defendant intended to cause emotional distress or knew or should have known that

its conduct would result in serious emotional distress to the plaintiff;

(2)     the defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;

(3)     the defendant's conduct was the proximate cause of plaintiff's psychic injury; and

(4)     the plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Kovac v. Superior Dairy, Incorporated*, 930 F.Supp.2d 857, 869 -870 (N.D.Ohio, 2013)

(*citing Talley v. Family Dollar Stores of Ohio, Incorporated*, 542 F.3d 1099, 1110 (6th Cir.2008)

(*quoting Ekunsumi v. Cincinnati Restoration, Incorporated*, 120 Ohio App.3d 557, 698 N.E.2d 503,

506 (1997)).

Plaintiffs have made bare assertions but they have failed to adequately plead the elements of intentional infliction of emotional distress. Plaintiffs did not plead that Defendant Gray intended to cause them emotional distress or that he knew or should have known that his conduct would result in serious emotional distress. With respect to the second element, Plaintiffs have not supported their legal conclusion with factual allegations that might plausibly give rise to a finding that Defendant Gray's conduct was outrageous and extreme. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009). Plaintiffs have failed to assert a psychic injury let alone a claim that Defendant Gray was the cause of such injury.

The Magistrate need not address whether Defendant Gray is entitled to immunity because Plaintiffs' Second Amended Complaint fails to state an intentional infliction of emotional distress claim that is plausible on its face. The Motion for Judgment on the Pleadings [and/or Motion to Dismiss] is granted as to the intentional infliction of emotional distress claim.

### 5.    NEGLIGENCE/RECKLESSNESS/BAD FAITH

Plaintiffs claim that Defendant Gray acted with malicious purpose or in a wanton or reckless manner when he physically assaulted Mr. Benton, and administered the choke hold, proximately

causing Mr. Benton's death.

Plaintiffs are seeking to circumvent or avoid Defendant Gray's immunity from suit by couching some of their intentional tort claims under the guise of negligence.  The underlying acts which Plaintiffs allege to be negligent are by nature conduct associated with intentional torts. Defendant Gray is persumed immune under OHIO REV. CODE 2744.03(A)(6).  A claim for negligence is insufficient to remove the cloak of immunity.  *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 316 (6th Cir.2005).  Reciting the necessary elements of mere negligence in the Second Amended Complaint is not sufficient to divest Defendant Gray of the cloak of immunity conferred on him by state law.

Recklessness is a catchall of the standard for establishing a culpable mental state.  There is no common law or statutory cause of action for recklessness in Ohio.

The term "bad faith" is commonly used in the law of contracts, insurance and other commercial dealings.  *See Slater v. Motorists Mutual Insurance Company,* 174 Ohio St. 148 (1962). Bad faith is not a *per se* actionable tort in this state.

Plaintiffs have failed to state a claim for which relief can be granted and the Magistrate grants the Motion for Judgment on the Pleadings [and/or Motion to Dismiss] this claim against Defendant Gray.

### 6.  WRONGFUL DEATH.

Plaintiffs contend that Defendant Gray caused Mr. Benton's death, having first administered the choke hold and then leaving him unconscious in the cell without summoning medical treatment or assistance.  Plaintiffs allege a wrongful death claim pursuant to OHIO REV. CODE § 2125.01 which provides:

When the death of a person is caused by wrongful act, neglect, or default which would

have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued * * * shall be liable to an action for damages."

*Mousa v. Mt. Carmel Health Systems, Incorporated*, 2013 WL 3270907, * 2 (2013).

Defendant Gray reasserts his claim of entitlement to immunity from state law claims for the reasons that his acts or omissions were within the scope of his duties and his acts were not with malicious purpose, in bad faith or in a wanton or reckless manner.

A wrongful death action "shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent." *Id*. (*citing* OHIO REV. CODE § 2125.02(A)(1)). The personal representative brings a wrongful death action for the injuries suffered by the beneficiaries of the decedent as a result of the death. *Id.* (*citing Peters v. Columbus Steel Castings Company*, 115 Ohio St.3d 134, 873 N.E.2d 1258, ¶ 11(2007)). The personal representative is only a nominal party, and the real parties in interest are the beneficiaries of the decedent because they have suffered an injury. *Id*. (*citing Toledo Bar Association v. Rust*, 124 Ohio St.3d 305, 921 N.E.2d 1056, ¶ 21 (2010)).

As with the claim for assault and battery, there is no dispute that in attending to Mr. Benton during his stay at the jail, Defendant Gray was engaged in a governmental function. Assuming the truth of the arguments made therein and drawing any reasonable inferences in their favor, Plaintiffs advance allegations that Defendant Gray was the proximate cause of Mr. Benton's death and he had the means and opportunity to prevent the harm from occurring. When determining whether Plaintiffs have rebutted the presumption that Defendant Gray is entitled to immunity, the Magistrate notes that Plaintiffs have sufficiently pleaded that Defendant Gray restrained a upset detainee, choked him and caused his death. After observing that Mr. Benton's breathing was labored, Defendant Gray exited the medical cell without summoning medical help. These allegations raise a question of fact as to

31

whether Defendant Gray's acts or omissions were with malicious purpose, in bad faith or in a wanton or reckless manner, thereby rebutting the presumption of immunity.  Defendant Gray is not shielded from liability for civil damages insofar as these factual issues must be resolved.

The Magistrate denies Defendant Gray's Motion for Judgment on the Pleadings [and/or Motion to Dismiss] on the basis that Defendant Gray is not entitled to statutory immunity under OHIO REV. CODE § 2744 as to the wrongful death claim.

## IX.  CONCLUSION.

For these reasons, Defendant Gray's Motion for Judgment on the Pleadings [and/or Motion to Dismiss] is **denied** as to these claims:

1.      Excessive Force.
2.      Failure to Provide Medical Care
3.      Assault and battery.
4.      Wrongful death.

Defendant Gray's Motion for Judgment on the Pleadings [and/or Motion to Dismiss] is **granted** as to these claims.

1.      Civil Conspiracy under 42 U. S. C. § 1983.
2.      Conspiracy under 42 U.S. C. § 1985.
3.      RICO.
4.      Aiding and abetting.
5.      Civil Conspiracy under Ohio law.
6.      Intentional infliction of emotional distress.
7.      Negligence/recklessness/bad faith.

**IT IS SO ORDERED**.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   January 23, 2014