# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**DENISE M. COLEY,**      :

**ADMINISTRATOR OF THE ESTATE OF**

CARLTON L. BENTON, *et. al.*,      :     Case No. 3:09-CV-00008

     Plaintiffs,      :

v.      :

**LUCAS COUNTY, OHIO**, *et.al*,      :     **MEMORANDUM DECISION AND ORDER**

     Defendants.      :

## I. INTRODUCTION.

In accordance with the provisions of 28 U. S. C. § 636(c) and FED. R. CIV. P. 73, the parties in this case have consented to have the undersigned Magistrate Judge conduct any and all proceedings in the case (Docket No. 13).  Pending is a Motion for Judgment on the Pleadings and/or Motion to Dismiss filed by Defendant Jay M. Schmeltz (Schmeltz) (Docket No. 87); the Omnibus Brief in Opposition to Defendants' Motion for Judgment on the Pleadings filed by all Plaintiffs (Docket No. 101); and Defendant Schmeltz's Reply in Support of Motion for Judgment on the Pleadings and/or Motion to Dismiss (Docket No. 105).  For the reasons that follow, Defendant Schmeltz's Motion for Judgment on the Pleadings and/or Motion to Dismiss is granted in part and denied in part.

## II. THE PARTIES.

Plaintiff, Denise M. Coley (Coley), a resident of Toledo, Lucas County, Ohio, is the mother of the late Carlton Lenard Benton and the administrator of Mr. Benton's estate (Docket No. 70, ¶ 1)

Plaintiff DeCarlos Benton, a resident of Portsmouth, Virginia, is the decedent's father (Docket No. 70, ¶ 2).

Plaintiff Carla Benton, a resident of Toledo, Lucas County, Ohio, is the decedent's sister (Docket No. 70, ¶ 4 ).

Plaintiff Maliki Larmond, a resident of Camden, New Jersey, is the decedent's son (Docket No. 70, ¶ 3).

Defendant Lucas County, Ohio, has its county seat in Toledo, Ohio, and the Board of Commissioners, a three-member panel of elected officials, holds the administrative power for the county.

Defendant Lucas County Sheriff's Office is a branch of Lucas County, Ohio government responsible for law enforcement and maintaining full police jurisdiction in the municipalities, villages and townships within Lucas County, Ohio (Docket No. 70, ¶ 5; www.co.lucas.oh.us).

At all times relevant to these proceedings, Defendant James A. Telb, a resident of Maumee, Ohio, was the chief law enforcement officer in the Lucas County Sheriff's Department.  Defendants John E. Gray, Robert M. McBroom and Jay M. Schmeltz, residents of Lucas County, Ohio, were employees of the Lucas County Sheriff's Office (Docket No. 70, ¶ 6).

### III.  FACTUAL BACKGROUND

The underlying issues arise from an incident at the Lucas County Jail on May 30, 2004:

> Carlton Benton had been returned from the intensive care unit at St. Vincent Hospital to a second floor medical unit at the jail. He struggled with authority upon being removed from the hospital unit and again at the jail in the second floor medical unit. The jury obviously determined that Defendant Gray applied a "sleeper hold" to Mr. Benton during the course of attempting to remove restraints. That attempt was by not only Defendant Gray, but several other sheriff's deputies. Mr. Benton was rendered unconscious and the jury found that Defendant Gray left the medical unit without informing anyone of that condition or of the fact that Defendant Gray had used a "sleeper hold" on Mr. Benton. Benton was subsequently found unconscious in the medical cell; although paramedics were able to restore his pulse, he never regained consciousness and died on June 2, 2004 at the hospital.

*United States v. Gray*, *et. al.*, 2011 WL 198006, *1 (N.D. Ohio,2011) (unreported).

### IV.  PROCEDURAL BACKGROUND.

A brief summary of the procedural history is required to explain the interrelationship between the criminal and civil cases.

### A.  THE CRIMINAL CASE

On April 14, 2009, Defendant Schmeltz was indicted as follows:

**Count 3**     DEPRIVATION OF RIGHTS UNDER COLOR OF LAW
While acting under color of law, Defendant Schmeltz struck and assaulted the detainee resulting in bodily injury.

**Count 6**     FALSIFICATION OF A DOCUMENT
Defendant Schmeltz knowingly falsified a document, specifically an official correction officer report in which he omitted any mention of John E. Gray's use of the sleeper hold on the detainee.

**Count 7**     FALSIFICATION OF A DOCUMENT
Defendant Schmeltz omitted from the official report, his assault of the detainee in the jail's booking area.

**Count 11**    FALSE STATEMENT
Defendant Schmeltz knowingly made false statements to a Federal Bureau of Investigation (FBI) agent.

(Case No. 3:09 CR 182-DAK-2, Docket No. 2).

A jury verdict as to Defendant Schmeltz was entered on December 3, 2010, and Defendant Schmeltz was found guilty of Count 6.  He was acquitted on Counts 3, 7 and 11 (Case No. 3:09 CR 182-DAK-2, Docket No. 283).

The Sixth Circuit Court of Appeals affirmed the district court's conviction as to Defendant Schmeltz on January 24, 2012 (Case No. 3:09 CR 182-DAK-2, Docket No. 310).  Defendant Schmeltz did not seek review in the United States Supreme Court.

### B.    THE CIVIL CASE.

Before the criminal case was filed, Plaintiffs filed a Complaint on December 9, 2008, in which they asserted claims pursuant to 42 U. S. C. § 1983 against Defendant Lucas County, Ohio (Docket No. 1).  The case was removed to this district court and after the indictment was filed, Plaintiffs amended the Complaint, adding the Lucas County Sheriff's Office, James A. Telb, John E. Gray, Jay M. Schmeltz and Robert M. McBroom as parties and amending the causes of action (Docket Nos. 2 & 21).

On June 1, 2009, the Magistrate Judge ordered that all further proceedings in this civil case be stayed and reopened only for good cause (Docket No. 16).  On October 7, 2009, the Magistrate Judge reopened the case and granted Plaintiffs leave to amend the Complaint (Docket Nos. 17, 19 & 20).  Plaintiffs filed their First Amended Complaint on December 4, 2009 (Docket No. 21) and on March 10, 2010, the Magistrate Judge ordered that the case be stayed pending the jury verdict (Docket No. 27).  The stay was continued pending resolution of co-Defendant John Gray's direct appeal in the criminal case (Docket Nos. 43 & 44).  The stay was lifted and the case reopened after the Sixth Circuit Court of Appeals affirmed the conviction and sentence of co-Defendant Gray

4

(Docket Nos. 46 & 48).

Plaintiffs filed a Second Amended Complaint against all Defendants on April 29, 2013 (Docket No. 70) and Defendant Schmeltz timely filed an Answer (Docket No. 74).  On August 16, 2013, Defendant Schmeltz filed a Motion for Judgment on the Pleadings and/or Motion to Dismiss (Docket No. 87).  Plaintiffs filed an Omnibus Brief in Opposition to all Motions for Judgment on the Pleadings (Docket No. 101) and Defendant Schmeltz filed a Reply on October 21, 2013 (Docket No. 105).

## V. Plaintiffs' Claims against Defendant Schmeltz.

Plaintiffs assert the following claims against Defendant Schmeltz in both his official and individual capacities:

(1)     Conspiracy under 42 U.S. C. § 1985.
(2)     Conspiracy, under 42 U. S. C § 1983, and violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.
(3)     Wrongful death.
(4)     Excessive force.
(5)     Failure to provide medical treatment.
(6)     Negligence, recklessness and bad faith.
(7)     Assault and battery.
(8)     Intentional affliction of emotional distress.
(9)     Loss of consortium.
(10)   Conspiracy under state law.
(11)   Aiding and abetting.
(12)   Racketeering Influenced and Corrupt Organizations Act (RICO) under federal and state laws.

## VI. Defendant Schmeltz's Position.

In addition to his Memorandum in Support, Defendant Schmeltz joined in and incorporated by reference the Motion for Judgment on the Pleadings filed by Defendant McBroom[1] (Docket No.

---

[1]

In ruling on a motion to dismiss or motion for judgment on the pleadings, the Court may only consider documents attached to, **incorporated by (reference),** or referred to in the pleadings.  *Whittiker v. Deutsche Bank*

5

80).  Pursuant to FED. R. CIV. P. 12(c) and/or FED. R. CIV. P. 12(b)(6), Defendant Schmeltz moves

the Court to dismiss all claims against him for reasons that:

(1)   He is entitled to qualified immunity because Plaintiffs cannot demonstrate that he violated a clearly established constitutional right.

(2)   In order to show that he violated a clearly established constitutional right which a reasonable person would have known, Plaintiffs must show that his conduct shocked the conscience.   Plaintiffs have failed to assert that his conduct shocked the conscience.

(3)   Because every malevolent touch by a prison guard does not give rise to a federal cause of action and because Plaintiffs have not pleaded that Defendant Schmeltz acted sadistically, Plaintiffs cannot show that his conduct shocked the conscience.

(4)   Plaintiffs' remaining claims should be dismissed for reasons that they fail as a matter of law and because the doctrine of immunity applies.

(5)   Plaintiffs' civil conspiracy claim under Ohio law is barred by the intracorporate conspiracy doctrine.

(6)   Ohio law does not recognize the tort of aiding and abetting.

(7)   Damages for personal injury are not recoverable under state or federal Racketeering Influence and Corrupt Organizations Act (RICO).

(8)   Plaintiffs have not alleged a predicate offense thus barring their state and federal RICO claims.

## VII. LEGAL STANDARD OF REVIEW.

FED.R.CIV.P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to

delay trial—a party may move for judgment on the pleadings."  *Cole v. EV Properties, L.P.,* 2013

WL 1633649, *1 (N.D.Ohio, 2013).   The standard for evaluating a motion for judgment on the

pleadings is the same as that applicable to a motion to dismiss under Rule 12(b)(6) for failure to state

a claim.  *Id.* (*citing Ziegler v. IBP Hog Market, Incorporated*, 249 F.3d 509, 511–512 (6th

---

*National Trust Company,* 605 F.Supp.2d 914, 924 (N.D.Ohio, 2009).   Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to the claims, and therefore may be considered without converting a Rule 12(b)(6) motion to dismiss to a Rule 56 motion.  *Id.* (*citing Weiner v. Klais and Company*, 108 F.3d 86, 89 (6th Cir.1997)).   Because Plaintiffs did not oppose the incorporation of Defendant McBroom's pleading and the pleadings themselves provided arguments central to Defendant Schmeltz's defense, the Magistrate reviewed and considered such claims when considering the merits of the Motion for Judgment on the Pleadings and/or Motion to Dismiss.

Cir.2001)).   The Sixth Circuit stated the standard for reviewing such a motion to dismiss in

*Association of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545 (6th Cir.2007) as follows:

> The Supreme Court has recently clarified the law with respect to what a plaintiff
> must plead in order to survive a Rule 12(b)(6) motion.  *Id.* (*citing Bell Atlantic
> Corporation v. Twombly*, 127 S.Ct. 1955 (2007)).  The Court stated that "a plaintiff's
> obligation to provide the grounds of his entitlement to relief requires more than
> labels and conclusions, and a formulaic recitation of the elements of a cause of action
> will not do."  *Id.* (*citing Bell,* 127 S.Ct. at 1964–65) (citations and quotation marks
> omitted).  Additionally, the Court emphasized that even though a complaint need not
> contain "detailed" factual allegations, its "[f]actual allegations must be enough to
> raise a right to relief above the speculative level on the assumption that all the
> allegations in the complaint are true."  *Id.* (internal citation and quotation marks
> omitted).  In so holding, the Court disavowed the oft-quoted RULE 12(b)(6) standard
> of *Conley v. Gibson*, 78 S.Ct. 99, 101 (1957) (recognizing "the accepted rule that a
> complaint should not be dismissed for failure to state a claim unless it appears
> beyond doubt that the plaintiff can prove no set of facts in support of his claim which
> would entitle him to relief"), characterizing that rule as one "best forgotten as an
> incomplete, negative gloss on an accepted pleading standard."  *Id.* (*citing Twombly*,
> 127 S.Ct. at 1969).

## VIII.  DISCUSSION.

Plaintiffs use 42 U. S. C. § 1983 as a mechanism to enforce individual rights secured by the

Constitution and laws of the United States.   Plaintiffs argue that the claims of civil conspiracy,

excessive force, wrongful death, failure to provide medical treatment and RICO all implicate federal

constitutional right violations.

Defendant Schmeltz asserts that all claims against him should be dismissed based upon

qualified immunity and/or Plaintiffs' failure to state a proper claim for relief or for lack of

jurisdiction (Docket No. 87, p. 20).

### A.   CIVIL CONSPIRACY UNDER 42 U.S.C. § 1983.

Plaintiffs assert a claim that Defendant Schmeltz deliberately falsified certain documents and

made false statements to the FBI to deprive them of the rights guaranteed under the Constitution and

Laws of the United States, specifically:

> These conspiratorial activities evidenced deliberate indifference and invidiously discriminatory animus to the use of excessive force against Mr. Benton, to the deliberate and intentional failure or deliberate indifference to provide medical care to Mr. Benton and upon his death, to the property interests of Mr. Benton's estate and of the family member Plaintiffs (Docket No. 70, ¶¶ 76-78).

Defendant Schmeltz argues that he is entitled to qualified immunity unless Plaintiffs can demonstrate that he violated a clearly established constitutional right that a reasonable person would have known.

To sustain a Section 1983 claim, a plaintiff must establish that she or he was deprived of a right secured by the Constitution or laws of the United States, and that this deprivation was caused by a person acting under the color of state law. *Sizemore v. Forsthoefel,* 2013 WL 2950673, *3 (N.D.Ohio, 2013) (*citing Parratt v. Taylor*, 101 S.Ct. 1908, 1912-1913 (1981)). Generally to be considered to have acted "under color of state law," the person must be a state or local government official or employee. *Id.* A civil conspiracy under Section 1983 is "an agreement between two or more persons to injure another by unlawful action." *Id.* (*citing Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir.2007); *Hooks v. Hooks*, 771 F.2d 935 (6th Cir.1985)).

The plaintiff must plead conspiracy claims with some degree of specificity; vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under Section 1983. *Id.* (*citing Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir.2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987)). A plaintiff must make sufficient factual allegations to link two alleged conspirators in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy. *Id.* (*citing Amadasu v. The Christ Hospital*, 514 F.3d 504, 507 (6th Cir.2008); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir.1993)). Where all of

8

the defendants are members of the same collective entity, there are no two separate people to form a conspiracy. *Amadasu, supra,* 514 F. 3d at 507 (*see Hull v. Cuyahoga Valley Joint Vocational School District Board of Education*, 926 F. 2d 505, 510 (6th Cir. 1991)).

Plaintiffs' claim does not contain the requisite degree of specificity needed to sustain a Section 1983 conspiracy claim. It appears that Plaintiffs are arguing that Defendants conspired to cover up the use of excessive force. These allegations of a conspiracy claim are stated solely as legal conclusions with no facts to suggest a "meeting of the minds" among all Defendants. Furthermore, as Defendants Gray, Schmeltz, McBroom and Telb were all employees of the same entity, there are not two persons with whom to form a conspiracy.

Defendant Schmeltz is entitled to judgment as a matter of law on this claim for the reason that Plaintiffs have failed to state a claim of conspiracy for which relief can be granted.

## B. EXCESSIVE FORCE.

Plaintiffs assert that Defendant Schmeltz violated Mr. Benton's constitutional rights by employing excessive force when striking Mr. Benton in the back.

Defendant Schmeltz contends that striking Mr. Benton was a good faith effort to maintain or restore discipline; the force used was not employed maliciously and sadistically for purposes of causing harm. Nevertheless, he argues that he is entitled to judgment on the pleading under the doctrine of qualified immunity.

Pretrial detainees are afforded certain protections under the rubric of the Fourteenth Amendment's Due Process Clause[2]. *Reynolds v. Guerra* 670 F.Supp.2d 633, 639 (N.D.Ohio,2009).

---

[2]

By contrast, convicted prisoners may bring excessive-force claims under the Eighth Amendment, *Leary v. Livingston County,* 528 F.3d 438, 443 (6th Cir. 2008) (*see Graham v. Connor*, 109 S.Ct. 1865, 1871 n.10 (1989) and "free citizen[s]" may bring such claims under the Fourth Amendment. *Id.* (*citing Graham*, 109 S.Ct. at 1870-1871).

"The substantive component of the Fourteenth Amendment protects citizens against conduct by law enforcement officers that 'shocks the conscience.' " *Id.* (*citing United States v. Budd*, 496 F.3d 517, 529 (6th Cir.2007)).  At a minimum, the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment."  *Id.* (*citing Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir.2008) (*quoting Graham*, *supra*, 109 S.Ct. at 1871).  All excessive force claimants "must show something more than de minimis force."  *Id.* (*citing Leary,* 528 F. 3d at 443).

Having determined that Mr. Benton was subject to the protection of the Due Process Clause of the Fourteenth Amendment, the Magistrate must now determine whether Plaintiffs have established a constitutional violation under Section 1983.  Because the Magistrate must conduct the same inquiry for the purposes of determining if qualified immunity is applicable, the Magistrate will continue the Section 1983 analysis within the qualified immunity framework.

### 1.    A CONSTITUTIONAL VIOLATION?

Generally, government officials performing discretionary functions are shielded from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* (*citing Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir.2008)).  "Determining whether the government officials are entitled to qualified immunity generally requires two inquiries:  First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred?  And second, was the right clearly established at the time of the violation?"  *Id.* (*citing Dominguez v. Correctional Medical Services*, 555 F.3d 543, 549 (6th Cir. 2009))[3].  The plaintiff has the burden of showing that a right

---

[3]

Occasionally, the Sixth Circuit will consider a third element: "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established

is clearly established. *Slough v. Telb*, 644 F.Supp.2d 978, 988 (N.D.Ohio,2009) (*citing Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th Cir.2004); *Toms v. Taft*, 338 F.3d 519, 525 (6th Cir. 2003)). The defendants have the burden of establishing that their actions were objectively reasonable. *Id*. (*citing Tucker v. City of Richmond, Kentucky*, 388 F.3d 216, 220 (6th Cir.2004)).

It is undisputed that while traversing the hall in route to his medical cell, Mr. Benton was handcuffed and shackled with a belly chain and leg irons. There are no allegations that Mr. Benton was belligerent or that his behavior was otherwise inappropriate. Defendant Schmeltz shoved Mr. Benton in the back causing him to fall to the concrete floor and hit his head on the wall (Docket No. 70, ¶¶ 28 & 63). Viewing these facts in a light most favorable to Plaintiffs, the Magistrate is persuaded that Defendant Schmeltz's act of shoving was more than some *de minimis* use of force. The allegations surrounding Defendant Schmeltz's use of force do not fall short of what is required to state a claim for excessive force under the Fourteenth Amendment.

### 2.     A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT.

A right is clearly established if a reasonable official would understand that what he or she is doing violates that right. *Reynolds, supra,* (*citing Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001)). Clearly established means "the contours of the right [are] sufficiently clear [to] a reasonable official." *Id.* (*citing Lanman v. Hinson*, 529 F.3d 673, 691 (6th Cir.2008) (*quoting Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003)). "An action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs."

---

constitutional rights." *Reynolds, supra,* 670 F.Supp.2d at 640 (*citing Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n. 2 (6th Cir.2005)). However, "[w]here the right involved is clearly established, ... it can often be inferred that the conduct involved is objectively unreasonable." *Id.* (*citing Miller v. Administrative Office of the Courts*, 448 F.3d 887, 894 (6th Cir.2006)).

11

*Id.* (*citing Feathers*, 319 F.3d at 848). Given the abundance of Sixth Circuit case law, a pretrial detainee's right to be free from excessive force amounting to punishment is clearly established law. *Id.* (*citing Leary,* 528 F.3d at 443 (*quoting Graham*, *supra,* 109 S.Ct. at 1871, fn. 10); *Budd*, *supra,* 496 F.3d at 530; *Phelps v. Coy,* 286 F.3d 295, 300 (6th Cir. 2002)).

Balancing the nature and quality of the intrusion on Mr. Benton's Fourteenth Amendment interests in evaluating the merits of Defendant Schmeltz's request for qualified immunity, Plaintiffs' allegations support a finding that Defendant Schmeltz's behavior crossed the threshold between reasonable and excessive. Defendant Schmeltz does not rebut the presumption of qualified immunity by asserting that Mr. Benton provoked him; that Mr. Benton posed an immediate threat to him or the other officers or that he was attempting to evade containment. Rather, he relies on the general assertion that he was attempting to maintain or restore discipline by shoving a shackled detainee. The facts as alleged constitute a clearly established constitutional violation based on the nature of the force used and the contours of the right to be free from excessive force would be sufficiently clear to a reasonable official. The Motion for Judgment on the Pleadings and/or Motion to Dismiss as to this claim is denied.

### C.    FAILURE TO PROVIDE MEDICAL TREATMENT.

Plaintiffs contend that Defendant Schmeltz violated Mr. Benton's Fourteenth Amendment rights by exhibiting a deliberate indifference to his medical needs while he was detained pretrial in the Lucas County Jail.

To maintain a cause of action under Section 1983 for failure to provide medical treatment, a plaintiff must establish that the defendants were deliberately indifferent to basic medical needs. *Reynolds, supra*, 670 F.Supp.2d at 642 (*citing Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th

Cir. 2002); *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir.2001)). "Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [a plaintiff's] health and safety." *Id.* (*citing Ewolski*, 287 F. 3d at 510).

A medical need is objectively serious if a lay person would recognize the seriousness of the need for medical care. *Id.* (*citing Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir.2005)). The subjective component of deliberate indifference "requires a plaintiff to allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* (*citing Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir.2001)). Prison officials are deliberately indifferent if they intentionally deny or delay access to medical care for a serious medical need. *Id.* (*citing Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir.2004) (*citing Estelle v. Gamble*, 97 S.Ct. 285, 291 (1976)).

It is beyond dispute that the right to medical treatment for a serious medical need was clearly established at the time of the incident. Failing to resuscitate or immediately call medical personnel in response to an unconscious, non-breathing detainee clearly arises to the objective level of a constitutional violation. Plaintiffs' characterization of Mr. Benton's state after Defendant Gray administered the sleeper hold was that a few seconds thereafter he went limp and completely unconscious. While there is no precise metric by which to measure the severity of Mr. Benton's condition at any given time during this incident, there is no doubt that Plaintiffs have sufficiently plead that Mr. Benton had a sufficiently grave need for medical attention, thus satisfying the objective component.

Similarly, Plaintiffs have alleged facts that if true, indicate that Defendant Schmeltz was

13

present at the time and place where Defendant Gray had administered the sleeper hold; that he knew that Mr. Benton was unresponsive and even unconscious when left alone in the cell; that he, too, was indifferent to a known, life-threatening risk when this serious medical need arose; and that he consciously or knowingly refused to do anything about it.

The Magistrate concludes that Plaintiffs' allegations are sufficient to state a plausible claim for relief against Defendant Schmeltz for failure to provide medical assistance. The Motion for Judgment on the Pleadings and/or Motion to Dismiss is denied as to this claim.

**D. CONSPIRACY UNDER 42 U.S. C. § 1985.**

In the Second Amended Complaint, Plaintiffs alleged that Defendant Schmeltz conspired with Defendants Gray, McBroom and Telb to falsify documents and lie to the Federal Bureau of Investigation (FBI), in violation of 42 U. S. C. § 1985.

Defendant Schmeltz incorporated the Motion for Judgment on the Pleadings, in which Defendant McBroom argues that subsections (1) and (2) of Section 1985 do not apply in this case and further that Plaintiffs' Section 1985 claim fails for two reasons. First, the intracorporate conspiracy doctrine precludes Plaintiffs' Section 1985 claim. Second, Plaintiffs' Section 1985 claim fails to allege or identify any class based animus (Docket No. 80-1).

Plaintiffs did not identify the subsection of 42 U. S.C. § 1985 on which they relied; consequently, the Magistrate Judge assesses the applicability of all three subsections to Section 1985. **1. SECTION 1985(1).**

The statute, 42 U. S. C . § 1985(1), states:

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district,

14

or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties; ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U. S. C. § 1985(1)(Thomson Reuters 2013).

Plaintiffs have offered conclusory allegations that Defendants Gray, Schmeltz, McBroom and Telb acted in concert when they lied to a FBI agent for the purpose of depriving them of equal protection and/or obstructing the course of justice in this case.  Such claim, however, is barred by the " 'intracorporate conspiracy' doctrine," which provides that where "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Amadasu v. The Christ Hospital*, 514 F.3d 504, 507 (6th Cir.2008) (*See Hull v. Cuyahoga Valley Joint Vocational School District Board of Education*, 926 F.2d 505, 510 (6th Cir.1991).

At the time the alleged conspiracy was formed, Defendants Gray, Schmeltz, McBroom and Telb were employed by the same entity.  Because there are not two separate people to form the conspiracy, Plaintiffs have failed to state a plausible claim under Section 1985(1).  Defendant Schmeltz is entitled to judgment as a matter of law.

**2.  SECTION 1985(2).**

This section of 42 U.S.C. § 1985(2), states:

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more

15

persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the law.

42 U.S.C.. § 1985(2) (Thomson Reuters 2013).

There are three reasons that Plaintiffs have failed to state a sufficient claim under Section 1985(2).  First, Defendants Gray, Schmeltz, McBroom and Telb were all employed by the same entity.  Because there are not two separate people to form the conspiracy, Plaintiffs have failed to state a plausible claim under Section 1985(2).  Second, to prevail in a claim under the second clause of Section 1985(2), a plaintiff must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Slough, supra*, 644 F. Supp. 2d at 966 (*citing Kush v. Rutledge*, 103 S.Ct. 1483, 1487 (1983) (*quoting Griffin v. Breckenridge*, 91 S.Ct. 1790, 1798 (1971); *see also Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir.1996)).  Even accepting as true all the facts pleaded in the Second Amended complaint, Plaintiffs have not alleged some racial or class based animus.  Third, the purpose of this statute is to insulate witnesses, parties, grand jurors or petit jurors from conspiracies to pressure or intimidate them in the performance of their duties.  Plaintiffs have not alleged that any of the Defendants engaged in the type of force, intimidation or threat that is actionable under Section 1985(2).

The Motion for Judgment on the Pleadings is granted as to the claim made against Defendant Schmeltz pursuant to 42 U. S. C. § 1985(2).

**3.  SECTION 1985(3)**.

Section 1985(3) provides:

If two or more persons in any State or Territory conspire  . . .  for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal

16

protection of the laws, or of equal privileges and immunities under the laws, . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against one or more of the conspirators.

42 U.S.C. § 1985(3) (Thomson Reuters 2013).

Section 1985(3) is concerned only with conspiracies to deny equality of rights.  *Taylor v. Brighton Corporation*, 616 F. 2d 256, 266 (1980).  The gravamen of a claim under Section 1985(3) is denial of equal protection or equal privileges or immunities.  *Id.*  The class-based animus requirement is a means to confine Section 1985(3) to its intended purpose:  to provide a means of redressing deprivations of equality under the law.  *Id.*

There are two reasons that Plaintiffs have failed to state a sufficient claim under 42 U.S.C. § 185(3).  First, Plaintiffs fail to allege that there are two separate people to form a conspiracy.  Second, Plaintiffs have failed to set forth essential elements pertaining to the factual allegations that the conspiracy was motivated by some class-based, invidiously discriminatory animus.

Plaintiffs' Second Amended Complaint does not contain allegations respecting all the material elements required to sustain a recovery under 42 U. S. C. § 1985(3).  Accordingly, the Motion for Judgment on the Pleadings is granted as to the claim under Section 1985(3) against Defendant Schmeltz.

### E.      RICO

Plaintiffs allege that all Defendants formed an "association" for the common purpose of engaging in a course of conduct designed to mislead the FBI.  The "association" conspired to file fraudulent documents and make false statements, conducted a series of criminal acts formed to

17

conceal an underlying criminal act committed by Defendants Schmeltz and Gray.  Plaintiffs further allege that this series of criminal acts constitutes the predicate acts required for a RICO claim (Docket No. 67,¶ 99).

Defendant Schmeltz asserts that damages for personal injury are not recoverable under state or federal RICO and Plaintiffs have not alleged a predicate offense thus barring their state and federal RICO claims.

Pursuant to 18 U.S.C. § 1962(c), "it shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . " *Eva v. Midwest National Mortgage Bank, Incorporated*, 143 F.Supp.2d 862, 873 -874 (N.D.Ohio, 2001) (emphasis added). To state a civil RICO claim under 18 U.S.C. § 1962(c)[4], plaintiffs **must** plead the following elements:  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Huff v. FirstEnergy Corporation*, 2013 WL 5234224, *11 (N.D.Ohio, 2013) (*citing Sedima. S.P.R.L.* v. *Imrex Company, Incorporated*, 105 S. Ct. 3275, 3285 (1985); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir.2006)).

The RICO statute defines an "enterprise" to include any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.  18 U.S.C. § 1961(4) (Thomson Reuters 2013).  The enterprise must be separate from the " 'person  . . .  participating in an enterprise's affairs,' " and thus "a corporation cannot be named as the liable 'person' and simultaneously fulfill the 'enterprise' requirement as well."

---

[4]

Plaintiffs also bring a substantive RICO claim under Ohio law.  Ohio's statute "is patterned after the federal RICO Act[,]" and therefore, "analysis of the [Ohio statute] is analogous to that of the federal RICO statute." *Huff, supra*, 2013 WL 5234224, at *16.

*Puckett v. Tennessee Eastman Company*, 889 F.2d 1481, 1489 (6th Cir.1989).  In order to establish the existence of an enterprise under Section 1962(c), a plaintiff is required to prove: (1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged. *Ouwinga v. Benistar 419 Plan Services, Incorporated*, 694 F.3d 783, 793 (6th Cir. 2012) *cert. denied sub nom Edwards Angell Palmer & Dodge v. Ouwinga*, 133 S. Ct. 2735 (2013) (*citing United States v. Chance*, 306 F.3d 356, 372 (6th Cir.2002) (*citing Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir.1993)).

Racketeering activity" is defined in 18 U.S.C. § 1961(1) as any one of the list of state and federal offenses that qualify as racketeering activity.  *Eva, supra*, 143 F.Supp.2d at 874.  To establish a "pattern of racketeering activity," a plaintiff must allege at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.  18 U.S.C. § 1961(5) (Thomson Reuters 2013).  Congress intended that to prove a pattern of racketeering activity, a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.  *H.J. Incorporated v. Northwestern Bell Telephone Company*, 109 S.Ct. 2893, 2901 (1989).  Thus, a single individual or corporation cannot be both the "enterprise" and the "person" under RICO.  *Id.* (*see Davis v. Mutual Life Insurance Company of New York*, 6 F.3d 367, 377 (6th Cir.1993), *cert. denied*, 114 S.Ct. 1298 (1994)).

In stating the basis for their RICO claim, Plaintiffs have done nothing more than assert bare

19

legal conclusions.  There are no direct or inferential allegations respecting all the material elements that are required to sustain a recovery under viable legal theories of state and federal law.  Plaintiffs do not identify at least one predicate offense included within Section 1961 that was connected to the affairs and operations of the criminal enterprise.  Plaintiffs fail to detail the alleged pattern of corrupt activity that consists of at least two acts of racketeering activity that occurred within ten years after the prior act of racketeering activity.  Plaintiffs fail to allege that the persons participating in the enterprise are distinct from all Defendants.  Neither have Plaintiffs made allegations sufficient to show that the enterprise existed for a purpose separate and distinct from the pattern of racketeering.

Having failed to appropriately plead a violation under federal or state RICO statutes, the Magistrate grants the Motion for Judgment on the Pleadings with respect to the federal and state RICO claims against Defendant Schmeltz.

### F.  PLAINTIFFS STATE LAW CLAIMS.

This Court has supplemental jurisdiction to hear the additional claims substantially related to the original claim even though they arise under Ohio law.  To that end, the Magistrate will address Plaintiffs' claims against Defendant Schmeltz for aiding and abetting, assault and battery, civil conspiracy, intentional infliction of emotional distress, negligence and wrongful death.

Defendant Schmeltz asserts that Plaintiffs have failed to assert sufficient facts that show his acts were reckless, conducted with ill will or in bad faith.  Accordingly, he is entitled to statutory immunity under OHIO REV. CODE § 2744.03.

### 1.  AIDING AND ABETTING.

Plaintiffs argue that Defendant Schmeltz aided and abetted Defendant Gray in the civil conspiracy.  However, Plaintiffs fail to state a claim for which relief can be granted.

20

The Supreme Court of Ohio has never expressly adopted Section 876 of the RESTATEMENT OF THE LAW 2D, TORTS (1979), which provides:

> "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself" and few Ohio cases have applied it.

*Whelan v. Vanderwist of Cincinnati*, 2011 WL 6938600, *3 (2011) (*citing Chester Township Board of Trustees v. Bank One,* N.A., 11th Dist. No.2007–Ohio–3365, at ¶ 65. (Citation omitted.)). Similarly, the Tenth and Second District Courts of Appeals have held that Ohio does not recognize a claim for aiding and abetting common-law fraud.  *Id.* (*citing Federated Management Company v. Coopers & Lybrand*, 137 Ohio App.3d 366, 381, 738 N.E.2d 842 (2000)).

Recently, the United States District Court for the Northern District of Ohio certified this question of state law to the Supreme Court of Ohio:

> Under the applicable circumstances, does Ohio recognize a cause of action for tortious acts in concert under the RESTATEMENT (2D) OF TORTS, § 876?

On August 28, 2012, the Supreme Court of Ohio stated emphatically that the Court had never recognized a claim under 4 RESTATEMENT 2D OF TORTS, SECTION 876 (1979) and the Court refused to extend the doctrine under the circumstances of the case.  *DeVries Dairy, LLC v. White Eagle Cooperative Association,* 132 Ohio St. 2d 516, 974 N.E. 2d 1194 (2012).

Clearly, Plaintiffs' civil aiding and abetting claims are not recognized as viable claims under Ohio law.  Such claims must be dismissed as a matter of law.

## 2.      ASSAULT AND BATTERY.

Plaintiffs allege that Defendant Schmeltz assaulted Mr. Benton when shoved him in the back and caused him to fall on the concrete floor, hitting his head on the wall while he fell.

### a.    THE LAW.

In tort, an assault is the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact.  *Stafford v. Columbus Bonding Center*, 177 Ohio App.3d 799, 810, 896 N.E.2d 191, 200 (2008) (*citing Smith v. John Deere Company*, 83 Ohio App.3d 398, 406, 614 N.E.2d 1148 (1993)).  Battery is an intentional contact with another that is harmful or offensive.  *Id.* (*citing Love v. Port Clinton*, 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (1998)).  Law enforcement officers are privileged to commit assault and/or battery to affect an arrest unless they use excessive force.  *Burgess v. Fischer,* 890 F.Supp.2d 845, 859 (S.D.Ohio,2012) (*citing Hale v. Vance*, 267 F. Supp. 2d 725, 736 (S.D.Ohio 2003)).

To adequately plead a claim of battery under Ohio law, a plaintiff must allege an intentional harmful or offensive touching.  *Hayward v. Cleveland Clinic Foundation*  878 F.Supp.2d 860, 864 -865 (N.D.Ohio, 2012) (*citing  Northern v. Medical Mutual of Ohio*, 2006 WL 562193, at ¶ 10 (2006)(*See also Anderson v. St. Francis–St. George Hospital*, 77 Ohio St.3d 82, 84, 671 N.E.2d 225 (1996) (battery requires a touching)).  Assault is the "willful threat to harm or touch another offensively" that reasonably places the other in fear of such contact. *Id.* (*citing Knox v. Hetrick*, 2009–Ohio–1359, at ¶ 49, 2009 WL 792357 (2009) (internal citations and quotations omitted).  The threat "must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching."  *Id*.

### b.    IMMUNITY UNDER OHIO REV. CODE § 2744.

Ohio provides immunity from suit to state employees of political subdivisions when those employees' activities are connected to governmental or proprietary functions.   A political subdivision of the state is defined under Section 2744.01(F) as the County and is entitled to a broad

grant of immunity from liability for "any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." OHIO REV. CODE § 2744.02(A)(1). That broad grant of immunity, however, is subject to the exceptions set forth in § 2744.02(B), unless (1) the employee's acts were outside the scope of employment or official responsibilities; (2) the employee acted with a malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) another section of the Ohio Revised Code expressly imposes liability. *Sabo v. City of Mentor,* 657 F.3d 332, 337 (6th 2011) (*citing* OHIO REV. CODE § 2744.03(A)(6)). Ohio courts apply a presumption of immunity. *Id.* (*citing Cook v. City of Cincinnati*, 103 Ohio App.3d 80, 658 N.E.2d 814, 821 (1995)).

"Malicious purpose" means indulging or exercising malice; harboring ill will or enmity. *Teramano v. Teramano*, 6 Ohio St. 2d 117, 118, 216 N. E. 2d 375, 377 (1966).

A lack of good faith is the equivalent of "bad faith," and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. *Roberts v. Personal Service Insurance Company,* 12 Ohio App.3d 92, 93, 467 N.E.2d 257, 258 (1983). It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. *Id.* It also embraces actual intent to deceived or mislead another. *Id.*

"Wanton misconduct" is the "failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Baker, supra*, 2013 WL 4502736, at *14 (*citing Anderson v. Massillon*, 134 Ohio St.3d 380, 388, 983 N.E.2d 266, (2012)).

"Reckless conduct" is "characterized by the conscious disregard of or indifference to a

known or obvious risk of harm that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id*.

    **c.**    **THE APPLICATION**.

Here, there is no dispute that Mr. Benton suffered a substantial amount of harmful or offensive touching while he was in custody subsequent to his arrest.  On the assumption that all the allegations in the Second Amended Complaint are true, the shoving was not necessary to overcome any resistance or to secure Mr. Benton.  The evidence shows that at the time he was shoved, he was handcuffed, had a belly chain and ankle shackles.  Because this Magistrate has found that Plaintiffs' excessive force claim presents factual allegations sufficient to raise a right to relief above the speculative level, Plaintiffs' claim for assault and battery creates a jury question on whether the presumption of immunity has been rebutted.  The trier of fact must resolve the issue of whether Defendant Schmeltz's acts or omissions were with malicious purpose, in bad faith or in a wanton or reckless manner.

The Magistrate denies Defendant Schmeltz's Motion for Judgment on the Pleadings and/or to Dismiss on the basis that Defendant Schmeltz is not entitled to statutory immunity under OHIO REV. CODE § 2744 as to the assault and battery claim.

    **3.**    CIVIL CONSPIRACY UNDER STATE LAW.

Ohio defines civil conspiracy as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Federal Insurance Company v. Webne*, 513 F.Supp.2d 921, 926-927 (N.D.Ohio, 2007) (*citing Kenty v. Transamerica Premium Insurance Company*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995)

(internal citation omitted)).  To establish a claim of civil conspiracy, a plaintiff must allege:

      (1)     a malicious combination;
      (2)     of two or more persons;
      (3)     injury to person or property; and
      (4)     existence of an unlawful act independent from the actual conspiracy.  *Id.*

Malice "is that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another."  *Id.* (*citing Pickle v. Swinehart*, 170 Ohio St. 441, 443, 166 N.E.2d 227 (1960) (internal citation omitted)).

The "intra-corporate conspiracy doctrine" provides that where all of the alleged co-conspirators are members of the same collective entity, there are not two separate 'people' to form a conspiracy."  *Ohio Vestibular & Balance Centers, Incorporated v. Wheeler,* 2013 WL 5532768, *7 (2013) (*citing Kerr v. Hurd*, 694 F.Supp.2d 817, 834 (S.D.Ohio 2010)).

In Ohio, a civil conspiracy claim cannot succeed without an underlying unlawful act. *Federal Insurance Company, supra*, 513 F. Supp. 2d at 927 (*citing Dickerson Internationale, Incorporated v. Klockner*, 139 Ohio App.3d 371, 380, 743 N.E.2d 984 (2000); *see also Williams v. Aetna Financial Company*, 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998)).

Here the answer is clear:  all of the Defendants were employed by the same collective entity and there are no two persons to form a conspiracy.  As a matter of law, no action can lie for conspiracy against Defendant Schmeltz.  His Motion for Judgment on the Pleadings and/or Motion to Dismiss is granted as to Plaintiffs' state claim of conspiracy.

      **4**.    **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**.

Plaintiffs contend that Defendant Schmeltz knew or should that his acts could cause serious emotional distress to Mr. Benton's survivors.  Consequently, he concealed any participation in Mr. Benton's death.

Elements of the tort claim of intentional infliction of emotional distress are governed by Ohio law.  Under Ohio law, the elements of a claim of intentional infliction of emotional distress are:

(1)     the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff;

(2)     the defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;

(3)     the defendant's conduct was the proximate cause of plaintiff's psychic injury; and

(4)     the plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Kovac v. Superior Dairy, Incorporated*, 930 F.Supp.2d 857, 869 -870 (N.D.Ohio,2013) (*citing Talley v. Family Dollar Stores of Ohio, Incorporated*, 542 F.3d 1099, 1110 (6th Cir.2008) (*quoting Ekunsumi v. Cincinnati Restoration, Incorporated*, 120 Ohio App.3d 557, 698 N.E.2d 503, 506 (1997)).

Plaintiffs' Second Amended Complaint need not contain detailed factual allegations but the factual allegations must be enough on which to base an actual right to relief.  Plaintiffs make bare assertions and suggestions that Defendant Schmeltz should have known that the extreme and outrageous nature of Mr. Benton's death caused them intense and horrific emotional distress. Plaintiffs fail to allege serious emotional distress that resulted from psychic injury.

Plaintiffs' obligation to provide the grounds of their entitlement to relief requires more than conclusions and recitation of the elements.  Stated differently, Plaintiffs have failed to state a claim for intentional infliction of emotional distress against Defendant Schmeltz that is plausible on its face.  Such failure dictates that the Magistrate Judge grant the Motion for Judgment on the Pleadings and/or Motion to Dismiss on this claim.

5.     NEGLIGENCE/RECKLESSNESS/BAD FAITH.

Plaintiffs claim that Defendant Schmeltz acted with malicious purpose or in a wanton or

26

reckless manner when he physically assaulted Mr. Benton.

Plaintiffs are seeking to circumvent or avoid Defendant Schmeltz's immunity from suit by framing some of their intentional tort claims as negligence.  The underlying acts which Plaintiffs allege to be negligent are by nature conduct associated with intentional torts.  Defendant Schmeltz is presumed immune under OHIO REV. CODE 2744.03(A)(6) set forth above.  A claim for negligence is insufficient to remove the cloak of immunity.  *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 316 (6th Cir.2005).  Reciting the necessary elements of mere negligence in the Second Amended Complaint is not sufficient to divest Defendant Schmeltz of the cloak of immunity conferred on him by state law.

Recklessness is a catchall of the standard for establishing a culpable mental state.  There is no common law or statutory cause of action for recklessness in Ohio.

Bad faith is not a *per se* actionable tort in Ohio.  *See Slater v. Motorists Mutual Insurance Company,* 174 Ohio St. 148 (1962).  The term "bad faith" is commonly used in the law of contracts, insurance and other commercial dealings.  *Id.*  However, Ohio courts have defined the tort of bad faith in broad enough terms to permit its extension to other forms of special relationships beyond that of insurer and insured.  *Little v. UNUMProvident Corporation*, 196 F.Supp.2d 659, 670 (S.D.Ohio, 2002).

The allegations presented do not adequately state a claim for bad faith against Defendant Schmeltz.  The Magistrate dismisses this claim in its entirety against Defendant Schmeltz.

**6**.  **WRONGFUL DEATH**.

Plaintiffs contend that Defendant Schmeltz's assault contributed to Mr. Benton's death.  Plaintiffs allege a wrongful death claim, pursuant to OHIO REV. CODE § 2125.01, which states:

27

When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued * * shall be liable to an action for damages."

*Mousa v. Mt. Carmel Health Systems, Incorporated*, 2013 WL 3270907, * 2 (2013).

A wrongful death action "shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent." *Id.* (*citing* OHIO REV. CODE § 2125.02(A)(1)).  The personal representative brings a wrongful death action for the injuries suffered by the beneficiaries of the decedent as a result of the death.  *Id.* (*citing Peters v. Columbus Steel Castings Company*, 115 Ohio St.3d 134, 873 N.E.2d 1258, ¶ 11(2007)).  The personal representative is only a nominal party, and the real parties in interest are the beneficiaries of the decedent because they have suffered an injury.  *Id.* (*citing Toledo Bar Association v. Rust*, 124 Ohio St.3d 305, 921 N.E.2d 1056, ¶ 21 (2010)).

Construing the Second Amended Complaint liberally in Plaintiffs' favor, the Magistrate need not accept as true unwarranted factual inferences that Defendant Schmeltz's acts caused Mr. Benton's death.  In order to state a wrongful death case against Defendant Schmeltz, Mr. Benton's death must have been the result of Mr. Schmeltz's wrongful conduct.  There is no dispute that Defendant Schmeltz shoved Mr. Benton; however,  the facts alleged fail to show that the shoving was directly related to Mr. Benton's death.

Plaintiffs have failed to allege sufficient facts to state a plausible  claim for wrongful death against Defendant Schmeltz.  The Magistrate grants Defendant Schmeltz's Motion for Judgment on the Pleadings and/or to Motion to Dismiss as to this issue.

## IX. Conclusion.

For these reasons, Defendant Schmeltz's Motion for Judgment on the Pleadings and/or

Motion to Dismiss is **DENIED** as to these claims:

1.    Excessive Force.
2.    Failure to provide medical treatment.
3.    Assault and Battery.

Defendant Schmeltz's Motion for Judgment on the Pleadings and/or Motion to Dismiss is

**GRANTED** as to these claims:

1.    Civil Conspiracy under 42 U.S.C. § 1983.
2.    Aiding and abetting.
3.    Civil Conspiracy under 42 U. S. C. § 1985
4.    Civil Conspiracy under Ohio law.
5.    Intentional infliction of emotional distress.
6.    Negligence/recklessness/bad faith.
7.    Wrongful death.
8.    RICO


**IT IS SO ORDERED**.


                                    /s/Vernelis K. Armstrong
                                    United States Magistrate Judge


Date:  January 23, 2014