**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Denise M. Coley, et. al., | : | Case No. 3:09 CV 8 |
| Plaintiff, | : | |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| Lucas County, Ohio, et al., | : | |
| Defendants. | : | |

## I. Introduction

This matter is before the Court on Defendant (now retired) Sheriff James Telb's Motion

for Judgment on the Pleadings and/or Motion to Dismiss, filed on August 16, 2013 (Docket No.

90). Plaintiffs filed their Opposition in an Omnibus Brief on September 25, 2013 (Docket No.

101).  Defendant Telb filed a Reply on October 21, 2013 (Docket No. 106). For the reasons that

follow, the Motion for Judgment on the Pleadings and/or Motion to Dismiss is granted in part

and denied in part.

## II. Parties

Plaintiffs Denise Coley, DeCarlos Benton, Maliki Larmond, and Carla Benton

(collectively referred to as "Plaintiffs") are the biological relatives of decedent Carlton Lenard

Benton ("Benton"), who died while in custody in the Lucas County Jail, in Lucas County, Ohio.

1

Defendants include the Lucas County Sheriff's Office, Lucas County Sheriff's Deputies John Gray ("Gray") and Jay Schmeltz ("Schmeltz"), Lucas County Sheriff's Captain Robert McBroom ("McBroom"), and Lucas County Sheriff (now retired) James Telb ("Defendant Telb"). All Defendants are current or former employees of Lucas County and are being sued in both their individual and respective official capacities. It is Defendant Telb's Motion for Judgment on the Pleadings and/or Motion to Dismiss that is now before this Court.

### III. Factual Background

In February 2004, Benton was taken into custody by the Lucas County Sheriff's Office on suspicion of murder (Docket No. 21, p. 3 of 11). While in custody awaiting trial, Benton died (Docket No. 21, p. 3 of 11).

On April 14, 2009, a federal grand jury filed criminal charges against Gray, Schmeltz , McBroom, and Defendant Telb (Docket No. 21, Attachment 1). In the indictment, Gray was charged with assaulting and strangling Benton using a "sleeper hold," resulting in Benton's bodily injury and death, while acting under color of law (Docket No. 21, Attachment 1, p. 2 of 10). The indictment further charged Schmeltz with assault on Benton and failure to obtain necessary medical care (Docket No. 21, Attachment 1, p. 3 of 10). Thereafter, it was alleged that Gray, Schmeltz, McBroom, and Defendant Telb falsified records concerning the circumstances surrounding Benton's death and made false statements to members of the Federal Bureau of Investigation ("FBI") in an effort to impede, obstruct, and influence an investigation into the matter (Docket No. 21, Attachment 1, pp. 4-10 of 10). The indictment also charged Defendant Telb and McBroom with aiding and abetting the commission of a felony (Docket No. 21, Attachment 1, p. 7 of 10). Following a jury trial, Gray was found guilty of failing to obtain

2

necessary medical care and treatment for Benton and falsifying various reports (Docket No. 70, ¶¶ 54-55). Schmeltz was found guilty of falsification of a document (Docket No. 70, ¶ 53). The jury returned not guilty verdicts for both McBroom and Defendant Telb.

## IV. Procedural Background

On April 29, 2013, Plaintiffs filed a Second Amended Complaint against the following Defendants: (1) the County of Lucas, Ohio; (2) the Lucas County Sheriff's Department; (3) Defendant Telb; (4) Gray; (5) Schmeltz; and (6) McBroom (Docket No. 70). Plaintiffs allege multiple causes of action, including: (1) wrongful death; (2) conspiracy to violate Benton's constitutional rights under 42 U.S.C. §§ 1983 and 1985 and Ohio state law; (3) negligence and recklessness; (4) assault and battery; (5) intentional infliction of emotional distress; (6) loss of consortium; (7) aiding and abetting; and (8) violations of the Racketeer and Corrupt Organizations Act ("RICO") (Docket No. 70). On August 16, 2013, Defendant Telb filed a Motion for Judgment on the Pleadings and/or Motion to Dismiss, which is currently pending before this Court, seeking dismissal of all claims against him (Docket No. 90). Plaintiffs filed an Opposition on September 25, 2013 (Docket No. 101). Defendant Telb submitted a Reply on October 21, 2013 (Docket No. 106).

## V. Motion for Judgment on the Pleadings Standard

Under FED. R. CIV. P. 12(c), after the pleadings are closed, a party may move for judgment on the pleadings, so long as doing so does not delay trial. Motions for judgment on the pleadings are analyzed under the same standard as motions to dismiss pursuant to FED. R. CIV. P. 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). In ruling on either motion, a court "must construe the complaint in the light most favorable to the

3

nonmoving party, accept the well-pled factual allegations as true, and determine when the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). A court "need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581-82 (6th Cir. 2007). While the complaint need not contain detailed factual allegations, a plaintiff bears the obligation of providing the grounds upon which he is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). This requires "more than labels and conclusions." *Id*. Furthermore, mere "formulaic recitation of the elements of a cause of action will not do." *Id*.

## VI. Discussion

In his Motion, Defendant Telb argues: (1) he is entitled to both qualified immunity as to the federal claims and immunity under R.C. § 2744; (2) Plaintiffs' conspiracy claims under both federal and state law are not pled with sufficient specificity to state a claim for relief, or, in the alternative, are barred by Ohio's intra-corporate conspiracy doctrine; (3) Ohio does not recognize a civil tort of aiding and abetting; and (4) Plaintiffs fail to state a claim under either the federal or state RICO statutes (Docket No. 90). Upon review of the pleadings, this Court finds: (1) Defendant Telb is not entitled to qualified immunity for the federal claims; (2) Defendant Telb is not entitled to immunity under R.C. § 2744 for Plaintiffs' claims of civil conspiracy, aiding and abetting, excessive force, failure to provide medical care, assault and battery, wrongful death, and RICO violations; (3) Plaintiffs fail to properly plead their claims for conspiracy under either 42 U.S.C. §1983, 42 U.S.C. § 1985, or Ohio state law; (4) even if Plaintiffs had properly pled their conspiracy claims, such claims are barred by the intra-corporate

4

conspiracy doctrine; (5) Ohio does not recognize a civil tort of aiding and abetting; and (6)
Plaintiffs fail to properly state a claim for either a federal or state RICO violation.

**A.      Immunity Under R.C. § 2744**

Plaintiffs allege a number of state law claims, including: (1) wrongful death; (2)
negligence/recklessness/bad faith; (3) assault and battery; (4) intentional infliction of emotional
distress; (5) loss of consortium; (6) civil conspiracy; (7) aiding and abetting; and (8) RICO
violations (Docket No. 70). For each claim, Defendant Telb alleges immunity under R.C. § 2744
(Docket No. 90, Attachment 1).

In general, under R.C. § 2744, commonly known as the Political Subdivision Tort
Liability Act, "a political subdivision is not liable in damages in a civil action for injury, death,
or loss to person or property allegedly caused by any act or omission of the political subdivision
or an employee of the political subdivision in connection with a governmental or proprietary
function." R.C. § 2744.02(A)(1). A political subdivision is defined as a "municipal corporation,
township, county, school district, or other body corporate and politic responsible for
governmental activities in a geographic area smaller than that of the state." R.C. § 2744.01(F).
Federal courts in this district have held that both the sheriff and the sheriff's deputies are
employees of a political subdivision, namely, the county. *Sanford v. Cnty. of Lucas, State of
Ohio et al.*, 2009 U.S. Dist. LEXIS 20774, *24 (N.D. Ohio 2009) (internal citations omitted).

Defendant Telb, like all Defendants in this matter, is being sued both in his official and
individual capacities (Docket No. 70, ¶ 6). With regard to immunity under state law, the Sixth
Circuit has recognized that

> Ohio's immunity statute draws no distinction between suits against an individual
> government employee in his official as opposed to his personal capacity. An action

> against an officer in his official capacity is simply another way of pleading an action against the governmental entity itself. If official-capacity claims are nothing more than claims against the county, then it would be appropriate to dismiss the official capacity claims against the employee defendants if such claims have been dismissed against the county.

*Chesher v. Neyer*, 477 F.3d 784, 797 (6th Cir. 2007) (*citing Norwell v. City of Cincinnati*, 133 Ohio App.3d 790 (Ohio Ct. App. 1990)). Therefore, in order to determine whether Defendant Telb is immune in his official capacity, this Court must determine whether the governmental entities, namely Lucas County and the Lucas County Sheriff's Office, are immune from suit. *See Sanford*, 2009 U.S. Dist. LEXIS 20774 at *28 (*citing Chesher*, 477 F.3d at 797).

Under the Political Subdivision Tort Liability Act, the Court must use a three-tiered analysis for determining whether the Defendant governmental entities are immune from liability. *See Sanford*, 2009 U.S. Dist. LEXIS 20774 at *28. As stated above, the general rule is that political subdivisions engaged in governmental or proprietary functions are "not liable in damages in a civil action for injury, death, or loss to person or property." R.C. § 2744.02(A)(1). Once this immunity is established, the Court must determine whether any of the five *exceptions* to immunity, listed under R.C. § 2744.02(B), apply. These exceptions include: (1) injuries caused by the negligent operation of a motor vehicle; (2) injuries caused by the negligent performance of proprietary functions; (3) injuries caused by the failure to keep open roads, highways and streets open, in repair and free from nuisance; (4) injuries caused by negligence on the ground of a building used for governmental purposes; or (5) injuries for which liability is expressly imposed by the Ohio Revised Code. R.C. § 2744.02(B)(1)-(5). Finally, *even if* an exception applies, "immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in [R.C. § 2744.03] applies." *Sanford*, 2009 U.S. Dist. LEXIS

6

20774 at *29 (*citing Cater v. City of Cleveland*, 83 Ohio St. 3d 24, 28 (Ohio 1998)).

Here, it is clear that Defendant Telb was engaged in a governmental function. *See State v. Cook*, 83 Ohio St.3d 404 (Ohio 1998) (police power is considered to be a government function). Second, Plaintiffs allege that R.C. § 2744.02(B)(5) applies because civil liability may be "imposed upon [a] political subdivision by a section of the [Ohio] Revised Code." Specifically, Plaintiffs allege liability under R.C. § 311.05, which states that "[t]he sheriff shall only be responsible for the neglect of duty or misconduct in office of any of his deputies if he orders, has prior knowledge of, participates in, acts in reckless disregard of, or *ratifies* the neglect of duty or misconduct in office of the deputy." R.C. § 311.05 (emphasis added). In the case at hand, Plaintiffs essentially allege that Defendant Telb is liable under R.C. § 311.05 for knowing about and covering up the actions of Gray and Schmeltz (Docket No. 70). In response, Defendant Telb simply argues that, "as Defendant Telb was not involved in the assaults, no civil liability for that portion of Plaintiff's claim survives" (Docket No. 90, Attachment 1, p. 17 of 29). At this point, the Court finds that Plaintiffs have set forth sufficient facts to show that Defendant Telb's actions are governed by R.C. § 311.05. Therefore, Defendant Telb's Motion for Judgment on the Pleadings and/or Motion to Dismiss with regard to all state law claims against him in his *official* capacity is denied at this juncture.

## 1.    Individual Capacity Immunity

Whether a defendant is liable as an individual turns on the availability of statutory immunity as defined in R.C. § 2744.03. *See Chesher*, 477 F.3d at 797. Under R.C. § 2744.03(A)(6), a political subdivision employee is immune from liability while acting within the scope of his employment. This immunity is subject to exception if: (a) the employee's acts or

omissions were manifestly outside the scope of his employment or official responsibilities; (b) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (c) civil liability is expressly imposed upon the employee by a section of the Ohio Revised Code. R.C. § 2744.03(A)(6)(a)-(c). As Plaintiffs have already admitted that all Defendants, including Defendant Telb, were acting within the scope of their employment at all times relevant to the Second Amended Complaint, only exceptions (b) and (c) are potentially relevant to the case at hand.

a.  <strong>Malicious purpose, bad faith, or wanton reckless manner</strong>

Under R.C. § 2744.03(A)(6)(b), "maliciousness" is defined as "indulging or exercising malice; harboring ill-will or enmity." *Pearl v. City of Wyoming*, 2013 Ohio App.LEXIS 2783, *4 (2013) (internal citations omitted). It can also be defined as "the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Id.* (internal citations omitted). "Bad faith" indicates "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id.* at *4-5. It also includes the "actual intent to mislead or deceive another." *Id.* "Wanton" is conduct that "manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury." *Id.* at *5 (internal citations omitted). Finally, one acts in a "reckless" manner if he "does an act or intentionally fails to do an act which it is his duty to do." *Id.* This individual must know, or have reason to know, facts that would "lead a reasonable man to realize, not only that

8

his conduct creates an unreasonable risk of harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." *Id*. at *5-6.

Here, Plaintiffs argue bad faith: Defendant Telb is not entitled to immunity given his participation in the alleged cover-up and conspiracy surrounding Benton's death (Docket No. 101, pp. 36-37 of 51). Construing the facts as set forth in the Second Amended Complaint as true, Plaintiffs claim that Defendant Telb: (1) had full knowledge of the assault on Benton; and (2) intentionally and deliberately made false statements about his knowledge to federal officials for the sole purpose of impeding the investigation into Benton's death (Docket No. 70, ¶¶ 40-48). Such facts, when accepted as true, sufficiently allege that Defendant Telb acted in bad faith. In other words, Defendant Telb's alleged actions displayed an "actual intent to mislead or deceive another." *Pearl*, 2013 Ohio App.LEXIS at *5. Therefore, the Court declines to grant Defendant Telb's request for immunity for the alleged claims of civil conspiracy, aiding and abetting, and RICO violations.

### b.      Statutory Liability under R.C. § 311.05

Plaintiffs also allege that Defendant Telb lacks immunity for their claims for wrongful death, negligence/recklessness/bad faith, assault and battery, intentional infliction of emotional distress, loss of consortium, excessive force, and failure to seek medical care, given the imposition of statutory liability under R.C. § 311.05 (Docket No. 101, p. 39 of 51). Under this section, a "sheriff shall only be responsible for the neglect of duty or misconduct of any of his deputies if he orders, has prior knowledge of, participates in, acts in reckless disregard of, or ratifies the neglect of duty or misconduct in office of the deputy." "Evidence of tortious wrongdoing on the part of the deputies must be established before liability can be imputed to the

sheriff." *Smith v. Redecker*, 2010 Ohio App. LEXIS 404, **28 (Ohio Ct. App. 2010).

Here, Plaintiffs do not allege that Defendant Telb ordered, had prior knowledge of, participated in, or acted in reckless disregard of Benton's assault and subsequent death (Docket No. 70). Rather, Plaintiffs argue that Defendant Telb's alleged cover-up and falsification of documents somehow ratified the conduct of Gray and Schmeltz (Docket No. 101, pp. 40-41 of 51). The Ohio Supreme Court has stated that "negligence or inaction alone is insufficient to show ratification of an agent's unauthorized act, but ratification must follow knowledge of the facts." *Morr v. Crouch*, 19 Ohio St.2d 24, 29 (Ohio 1969). In 2005, an Ohio Appellate Court interpreted this phrase to mean that "inaction or silence alone is not enough to prove ratification of an agent's unauthorized action, but that ratification can be shown by inaction or silence where the principal is fully informed of all of the material facts to the agent's actions." *Amato v. Heinika Ltd.*, 2005 Ohio App. LEXIS 206, **5 (Ohio App. Ct. 2005).

Plaintiffs allege that Defendant Telb was "made aware and had full knowledge of the assault on Carlton Benton, which led to his death, but nonetheless intentionally and deliberately made false statements to federal officials about [his] knowledge of Defendant Schmeltz's assault and Defendant Gray's chokehold and the deliberate failure to provide medical attention to Carlton Benton" (Docket No. 70, ¶ 40). This assertion is neither a legal conclusion nor an unwarranted factual conclusion. As stated above, in either a Rule 12(c) or 12(b)(6) motion, this Court must accept as true all well-pled factual allegations. *Commercial Money Ctr.*, 508 F.3d at 336. As such, this Court must accept as true Plaintiffs' allegation that Defendant Telb was made aware and had full knowledge of the assault on Benton. This is not an unwarranted conclusion: it stands to reason that when an inmate dies while in custody, the sheriff is aware of that death and

10

its potential causes. This bare assertion is enough to impute liability to Defendant Telb for the actions of Gray and Schmeltz.

However, as stated above, in order to hold Defendant Telb liable for the actions of Gray and Schmeltz under R.C. § 311.05, Plaintiffs must provide some "evidence of tortious wrongdoing on the part of the deputies . . . ." *Smith*, 2010 Ohio App. LEXIS 404 at **28. As held by this Court, Plaintiffs present no such evidence against Gray or Schmeltz for their claims of

intentional infliction of emotional distress or negligence (Docket Nos. 111, 112). Therefore, the Court declines to grant Defendant Telb's request for immunity only on the remaining claims against Gray and Schmeltz, which include excessive force, failure to provide medical care, assault and battery, and wrongful death. All other claim against Defendant Telb asserted under R.C. § 311.05 are dismissed.

**B.    Qualified Immunity**[1]

In addition to state law claims, Plaintiffs seek to hold Defendant Telb liable for federal civil rights violations pertaining to his training and supervision of his deputies (Docket No. 70, ¶¶ 68-74). Specifically, Plaintiffs allege that Defendant Telb "failed to supervise or sufficiently

---

[1] It should be noted that Defendant Telb incorporates by reference the arguments of Gray and Schmeltz with regard to the officers' use of excessive force (Docket No. 90, Attachment 1, pp. 7, 19-26 of 29). In ruling on a motion to dismiss or motion for judgment on the pleadings, the Court may only consider documents attached to, **incorporated by (reference),** or referred to in the pleadings. *Whittiker v. Deutsche Bank Nat'l Trust Co.,* 605 F.Supp.2d 914, 924 (N.D.Ohio, 2009).  Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in a plaintiff's complaint and are central to the claims, and therefore may be considered without converting a Rule 12(b)(6) motion to dismiss to a Rule 56 motion. *Id.* (*citing Weiner v. Klais and Co.*, 108 F.3d 86, 89 (6th Cir.1997)). Because Plaintiffs did not oppose the incorporation of Gray or Schmeltz's pleadings and the pleadings themselves provided arguments central to Defendant Telb's defense, the Magistrate reviewed and considered such claims when considering the merits of the Motion for Judgment on the Pleadings and/or Motion to Dismiss.

supervise, while knowing or being deliberately indifferent to the excessive use of force by

officers of the Sheriff's Department, including, but not limited [to] an excessive use of the

chokehold as employed by Defendant Gray, which caused ultimately the death of Mr. Benton"

(Docket No. 70, ¶ 74). In his defense, Defendant Telb asserts qualified immunity (Docket No.

90, Attachment 1, pp. 19-26 of 29).

   This Court has time and again iterated the standard for qualified immunity, which can be

summarized as follows:

> Qualified immunity protects government officials performing discretionary functions
> from civil liability under federal laws unless their conduct violates 'clearly
> established statutory or constitutional rights of which a reasonable person would
> have known.' *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Like absolute
> immunity, qualified immunity 'is an *immunity from suit* rather than a mere defense
> to liability . . . [and] is effectively lost if a case is erroneously permitted to go to
> trial.' *Mitchell v. Forsyth*, 472 U.s. 511, 526 (1985) (emphasis in original). Thus,
> unless the plaintiff's allegations state a claim of violation of clearly established law,
> a defendant pleading qualified immunity is entitled to dismissal before the
> commencement of discovery. *Id.*

> Qualified immunity provides a broad range of protection, as it protects 'all but the
> plainly incompetent or those who knowingly violate the law.' *Malley v. Briggs*, 475
> U.S. 335, 341 (1986). 'Officials are not liable for bad guesses in gray areas; they are
> liable for transgressing bright lines.' *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th
> Cir. 1992).

*Turner v. City of Toledo*, 2009 U.S. Dist. LEXIS 102473, *3-4 (N.D. Ohio 2009).

   Once a defendant asserts qualified immunity, the burden shifts to the plaintiff to satisfy

two basic questions: "(1) taken in the light most favorable to the party asserting the injury, do the

facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation

could be made out on a favorable view of the parties' submission, was the right clearly

established at the time of the injury?" *May v. Hamilton County*, 2011 U.S. Dist. LEXIS 136275,

*9 (S.D. Ohio 2011) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The court may, in its

discretion, address these questions in any order. *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009). A plaintiff bears the burden of showing that a right is "clearly established." *May*, 2011 U.S. Dist. LEXIS 136275 at *10 (*citing Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009)). A defendant bears the burden of show that the "challenged actions were objectively reasonable in light of the law existing at the time." *Id*.

### 1.    Constitutional Violation

Plaintiffs allege that Defendant Telb failed to train his employees in the proper use of force (Docket No. 70, ¶ 68). To establish a failure to train claim, Plaintiffs must set forth "sufficient facts connecting the victim's injury with a municipal policy, custom or practice and . . . must allege that the defendants' failure to train amount[ed] to deliberate indifference to the rights of [Plaintiff]." *Sanford*, 2009 U.S. Dist. LEXIS 20774 at *17 (*citing Moreno v. Metro. Gen. Hosp.*, 2000 U.S. App. LEXIS 5876, *2 (6th Cir. 2000)). Here, Plaintiffs allege that Defendant Telb

> knowingly failed, either sufficiently or at all, to hire, train, or supervise staff in connection with the use of force, to properly investigate allegations of excessive force, to establish and implement policy and procedures calculated to prevent the use of excessive force, or to otherwise ensure the safety and security of pretrial detainees in their custody and control against the use of excessive force.

(Docket No. 70, ¶ 69). Furthermore, Plaintiffs allege that regardless of any such training or supervision, all Defendants, including Defendant Telb "engaged in the custom and policy of knowing, intentional, and deliberate indifference to and disregard for the safety and well-being of pretrial detainees in their custody and control" (Docket No. 70, ¶ 72). It is Plaintiffs' claim that these failures resulted in the alleged unconstitutional assault and subsequent use of a chokehold against Benton, in addition to an ongoing coverup (Docket No. 70, ¶ 74). Such

allegations are sufficient for a failure to train claim. *See Sanford*, 2009 U.S. Dist. LEXIS 20774 at *18.

With regard to excessive force, "all claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard." *Sanford*, 2009 U.S. Dist. LEXIS 20774 at *18 (*citing Graham v. Connor*, 490 U.S. 386, 395 (1989)). "A reviewing court should pay particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Sanford*, 2009 U.S. Dist. LEXIS 20774 at *18 (*citing Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)).

Here, Plaintiffs allege that Benton, while shackled with handcuffs, leg irons, and a belly chain, was shoved and struck by Schmeltz from behind, causing Benton to fall straight to the floor (Docket No. 70, ¶¶ 19-20). Plaintiffs also allege that, while similarly restrained, Gray applied a choke hold to Benton, causing Benton to go limp and unconscious (Docket No. 70, ¶¶ 28-29). This is sufficient to support an alleged violation of Benton's Fourth Amendment rights.

### 2. Clearly Established

For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Magrum v. Meinke,* 332 F.Supp.2d 1071, 1081 (N.D.Ohio,2004). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id*. (internal citations omitted).

14

The Sixth Circuit has long held that the right to be free from excessive force under the Fourth Amendment is "clearly established." *See Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994). Here, Plaintiffs allege that Defendant Telb's failure to train the proper use of force constituted deliberate indifference and resulted in a violation of Benton's constitutional rights (Docket No. 70, ¶ 70). For purposes of a motion for judgment on the pleadings and/or a motion to dismiss, this allegation is sufficient to set forth a claim that Benton's right was "clearly established." *See Sanford*, 2009 U.S. Dist. LEXIS 20774 at *19. Therefore, this Court concludes that Plaintiffs' allegations are sufficient to support a claim that Defendant Telb, through his alleged failure to train, violated clearly established constitutional rights. Accordingly, Defendant Telb is not entitled to qualified immunity on this issue.[2]

## C.     Conspiracy

Plaintiffs set forth three claims of civil conspiracy against all Defendants, including Defendant Telb, under 42 U.S.C. §§ 1983 and 1985 as well as under Ohio law (Docket No. 70).

### 1.        Federal Conspiracy under § 1983

By its terms, "§ 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000). Specifically, this section "provides a cause of action for deprivation of federal statutory or constitutional rights by persons acting under color of state law." *Slough v. Telb*, 644 F.Supp.2d 978, 987 (N.D. Ohio 2009) (*citing Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

___

[2] To be clear, Defendant Telb has also asserted qualified immunity against Plaintiffs claims of civil conspiracy under §§ 1983 and 1985. As will be discussed in Section C, *infra*, this Court finds that Plaintiffs fail to properly plead a claim for civil conspiracy or, in the alternative, that a claim for civil conspiracy is barred by the intra-corporate conspiracy doctrine. As such, it is unnecessary to determine whether Defendant Telb is entitled to qualified immunity on either of these claims.

15

"Where the defendants are state or local officers acting as police officers, they are presumed to be acting 'under color' of state law, even where their actions violate or are unauthorized by state law." *Slough*, 644 F.Supp.2d at 987 (*citing Monroe v. Pape*, 365 U.S. 167, 180 (1961)). Here, Plaintiffs allege that all Defendants, including Defendant Telb, while acting under color of state law, deprived both Benton and his surviving family members of "rights guaranteed under the Constitution and laws of the United States and the State of Ohio, including equal protection and privileges and immunities of law" (Docket No. 70, ¶ 76).

Under federal law,

[a] civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (*quoting Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). A claim for conspiracy must be "pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Spadafore*, 330 F.3d at 854 (*quoting Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

Here, Plaintiffs allege that Defendant Telb engaged in conspiratorial conduct which included the falsification of certain documents and the making of false statements to the FBI (Docket No. 70, ¶ 76). According to Plaintiffs, these actions constituted a "knowing, willful and intentional conspiracy, either express or implied, to deprive [Benton] . . . his estate, and his family member Plaintiffs the rights guaranteed under the Constitution and laws of the United

States and State of Ohio, including equal protection and privileges and immunities of law"
(Docket No. 70, ¶ 76). Defendant Telb denies liability for this allegation, asserting qualified
immunity, or, in the alternative, failure of Plaintiffs to properly set forth a claim (Docket No. 90,
Attachment 1, pp. 26-27 of 29).

As previously stated, it is unnecessary to determine whether Defendant Telb is entitled to
qualified immunity for conspiracy alleged under federal law. The allegations supporting this
claim in Plaintiffs' Second Amended Complaint are mere legal conclusions. Plaintiffs offer no
specific factual statements to support that a single plan existed or that Defendants, including
Defendant Telb, had a single plan when they allegedly falsified documents and made allegedly
false statements. Without this particularity, Plaintiffs fail to satisfy the pleading requirements
necessary for a federal conspiracy claim. Therefore, Defendant Telb's Motion for Judgment on
the Pleadings and/or Motion to Dismiss is granted with regard to the federal civil conspiracy
claim under 42 U.S.C. § 1983 and the claim is dismissed.

## 2. Conspiracy to Deprive Constitutional Rights under 42 U.S.C. § 1985

Next, Plaintiffs allege that Defendant Telb conspired with McBroom, Gray, and Schmeltz
to deprive Benton of his constitutional rights, in violation of 42 U.S.C. § 1985. Defendant Telb
incorporates by reference the arguments made by McBroom with regard to this issue (Docket
No. 90, Attachment 1, p. 26 of 29). As an initial matter, it is important to note that Plaintiffs fail
to articulate under *which* provision of § 1985 they seek relief (Docket No. 70). Defendant Telb,
while denying liability altogether, asserts that liability could only even be *possible* under §
1985(3) (Docket No. 80, Attachment 1, p. 23 of 30). Even then, Defendant Telb argues that a
claim fails for two reasons: (1) any conspiracy claim under federal law must fail given Plaintiffs'

failure to show that "two or more persons" conspired; and (2) in the alternative, Plaintiffs fail to allege or identify any race or class-based animus (Docket No. 80, Attachment 1, pp. 23-26 of 30). After thorough review, this Court finds that Plaintiffs' Amended Complaint fails to state a claim under *any* provision of the statute.

By way of general summary, § 1985(1) prohibits conspiracies that interfere with federal officers in the performance of their official duties. 42 U.S.C. § 1985(1). Section two prohibits conspiracies that "imped[e], hind[er], obstruct[], or defeat[], in any manner, the due course of justice in any state or Territory with the intent to deny any citizen the equal protection of the laws." 42 U.S.C. § 1985(2). Section three prohibits conspiracies that, either directly or indirectly deprive "any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the law, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons . . . the equal protection of the laws . . . ." 42 U.S.C. § 1985(3).

The Sixth Circuit has long applied the intra-corporate conspiracy doctrine to conspiracy claims asserted under 42 U.S.C. § 1985. *See Elersic v. Lake Cnty.*, 2005 U.S. Dist. LEXIS 10890, *12 (N.D. Ohio 2005) (*citing Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991)). The intra-corporate conspiracy doctrine provides that "a conspiracy claim will generally not lie when all defendants are members of the same collective entity because they do not constitute separate people as is required to form a conspiracy." *Id*. at *12-13 (*citing Hull*, 926 F.2d at 509); *see also Amadasu v. Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) (holding that the intra-corporate conspiracy doctrine prohibits a claim of conspiracy where "all defendants are members of the same collective entity."). Here,

Plaintiffs allege that, although all defendants were, at some point, active employees of the Lucas County Sheriff's Office, Gray officially retired in June 2004, effectively making him a separate "person" for purposes of a civil conspiracy claim (Docket No. 101, p. 42 of 51). Plaintiffs cite no authority for their conclusion (Docket No. 70). Furthermore, it stands to reason that *if* employee Defendants were to enter into a conspiracy, they would have done so immediately following Benton's death and while Gray was still an active employee of the Sheriff's Office. This Court therefore finds all employee Defendants to be members of the same entity.

The Sixth Circuit has recognized only one exception to the "two person" conspiracy requirement, and that is where "employees act outside the scope of their employment." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 541 (6th Cir. 1994). This exception is inapplicable to the case at hand as Plaintiffs admit, in their Amended Complaint, that all employee Defendants "were acting in the course and scope of their employment . . . at all pertinent times . . . ." (Docket No. 70, ¶ 6). Therefore, as the employee Defendants are all agents of the Lucas County Sheriff's Office, Plaintiffs' civil conspiracy claim under *all* sections of § 1985 must fail.

In the alternative, Defendant Telb argues that any claim under § 1985 must be dismissed given Plaintiffs' failure to allege or identify any race or class-based animus (Docket No. 80, Attachment 1, pp. 25-26 of 30). With regard to §§ 1985(2) and (3), a plaintiff must show that any conspiracy is "motivated by racial or other class-based discriminatory animus." *Moore v. City of Garfield Heights, et. al.*, 2012 U.S. Dist. LEXIS 164911, *24 (N.D. Ohio 2012) (finding that, under both 42 U.S.C. §§ 1985(2) and (3), there must be allegations of racial or other class-based discriminatory animus).

19

Here, Plaintiffs make *no* allegation that the alleged conspiracy was motivated by racial or any other class-based discriminatory animus (Docket No. 70). There is no mention in the Second Amended Complaint that Benton was a member of a protected class or that Defendant Telb discriminated against Benton based on such a membership (Docket No. 70). As such, Plaintiffs cannot maintain a claim under 42 U.S.C. §§ 1985(2) or (3).

In sum, the Court finds Plaintiffs' claims under § 1985 fail to state a claim upon which relief may be granted. Therefore, Defendant Telb's Motion for Judgment on the Pleadings and/or Motion to Dismiss with respect to this issue is granted and the claim is dismissed in its entirety.

### 3.    State Civil Conspiracy

Plaintiffs also allege that all Defendants in this matter, including Defendant Telb, are liable for state civil conspiracy (Docket No. 70, ¶¶ 97-98). Plaintiffs contend that Gray and Schmeltz committed an unlawful act when they proximately caused Benton's death (Docket No. 70, ¶ 98). Thereafter, Defendant Telb and McBroom became aware of the incident and together "the four Defendants then conspired to file false reports and make false statements to, among others, the FBI" (Docket No. 70, ¶ 98). In response to Plaintiffs' claims, Defendant Telb alleges that, as members of the same entity, namely the Lucas County Sheriff's Office, it was legally impossible for Defendants to form a conspiracy (Docket No. 90, Attachment 1, pp. 26-27 of 29). Plaintiffs disagree. This Court finds Defendant Telb to be correct.

In Ohio, civil conspiracy is a tort defined as "a malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (Ohio 1998) (internal citations omitted). One cannot maintain a claim for civil conspiracy without the presence of an

20

underlying unlawful act. *Godsen v. Louis*, 116 Ohio App.3d 195, 219 (Ohio App. Ct. 1996). The "malicious combination [of two or more persons] to injure does not require a showing of an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act." *Id*.

As an initial matter, Defendant Telb, using McBroom's Motion for Judgment on the Pleadings (Docket No. 80, Attachment 1, pp. 14-16 of 30), asks this Court to look only to the specific facts averred within the cause of action *itself*, not as incorporated by reference from the balance of the Second Amended Complaint (Docket No. 90, Attachment 1, p. 26 of 29). Plaintiffs reject this idea, citing non-dispositive language from a 1992 Report and Recommendation in *Cheetwood v. Roberts*, 1992 U.S. Dist. LEXIS 22656 (N.D. Ohio 1992) in which the court determined that such an action is only appropriate "where the length and complexity of the complaint precludes a plaintiff from relying on incorporation by reference . . . ." 1992 U.S. Dist. LEXIS 22656 at *8. According to Plaintiffs, the Second Amended Complaint contains only one hundred paragraphs concerning three basic claims, effectively preventing it from being so lengthy or complex that they are precluded from effectively using incorporation by reference (Docket No. 101, p. 43 of 51).

On the other hand, Defendant Telb relies on a much more recent case out of the Northern District of Ohio in which the court noted that it has "time and again counseled litigants that such incorporation by reference is insufficient. If specific facts support a particular cause of action, those facts must be stated within that cause of action." *Advanced Coatings*, 2012 U.S. Dist. LEXIS 104820 at *10.

Even giving Plaintiffs the benefit of the doubt and looking to the Second Amended

21

Complaint as a whole, Plaintiffs still fail to plead with sufficient particularity the alleged facts to support a claim of civil conspiracy under Ohio law. It is well settled that "conspiracy claims must be pled with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Advanced Coatings Int'l, Inc. v. Fla. CirTech, Inc.*, 2012 U.S. Dist. LEXIS 104820, *9 (N.D. Ohio 2012) (*quoting Ghaster v. City of Rocky River*, 2010 U.S. Dist. LEXIS 71020, *11 (N.D. Ohio 2010) (*quoting Avery v. City of Rossford*, 145 Ohio App.3d 155, 165 (Ohio Ct. App. 2001)). The requirements governing civil conspiracy pleadings are "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). Plaintiffs pleaded facts with regard to a conspiracy claim can be summarized as follows:

> . . . Defendants Gray and Schmeltz committed an unlawful act when they proximately caused [Benton's] death. Defendants Telb and McBroom knew or became aware of Defendants Gray and Schmeltz's involvement in [Benton's] death. The four Defendants then conspired to file false reports and make false statements to, among others, the FBI. (Docket No. 70, ¶ 98).

> Defendants Telb and McBroom were made aware and had full knowledge of the assault on [Benton], which led to his death, but nonetheless intentionally and deliberately made false statements to federal officials about their knowledge of [Schmeltz's] assault and [Gray's] chokehold and the deliberate failure to provide medical attention to [Benton]. (Docket No. 70, ¶ 40).

> During that FBI investigation, each of Defendants Telb, McBroom, Gray and Schmeltz made intentional, deliberate false statements in the course of the FBI investigation with the deliberate purpose of impeding the investigation, and working, individually and together to ensure that there[sic] were unlawful and illegal acts would not be discovered or exposed. (Docket No. 70, ¶ 45).

> Defendant McBroom made false statements to the FBI that he had no knowledge that Defendant Gray used a chokehold on [Benton] prior to and then causing [Benton's] death when, in fact, Defendant McBroom had full knowledge that Defendant Gray had used such a chokehold. (Docket No. 70, ¶ 47).

These paragraphs contain mere legal conclusions, not material facts necessary to support a claim of civil conspiracy. Plaintiffs fail to plead when, where, why, or how the conspiracy occurred or how the alleged conspiracy resulted in damages. Plaintiffs claim for civil conspiracy under Ohio law should fail on sufficiency of the pleadings grounds alone.

### 4.         Intra-Corporate Conspiracy Doctrine

As an additional consideration, *even if* this Court had found Plaintiffs' civil conspiracy claims to be pled with sufficiency, their claims for state civil conspiracy are precluded by the Ohio intra-corporate conspiracy doctrine. Identical to the intra-corporate conspiracy doctrine discussed with regard to federal conspiracy claims brought under § 1985, Ohio law states that "[a] corporation cannot conspire with its own agents or employees. Where all defendants, allegedly co-conspirators, are members of the same collective entity, there are not two separate people to form a conspiracy . . . ." *Valente v. Univ. of Dayton*, 689 F.Supp.2d 910, 929 (S.D. Ohio 2010) (internal citations omitted). An exception to this doctrine exists when "employees act outside the course of their employment." *Johnson v. Hills & Dale Gen. Hosp.*, 40 F.3d 837, 841 (6th Cir. 1994). This doctrine has been applied to police and sheriff's departments. *See Ruble v. Escola*, 898 F.Supp.2d 956, 986 (N.D. Ohio 2012) (since both defendants were members of the Perrysburg Police Department, the intra-corporate conspiracy doctrine negates a claim of civil conspiracy); *see also Elersic*, 2005 U.S. Dist. LEXIS10890 at *12-13 (since the Lake County Sheriff's Office detectives were all agents of Lake County, the intra-corporate conspiracy doctrine applied).

According to Plaintiffs, Gray officially retired from the Lucas County Sheriff's Office in June 2004 (Docket No. 101, p. 42 of 51). Gray's retirement successfully made him a separate

"person" for purposes of a civil conspiracy claim, as he was no longer part of the "same collective entity" as the remaining Defendants (Docket No. 101, p. 42 of 51). Plaintiffs cite no authority for their conclusion (Docket 70).

Plaintiffs' own timeline of the alleged conspiracy shows that, at the time of the alleged conspiracy, all Defendants, including Gray, were employees of the Lucas County Sheriffs Office. Plaintiffs set forth the initial timeline as follows:

> [d]ocuments that were falsified include a Critical Incident Report, a Shift Commander's and Floor Supervisor's Report, and a Correction Officers Report. Defendant Gray falsified documents on or around May 30, 2004. Defendant Schmeltz falsified documents on May 30, 2004 and June 1, 2004. Defendants McBroom and Telb, by the end of June 2004, failed to undertake a sufficient adequate investigation of Mr. Benton's death. Morover, they failed to turn over to the Coroner full, complete and truthful information concerning the chokehold and assault of Mr. Benton.

(Docket No. 101, p. 44 of 51).

By Plaintiffs' own admission, Gray retired from the Lucas County Sheriffs Office on June 30, 2004, after these original actions by Defendants, including Defendant Telb, took place (Docket No. 101, p. 41 of 51). It also stands to reason that if Defendants, including Defendant Telb, were going to engage in a conspiracy about the circumstances of Benton's death, they would have done so immediately after or close to the time of death.

In addition, Plaintiffs cannot rely on the one exception to the intra-corporate conspiracy doctrine, namely that Defendants were acting outside the scope of their employment by engaging in an alleged conspiracy. *See Johnson*, 40 F.3d at 841. By their own admission in the Second Amended Complaint, Plaintiffs acknowledge that all Defendants were "acting in the course and scope of their employment *at all pertinent times*" (Docket No. 70, ¶ 6) (emphasis added).

24

Therefore, Defendant Telb's Motion for Judgment on the Pleadings and/or Motion to Dismiss with regard to civil conspiracy under Ohio law is granted and the claim is dismissed.

## D.    Aiding and Abetting

Plaintiffs next allege that Defendant Telb is liable for aiding and abetting Gray and Schmeltz in the assault and subsequent death of Benton (Docket No. 70, ¶ 98). Defendant Telb argues that he cannot be held liable for aiding and abetting, as such a claim does not exist under Ohio law (Docket No. 90, Attachment 1, p. 27 of 29). Plaintiffs disagree, countering that the Sixth Circuit's predictive holding in *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 519 F.3d 519 (6th Cir. 2000), allows such a claim (Docket No. 101, pp. 45-47 of 51). After further review of the current law in the State of Ohio, this Court agrees with Defendant Telb.

In order to determine whether Ohio recognizes a common law cause of action for aiding and abetting, it is first necessary to set forth and review the somewhat conflicting opinions on the subject. In *Aetna Casualty*, the plaintiff accused the defendants of improperly defrauding the plaintiff into providing certain surety bonds for the defendant's construction projects. 219 F.3d at 524. Following a jury trial, the defendants were found liable for, *inter alia*, aiding and abetting fraud. *Id.* The defendants requested judgment in their favor as a matter of law, or, in the alternative, a new trial. *Id.* These motions were denied by the district court and the defendants appealed. *Id.*

On appeal, the defendant's questioned whether aiding and abetting, as defined under the Second Restatement of Torts § 876(b) was a cognizable claim under Ohio Law. *Id.* at 533. The Sixth Circuit answered that question as follows:

25

> As the Court of Appeals has observed, the state's highest court 'has never expressly approved Section 876 . . . .' Although that may be true, the Supreme Court of Ohio . . . has on at least one occasion applied Section 876(b). By applying Section 876(b) . . . the [Ohio Supreme Court] implicitly indicated that it considered civil aiding and abetting a viable cause of action. Accordingly, we conclude that the Supreme Court of Ohio would recognize aiding and abetting liability if squarely faced with the issue.

*Aetna*, 219 F.3d at 533. Several years later, in 2006, the Sixth Circuit issued its opinion in *Pavlovich v. Nat'l City Bank*, 435 F.3d 560 (6th Cir. 2006), and found that the plaintiff's claim for civil aiding and abetting must fail because "Ohio law is unsettled whether this cause of action exists . . . ." 435 F.3d at 570.

In 2007, in *Ohio Bureau of Workers' Compensation v. MDL Active Duration Fund, LTD., et. al.*, 476 F.Supp.2d 809 (S.D. Ohio 2007), the District Court for the Southern District of Ohio relied on the Sixth Circuit's holding in *Aetna Casualty*, stating "[i]n the absence of a subsequent change in state law, this court is bound to follow the Sixth Circuit's opinion regarding Ohio law in *Aetna Casualty*." 476 F.Supp.2d at 828. The Court declined to grant a motion to dismiss on an aiding and abetting claim, citing the uncertainty of the law and "the fact that it cannot be said conclusively that Ohio law does not recognize an aiding and abetting tort . . . ." *Id*.

In April 2012, the district court for the Northern District of Ohio explained the impact of *Pavlovich* on *Aetna Casualty*, stating

> the precedent squarely before this Court is that an aiding and abetting claim based on Ohio law 'must fail' because the law is unsettled. As this Court reads *Pavlovich*, which post-dates *Aetna*, the Sixth Circuit considered *Aetna*, and yet still dismissed the aiding and abetting claim. The Sixth Circuit recognized that, based on *post-Aetna* Ohio appellate court decisions, Ohio has not recognized a cause of action for aiding and abetting. Thus, the predictive holding of *Aetna* is no longer controlling precedent in light of intervening Ohio appellate decisions as interpreted by *Pavlovich*.

26

*William D. Mundinger Trust v. Zellers*, 2012 U.S. Dist. LEXIS 59736, **24 (N.D. Ohio 2012);

*see also Barney v. PNC Bank (In re Estate of Barney)*, 714 F.3d 920, 929 (6th Cir. 2013)

(finding that the district court did not err for dismissing the plaintiff's aiding and abetting

tortious conduct claim "because it is highly doubtful that Ohio even recognizes such a tort");

*Advanced Coatings*, 2012 U.S. Dist LEXIS 104820 at *4-5 (N.D. Ohio 2012) (finding dismissal

of a claim for aiding and abetting proper given the Sixth Circuit's decision in *Pavlovich*).[3]

Given the precedent established by the Sixth Circuit in *Pavlovich*, and its recent

application in the Sixth Circuit and the Northern District of Ohio, this Court now finds that

Plaintiffs' aiding and abetting claim against Defendant Telb must fail. Without further direction

from the Ohio Supreme Court, this Court cannot find civil aiding and abetting to be a viable

claim under Ohio law. Therefore, although this Court denied Defendant Telb's request for

*qualified immunity* with respect to Plaintiffs' claim for aiding and abetting, it now *grants*

Defendant Telb's Motion for Judgment on the Pleadings and/or Motion to Dismiss on this issue

for failure to state a claim. The claim is dismissed.

## E.    Federal and State RICO Violations

Plaintiffs finally allege that Defendant Telb is liable for civil RICO under both federal

and Ohio law (Docket No. 70, ¶ 99). According to Plaintiffs, all Defendants "associated for a

common purpose of engaging in a course of conduct: to mislead and lie to federal authorities, to

ensure that the FBI did not discovery[sic] Defendants Gray and Schmeltz's role in the death of

---

[3] As recently as August 2012, the Ohio Supreme Court stated, in a response from a direct request
from the Northern District of Ohio, that is "has never recognized a claim under 4 Restatement 2d of Torts,
section 876 (1979)," and declined to do so on the facts of the case presented. *DeVries Dairy, LLC v.
White Eagle Cooperative Association*, 132 Ohio St.3d 516 (Ohio 2012).

Decedent (Docket No. 70, ¶ 99). This association then allegedly conspired to file fraudulent documents and make false statements concerning Benton's death, causing damages (Docket No. 70, ¶¶ 99-100). Defendant Telb disagrees, arguing that: (1) his actions do not satisfy the predicate offense requirements under RICO; and (2) Plaintiffs, under RICO, cannot recover for personal injuries (Docket No. 90, Attachment 1, p. 28 of 29). For purposes of discussion, this Court notes that federal and state RICO claims are analyzed under the same standard and therefore will be discussed concurrently. *See Bird v. Delacruz*, 411 F.Supp.2d 891, 894-95 (S.D. Ohio 2005) (*citing Ohio v. Nasrallah*, 139 Ohio App.3d 722 (Ohio Ct. App. 2000)).

To establish a RICO violation under both Ohio and federal law, a plaintiff must prove four essential elements: (1) the existence of two or more predicate offenses, i.e., racketeering activities; (2) the existence of an enterprise; (3) a nexus between the racketeering activities and the enterprise; and (4) an injury to either business or property as a result of the first three elements. *City of Cleveland v. Woodhill Supply, Inc.*, 403 F.Supp.2d 631, 634 (N.D. Ohio 2005). Under federal statute, "racketeering activities" are defined, in part, as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance of a listed chemical, which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). The predicate offenses must occur within ten years of each other (18 U.S.C. § 1961(5)), and a plaintiff must show "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 409 (6th Cir. 2012 (*citing H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237-39 (1989)).

Defendant Telb alleges that he was not indicted for any offense set forth in 18 U.S.C. §

28

1961(A)(1) (Docket No. 90, Attachment 1, p. 28 of 29). Therefore, RICO does not apply (Docket No. 90, Attachment 1, p. 28 of 29). Defendant Telb is correct: without proof of racketeering activity as defined by statute, Plaintiffs' RICO claim fails for want of the existence of two or more predicate activities.

Plaintiffs' claim also fails for lack of a redressable injury. Plaintiffs fail to plead with any particularity the specific injury resulting from Defendant Telb's alleged RICO violation. Instead, Plaintiffs simply allege that "[d]efendants' actions proximately caused damages to Plaintiffs, giving rise to claims of civil RICO violations" (Docket No. 70, ¶ 99). Plaintiffs fail to mention specifically what those damages are within the RICO claim itself. Based on Plaintiffs previous practice of incorporating by reference the balance of the information contained in the Second Amended Complaint, this Court presumes that Plaintiffs' alleged damages include "the deprivation of [Benton's] liberty without process of law and the deprivation of property interest to [Benton's] estate and other family members, including a property right in the claim against these Defendants which these Defendants conspired against" (Docket No. 70, ¶ 78).

As stated above, in a claim for civil RICO, a plaintiff is required to show an injury to either *business or property*. *Woodhill*, 403 F.Supp.2d at 634. Here, Plaintiffs first alleged injury, deprivation of Benton's liberty without process of law, clearly does not meet that definition. Therefore, it is only Plaintiffs' second alleged injury, deprivation of a property interest to Benton's estate and family members, including a property right in the claim now before this Court, that is potentially actionable for purposes of a RICO claim.

The Sixth Circuit recently reiterated its view that "personal injuries and any pecuniary losses proximately resulting from a personal injury caused by a RICO violation . . . are . . . not

29

recoverable. These losses are not recoverable because of the origin of the underlying injury."
*Jackson v. Sedgwick*, 2013 U.S. App. LEXIS 19495, *23-24 (6th Cir. 2013). The Sixth Circuit
noted that courts have remained faithful to a distinction between redressable and non-redressable
injuries by "excluding damages arising directly out of a personal injury, even though personal
injuries often lead to monetary damages that would be sufficient to establish standing if the
plaintiff alleged a non-personal injury." *Id*. at *24.

At its core, this case is about a *personal* injury to Benton which resulted in his untimely
death. Indeed, the Second Amended Complaint includes claims for wrongful death, deprivation
of constitutional rights, negligence, assault and battery, intentional infliction of emotion distress,
and loss of consortium (Docket No. 70). Plaintiffs' alleged "deprivation of property interest" to
Benton's estate and family members, including a right in the present civil claim, is really just a
pecuniary loss resulting from personal injury. It "directly arises" out of Benton's personal injury.
This loss is simply not cognizable for purposes of a civil RICO claim. Therefore, Plaintiffs fail to
meet all requirements for a civil RICO claim. As such, Defendant Telb's Motion for Judgment
on the Pleadings and/or Motion to Dismiss with regard to the civil RICO claim is granted and the
claim is dismissed.

## VII. CONCLUSION

For the foregoing reasons, Defendant Telb's Motion for Judgment on the Pleadings
and/or Motion to Dismiss is granted with respect to the following claims:(1) aiding and abetting;
(2) civil conspiracy under Ohio law; (3) civil conspiracy under 18 U.S.C. § 1983; (4) civil
conspiracy under 18 U.S.C. § 1985; (5) state RICO violations; (6) federal RICO violations; and
(7) liability, imputed by virtue of R.C. § 311.05 for negligence and intentional infliction of

emotional distress. These claims are dismissed in their entirety.

Defendant Telb's Motion for Judgment on the Pleadings and/or Motion to Dismiss is denied with respect to the following claims: (1) failure to sufficiently train and supervise employees against the use of excessive force under 18 U.S.C. § 1983; and (2) liability, imputed by virtue of R.C. § 311.05 for wrongful death, assault and battery, excessive force, and failure to provide medical treatment. **IT IS SO ORDERED.**

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   January 23, 2014

31