IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Denise M. Coley, *et al.*,  Case No. 3:09CV8

      Plaintiffs,

      v.  **ORDER**

Lucas County, Ohio, *et al.*,

      Defendants.

This is a civil rights case arising from the death of an inmate–Carlton Benton–in the Lucas County Jail.

Plaintiffs, Benton's survivors, brought this civil rights action based on alleged violations of Benton's constitutional rights and various state laws.

In August, 2016, defendants made a Fed. R. Civ. P. 68 offer of judgment ("offer"), which plaintiffs accepted. All that remains is the amount of attorneys' fees and costs to which plaintiffs' counsel are entitled and, accordingly, the proper analysis for calculating those fees and costs.

For the reasons that follow, I conclude the lodestar analysis found in 42 U.S.C. § 1988 applies, and plaintiffs' counsel shall recover based on the prevailing hourly rate in Toledo, Ohio.

**Background**

This case arises from the death of Carlton Benton, a pretrial detainee in the Lucas County Jail. Plaintiffs allege that Benton's death was the result of wrongful acts committed by various Lucas County officials and that other Lucas County officials tried to cover up those wrongful acts.

Plaintiffs allege the altercation that resulted in Benton's death occurred in his medical cell on or about May 30, 2004.

According to the complaint, defendants Deputy Schmeltz and Officer Gray entered the medical cell and placed Benton, who remained handcuffed, on a bed and attempted to remove his restraints. When Benton began to struggle with the officers, making it difficult to remove the restraints, defendant Officer Gray grabbed Benton from behind and placed him in a "sleeper hold." Benton stopped resisting, gasped for air, and was then unconscious. According to plaintiffs, defendant Officer Gray ordered the officers to leave Benton's cell. Officer Benton did not inform medical personnel of the incident or seek any medical care for Benton. A few minutes later, a county deputy found Benton, who was taken to the hospital and declared brain dead the next day.

Based on allegedly false statements by various defendants and incomplete or inaccurate information regarding Benton's death, the Lucas County Coroner stated in a 2004 autopsy report that Benton died from natural causes. However, in 2008, the Federal Bureau of Investigation began an external investigation into Benton's death. Around that same time, the Lucas County Coroner issued a new autopsy report, stating Benton's death was a homicide.

In April, 2009, the Department of Justice filed an indictment in the Northern District of Ohio containing multiple counts against defendants in the present action.

Upon learning of the true cause of Benton's death and the cover-up, Benton's surviving family members brought this § 1983 action. Plaintiffs allege that Benton's death occurred as result of the actions taken by defendants Deputy Schmeltz and Officer Gray and that they acted in concert with defendants Sheriff Telb and Captain McBroom to conceal the circumstances of Benton's death. This civil action was stayed pending final adjudication of the related criminal proceedings.

On August, 8, 2016, defendants made a Rule 68 offer of judgment. In addition to the provision to pay a specific amount of compensatory damages ($750,000), the offer includes a separate award for reasonable attorneys' fees and costs (not to exceed $750,000), to be agreed upon by the parties or, in the event the parties could not reach an agreement, to be determined by me. Further, the offer expressly states that it was "intended to resolve any and all of Plaintiffs' claims against Defendants in this action, including . . . any and all claims for . . . attorney's fees . . . [and] costs of suit . . . ." (Doc. 185, Ex. A).

Plaintiffs accepted this offer in its entirety on August 22, 2016.

The only remaining issue is the amount of attorneys' fees and costs to which plaintiffs' counsel are entitled. A settlement conference as to this issue is set for February, 2017.

The parties currently dispute the standard to determine the amount of recoverable expenses. This dispute is two-fold; the parties dispute: 1) whether the conventional § 1988 analysis applies; and 2) whether the prevailing hourly rate in Toledo, Ohio, as opposed to Cleveland, Ohio, applies.

## Discussion

### A. Section 1988 Analysis Applies

Pursuant to 42 U.S.C. § 1988, a prevailing party in a civil rights action is entitled to recover its "reasonable attorney's fees" by statute. Specifically,

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . , the court, in its discretion, may allow the prevailing party, other than the United States, *a reasonable attorney's fee* as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

*Id.* § 1988(b) (emphasis added).

3

When interpreting a Rule 68 offer of judgment, I apply general contract principles. *Andretti v. Borla Performance Industries, Inc.*, 426 F.3d 824, 837 (6th Cir. 2005); *see also Mallory v. Eyrich*, 922 F.2d 1273, 1279 (6th Cir. 1991) ("In cases construing Rule 68 judgments where the parties disagree as to what was intended, the courts apply contract principles.").

Here, with respect to attorneys' fees and costs, the offer states:

> Plaintiffs' recovery of reasonable attorneys' fees shall not exceed seven hundred fifty thousand dollars, i.e. $750,000, nor shall said cap on fees be construed as an admission or acknowledgment of the amount of reasonable attorneys' fees to be awarded. Further, *any award for reasonable attorneys' fees and costs is subject to any and all legal restrictions, challenges, defenses or appeals available to Defendants.*

(Doc. 185, Ex. A) (emphasis added).

I first consider the language of the offer itself. Based on the language referenced above, I find the offer clearly and unambiguously incorporates the § 1988 standard, providing that plaintiffs would be entitled to recover their "reasonable attorneys' fees and costs"–the same language used in § 1988. (Doc. 185, Ex. A). This parallel in language between the offer and § 1988 shows the parties contracted to resolve plaintiffs' claim to attorneys' fees and costs under the § 1988 standard.

Next, I consider the offer in the context of the "subject matter, nature, and purpose of the agreement." *Affiliated FM Ins. Co. v. Owens-Corning Fiberglas Corp.*, 16 F.3d 684, 686 (6th Cir. 1994). In this case, defendants, through their Rule 68 offer, sought to resolve a dispute over a federal civil rights claim (specifically, a 42 U.S.C. § 1983 claim), including plaintiffs' claim for attorneys' fees and costs. Considering the offer in that context, I find the offer incorporates the § 1988 standard, as this standard explicitly applies to claims for attorneys' fees in actions seeking to enforce § 1983.

Based on ordinary principles of contract interpretation, I conclude the statement of the

applicable standard found in defendants' offer, once I read the offer as a whole, is clear–it was the parties' mutual intent to apply the conventional standard for determining a "reasonable attorney's fee" in a civil rights case under § 1988.[1]

Therefore, plaintiffs' counsel shall calculate and I shall award attorneys' fees and costs pursuant to § 1988.

### B. Prevailing Hourly Rate in Toledo, Ohio Applies

Plaintiffs' counsel practice principally in Cleveland, not Toledo. Thus, there is a dispute regarding whether the "prevailing market rate in the relevant community" for purposes of applying § 1988 should be Cleveland or Toledo.[2]

An award of reasonable attorneys' fees under § 1988 is within my discretion. 42 U.S.C. § 1988(b); *Hadix v. Johnson*, 65 F.3d 532, 534 (6th Cir. 1995). "Because of 'the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters,' an award of attorneys' fees under § 1988 is entitled to substantial deference." *Hadix, supra*, 65 F.3d at 534 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

Generally, where a plaintiff obtains counsel from outside Toledo, I award fees at the prevailing Toledo hourly rate, which no doubt is somewhat less than the rate for Cleveland lawyers of similar competence and experience. "I do so because a local litigant who goes elsewhere to find

---

[1] Of note, the offer contains a $750,000 cap for attorneys' fees and costs. When plaintiffs accepted the offer, they also accepted this term and, therefore, are bound by it. It is of no import that § 1988 does not include a similar cap.

[2] "'[R]easonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

counsel has elected to assume the risk that it may cost more to have someone from out of town than if more nearby counsel had been obtained." *Verhoff v. Time Warner Cable, Inc.*, 2007 U.S. Dist. LEXIS 99950, *6 (N.D. Ohio).

In *Verhoff*, I awarded the Columbus rate because the plaintiff in that case obtained counsel in a community–Columbus–closer to his home than Toledo. *Id.* In that case, "unlike a Toledo resident who goes elsewhere for counsel," the plaintiff "stayed reasonably close to home . . . and should, therefore, be entitled to have his lawyer compensated at the same rate that the lawyer would otherwise earn practicing in Columbus" *Id.*

Here, I follow my standard practice and shall award the Toledo rate. I do so principally because plaintiffs, residents of Toledo, obtained counsel in a community outside Toledo. Unlike the plaintiff in *Verhoff*, who obtained counsel near his home, plaintiffs obtained counsel approximately 100 miles from their home. By doing so, plaintiffs assumed the risk that it may cost more to have Cleveland counsel than nearby counsel.

Therefore, plaintiffs' counsel shall calculate and I shall award attorneys' fees and costs pursuant to the prevailing Toledo hourly rate.

**Conclusion**

In light of the foregoing, it is, hereby,

ORDERED THAT:

1. The § 1988 analysis applies to the calculation of the attorneys' fees and costs incurred by plaintiffs' counsel; and

2. The prevailing hourly rate in Toledo, Ohio applies to the same calculation.

Due to the delay in issuing this order, it appears that February 21, 2017 is no longer a

workable date to hold a settlement conference regarding the fees and costs to which plaintiffs' counsel are entitled. The Clerk will forthwith set a telephonic conference to consider whether to vacate that date and schedule further deadlines.

    So ordered.

                                                  /s/ James G. Carr
                                                  Sr. U.S. District Judge